**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MARY BILEK, individually and on behalf of others similarly situated, | ) ) ) | Case No. 1:18-cv-03083 |
| Plaintiff, | ) ) | **Jury Trial Demanded** |
| v. | ) ) ) | |
| NATIONAL CONGRESS OF EMPLOYERS, INC., NATIONAL BENEFIT BUILDERS, INC., ACCESSONE CONSUMER HEALTH, INC., HEALTH ADVISORS OF AMERICA, INC. d/b/a ENROLLMENT CENTER OF AMERICA and HAPPYHEALTHPLANS.COM, MICHAEL SMITH, ZACHARY COX, SEAN DUFFIE, BENEFITS MATTER INC., ANN FILS, and DOES 1-10, | ) ) ) ) ) ) ) ) ) ) | Hon. Judge Charles R. Norgle, Sr. Hon. Mag. Judge Jeffrey T. Gilbert |
| Defendants. | ) | |

**<u>FIRST AMENDED CLASS ACTION COMPLAINT</u>**

1.     Plaintiff Mary Bilek brings this action against Defendants National Congress of Employers, Inc., National Benefit Builders, Inc., AccessOne Consumer Health, Inc., Health Advisors of America, Inc. d/b/a Enrollment Center of America and HappyHealthPlans.com, Michael Smith, Zachary Cox, Sean Duffie, Benefits Matter Inc., and Ann Fils, to secure redress for Defendants' practice of causing the cellular telephone numbers of Plaintiff and others to be called using an automatic telephone dialing system and prerecorded voice, and for calling telephone numbers after requests to stop, in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, as well as for playing prerecorded messages during autodialed calls to Plaintiff and others, and impeding caller identification, in violation of the Illinois Automatic Telephone Dialers Act ("ATDA"), 815 ILCS 305/1 *et seq.*

## INTRODUCTION

2.     Advancements in telephone dialing technology by the 1980s and 90s made reaching a large number of consumers by telephone easier and more cost-effective.  However, this technology has also brought with it an onslaught of unsolicited robocalls, spam text messages, and junk faxes that intrude on individual privacy and waste consumer time and money.  As a result, the federal government and numerous states have enacted legislation to combat these widespread telecommunications abuses.  As Congress recognized:

> Many customers are outraged over the proliferation of intrusive, nuisance calls to their homes….  Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

Pub. L. No. 102-243, 105 Stat. 2394 § 2(6, 12) (1991).

3.     As is relevant here, federal law under the TCPA prohibits "mak[ing] any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service[.]" 47 U.S.C. § 227(b)(1)(A)(iii). The statute further prohibits initiating a telemarketing call to any residential line "using an artificial or prerecorded voice to deliver a message without the prior express written consent of the called party[.]" 47 C.F.R. § 64.1200(a)(3). The TCPA provides for injunctive relief and the greater of actual damages or $500 per such violation, which can be trebled where the statute was "willfully or knowingly" violated.  47 U.S.C. § 227(b)(3).

4.     The TCPA also prohibits "initiat[ing] any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf

of that person or entity[.]" 47 C.F.R. § 64.1200(d). Where a person has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of this prohibition, the TCPA provides for injunctive relief and the greater of actual damages or up to $500 per violation, which can be trebled where the statute was "willfully or knowingly" violated. 47 U.S.C. § 227(c)(5).

5.     In Illinois, the ATDA also prohibits, *inter alia*, "play[ing] a prerecorded message placed by an autodialer without the consent of the called party" or impeding caller IDs during telemarketing calls. 815 ILCS 305/15(d); 30(b). The ATDA provides for treble actual damages, statutory damages of $500 per violation, and costs and reasonable attorneys' fees. 815 ILCS 305/30. Passage of the 2013 amendments to the ATDA providing for statutory damages, as invoked here, was unanimous in the Illinois legislature.

6.     Defendants caused multiple autodialed, prerecorded-voice calls to be made to the cell phones of Plaintiff and others without their consent, in many instances using "spoofed" numbers that impeded caller identification, and Plaintiff files this class action complaint on behalf of herself and others similarly situated, seeking relief from Defendants' illegal calling practices.

**PARTIES**

7.     Plaintiff Mary Bilek is a natural person who resides in Cook County, Illinois.

8.     Defendant National Congress of Employers, Inc. ("National Congress" or "NCE") is a Delaware corporation headquartered, on information and belief, at 100 Garden City Plaza, Suite 102, Garden City, New York 11530.

9.     Defendant National Benefit Builders, Inc. ("NBBI") is a New Jersey corporation headquartered at 25 Hanover Road, Florham Park, New Jersey 07932.

10.     Defendant AccessOne Consumer Health, Inc. ("AccessOne") is a Florida corporation headquartered at 84 Villa Road, Greenville, South Carolina 29615.

11.     Defendant Health Advisors of America, Inc. d/b/a Enrollment Center of America and HappyHealthPlans.com ("Health Advisors") is a Florida corporation headquartered in Broward County, Florida. Defendants Michael Smith and Zachary Cox—both of whom reside in Broward County, Florida—are principals of Health Advisors. Defendant Sean Duffie is a resident of Broward County, Florida, as well. Duffie is, on information and belief, also a principal of Health Advisors; alternatively, he is an employee, associate, or partner of Health Advisors and/or Smith and Cox.

12.     Defendant Benefits Matter Inc. ("Benefits Matter") was a Florida corporation headquartered at 1900 North University Drive, Suite 210, Pembroke Pines, Florida 33024, which is currently inactive. Defendant Ann Fils—a resident of Broward County, Florida—was a principal of Benefits Matter, and worked for National Congress in business development.

13.     DOES 1-10 are yet-unidentified participants and/or facilitators as to the calls at issue to Plaintiff and the class.

### JURISDICTION AND VENUE

14.     This Court has federal question subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 with respect to Plaintiff's TCPA claims. *Mims v. Arrow Financial Services, Inc.*, 132 S. Ct. 740 (2012).

15.     The Court has personal jurisdiction over Defendants and venue is appropriate in this District under 28 U.S.C. § 1391(a) because all Defendants do business in this District, made or facilitated the calls that are the subject of this lawsuit to Plaintiff and others in this District, and because a substantial portion of the events giving rise to this cause of action occurred in this

District.

## FACTS

16.     Defendants caused autodialed and prerecorded-voice calls to be made to the cell phones of Plaintiff and other consumers, without the prior express consent of the called party.

17.     On information and belief, the equipment used to call Plaintiff and others not only had the capacity to store or produce telephone numbers to be called using a random or sequential number generator (and to dial such numbers), but was programmed to sequentially or randomly access stored telephone numbers to automatically call such numbers.  These calls were made with equipment capable of dialing numerous phone numbers in a short period of time without human intervention, as part of an automated process. Moreover, the calls to Plaintiff and the class were made using these capabilities.

18.     Defendants also employed unattended messages in calls to Plaintiff and the class; that is, messages that were recorded ahead of time, and then automatically played when Plaintiff or the other class member answered or their voicemail picked up.

19.     Many or all of the people to whom Defendants made or caused to be made autodialed or prerecorded-voice calls never expressly consented to receive such calls, including Plaintiff.

20.     On information and belief, most of these individuals were sent more than one call, and Defendants lack an adequate system for preventing autodialed or prerecorded-voice calls to phones for which they do not have consent.

21.     Defendants caused these calls to be made to Plaintiff and the other members of the classes defined below.

22.     National Congress co-brands with NBBI to offer an "NCE Premier" medical

discount product, provided by AccessOne. *See* https://www.ncepremierplus.com/agreement.aspx (NBBI's "NCE Premier Platinum Plus" website, reflecting that, "[a]s a member of Premier Platinum Plus Discount Medical Program you are a participant in a Discount Medical Plan Organization provided by Access One Consumer Health[;] … [t]his agreement is between you and Access One Consumer Health"). On information and belief, it was this "NCE Premier" product, or a similar product, that Defendants attempted to sell during the calls to Plaintiff and other class members.

23.     On information and belief, National Congress, NBBI, and AccessOne engaged the services of Health Advisors, Smith, Cox, Duffie, Benefits Matter and Fils, and potentially others, to make these calls and generate business. On information and belief, Fils and Benefits Matter engaged another entity, Celerity, to make or facilitate the calling, and Health Advisors, Smith, Cox, and Duffie engaged Fextel and/or other entities to make or facilitate the calling.

24.     Health Advisors, Smith, Cox, Duffie, Fils, and Benefits Matter have not been forthcoming in responding to subpoenas concerning this case.

25.     While Fils – in her capacity as a principal of Benefits Matter – has admitted to having done telemarketing for National Congress and has been tied to the calls at issue in this complaint through Celerity's inbound call records, Fils purports not to have any information about any of this.

26.     Likewise, Health Advisors failed to respond to Plaintiff's subpoena in this action, failed to produce anyone to testify on its behalf pursuant to a scheduled Fed. R. Civ. P. 30(b)(6) deposition, and Cox and Smith have ignored direct attempts by Plaintiff's counsel to confer regarding Plaintiff's requests for responsive information and materials.

27.     National Congress, NBBI, AccessOne, Health Advisors, Smith, Cox, Duffie, Fils,

and Benefits Matter were so involved in these calls that they should be held directly liable. Alternatively, these entities worked in concert to effectuate the calls and telemarketing described here, and should be held liable for the calls through principals of vicarious liability and other theories.

28.     The violations were negligent. Alternatively, the violations were intentional, and Defendants were aware of the TCPA's and ATDA's prohibitions against use of autodialers or an artificial or prerecorded voice in calls to consumers, honoring do-not-call requests, and impeding caller identification, but made the business decision to cause these calls to be made, anyway.

**Facts Relating to Plaintiff**

29.     Defendants and/or some additional parties on their behalf have made multiple calls to Plaintiff's cellular telephone number, including on March 22, 2018, April 18, 2018, and April 19, 2018, among numerous other instances, which are not specifically delineated by date here, but all of which are alleged to be part of this case. Upon information and belief, Plaintiff has received dozens of such calls.

30.     These calls to the cell phones of Plaintiff and others were made using an automatic telephone dialing system ("autodialer" or "ATDS") under the TCPA. The equipment had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers.  In other words, no human being physically dialed each digit of Plaintiff's and the other class members' telephone numbers to call their phones— the calls were made using equipment with the capacity to dial a large number of phone numbers in a short period of time, without human intervention.  The equipment used to call Plaintiff and the other class members sequentially or randomly accessed their stored telephone numbers, and automatically called them.

31. These calls to Plaintiff's and others' phone numbers were also made using an artificial or prerecorded voice.

32. The automated nature of Defendants' calls is evidenced by the fact that they repeated the same message across multiple calls to Plaintiff. For example, Plaintiff received voicemail messages on her cell phone from caller ID (773) 273-6136 at approximately 6:01 p.m. and 6:39 p.m. on March 22, 2018, from caller ID (703) 348-6954 at approximately 11:39 a.m. on April 18, 2018, and from caller ID (980) 242-3698 at approximately 10:16 a.m. on April 19, 2018, among other possible instances, all of which played the following previously-recorded message:

> ... limited health involvement period for a few weeks, so you and your family can get a great insurance plan at the price you can afford. And we make it hassle-free to sign up. We have pre-approvals already in your area, including Cigna, Blue Cross, Aetna, United, and many more. Press "1" to get a hassle-free assessment, or press "2" to be placed on our do-not-call list. Thanks for your time, and be healthy and blessed.

33. Defendants caused other calls to be made to Plaintiff's cell phone, too.

34. During a call Plaintiff received from Defendants on March 16, 2018, after Plaintiff "pressed 1" through the automated prompt to speak with a representative, Defendants' representative gave her a National Congress quote for what Plaintiff believed to be health, dental, vision, and life insurance. Upon information and belief, and alternatively, the quote was truly for the "NCE Premier" health care discount program, masqueraded as health insurance, as described by the FTC: https://www.consumer.ftc.gov/articles/0165-discount-plan-or-health-insurance.

35. During the call, a representative with whom Plaintiff spoke identified the caller as being affiliated with HappyHealthPlans.com or similar. On information and belief, that domain is owned or controlled by Health Advisors, Cox, Smith, and Duffie. *See, e.g.,* https://800notes.com/Phone.aspx/1-407-216-8436. Indeed, as identified through a subpoena,

Duffie is the registered owner of the HappyHealthPlans.com domain.

36.     On information and belief, Health Advisors, Cox, Smith, and Duffie initiated, made, or facilitated at least some of the calls at issue to Plaintiff's cell phone, including on or about March 16, 2018.

37.     No Defendant had permission or consent to make the calls. Indeed, Plaintiff asked the caller not to call her, including through pressing "2" during the IVR process in some calls she received, but continued to receive calls in spite of this.

38.     Defendants knew they did not have Plaintiff's consent to make some or all of these calls.

39.     Defendants' business model is to knowingly use an autodialer to call cellular telephone numbers it knows it does not have consent to call, including using an artificial or prerecorded voice.

40.     Defendants also utilized "spoofed"[1] numbers in some of the calls to Plaintiff and other class members. For example, Plaintiff received autodialed, prerecorded-voice calls to her cell phone's voicemail using caller ID number (303) 284-2161 on July 25, 2018, and caller ID numbers (303) 284-2165 (for two calls) and (303) 284-2169 on July 26, 2018. Pursuant to a subpoena, Comcast confirmed that none of these numbers were assigned in July 2018, indicating that the caller identification for any call made using such numbers during the relevant time period was manipulated.

41.     Plaintiff and the class have been damaged by Defendants' calls. Their privacy was improperly invaded, Defendants' calls temporarily seized and trespassed upon the use of their phones, and they were forced to divert attention away from other activities to address the calls.

---

[1]     *See* FCC, Caller ID Spoofing (available at https://www.fcc.gov/consumers/guides/spoofing-and-caller-id) (explaining that "[c]aller ID spoofing is when a caller deliberately falsifies the information transmitted to your caller ID display to disguise their identity").

Defendants' calls were annoying and a nuisance, and wasted the time of Plaintiff and the class.

*See, e.g., Mims v. Arrow Fin. Servs., Inc.*, 132 S. Ct. 740 (Jan. 18, 2012) (discussing congressional findings of consumer "outrage" as to autodialed and prerecorded calls).

## CLASS ACTION ALLEGATIONS

42.     Plaintiff brings this action under Federal Rules of Civil Procedure 23(b)(2) and (b)(3), on behalf of the following classes:

**TCPA Class:** All persons in the United States whose telephone number was called to encourage the purchase of any National Congress property, goods, or services, using an artificial or prerecorded voice or the same or similar dialing system used to call Plaintiff, where such calling was made to a telephone number the recipient had not provided to National Congress.

**TCPA Internal DNC Class**: All persons who pressed 2 (or other automated opt-out prompt) during at least one call made for the purpose of encouraging the purchase of any National Congress property, goods, or services, and who received at least two calls thereafter in any 12-month period.

**ATDA Class:** All persons in the State of Illinois who National Congress or some party on its behalf called and played a prerecorded message placed by any device or system programmed to sequentially or randomly access stored telephone numbers to automatically connect a telephone with a recorded message.

**Caller ID Class:** All persons in the State of Illinois to whom an autodialed telephone call containing a recorded message soliciting the sale of any National Congress goods or services was made, where the caller ID displayed a spoofed number.

43.     Upon information and belief, there were more than 100 persons whose phone number Defendants caused to be called without permission using the same autodialer equipment used to call Plaintiff, and where such calls used spoofed numbers and/or were made more twice in any 12-month period after an automated opt-out.

44.     Common questions of law or fact exist as to all members of the classes, which predominate over any questions solely affecting any individual member, including Plaintiff. Such questions common to the classes include but are not limited to:

- 10 -

a.  Whether the calls to Plaintiff and the class were made using an "automatic telephone dialing system" as such term is defined or understood under the TCPA and applicable FCC regulations and orders;

b.  Whether the calls to Plaintiff and the class were made using an artificial or prerecorded voice as such terms are defined or understood under the TCPA and applicable FCC regulations and orders

c.  Whether Defendants had "prior express consent" under the TCPA to call the cell phone numbers of Plaintiff and the TCPA Class;

d.  Whether Defendant's calls played "prerecorded messages" placed by an "autodialer" as such terms are defined under the ATDA;

e.  Whether Defendant had the "consent" of Plaintiff and the other ATDA Class members to play a prerecorded message placed by an autodialer within the meaning of the statute;

f.  Whether Defendants instituted procedures for maintaining a list of persons who request not to receive telemarketing calls that met the standards set forth in 47 C.F.R. § 64.1200(d);

g.  Whether, despite being capable of allowing the display of its telephone number, Defendants' dialing service or equipment impeded the function of the caller ID of Plaintiff and the other Caller ID Class members; and

h.  Damages, including whether any violations were performed willfully or knowingly, such that Plaintiff and the other members of the class are entitled to treble damages under 47 U.S.C. § 227(b)(3) or § 227(c)(5).

45.  Plaintiff's claims are typical of the claims of the other members of the classes.

The factual and legal bases of Defendants' liability to Plaintiff and the other members of the classes are the same: Defendants violated the TCPA and ATDA by causing automated calls to be made to the telephone number of each class member, without consent (and, as to the TCPA Internal DNC Class, after a direct do-not-call request), and further violated the ATDA by impeding caller identification.

46.     Plaintiff will fairly and adequately protect the interests of the classes. Plaintiff has no interests that might conflict with the interests of the classes. Plaintiff is interested in pursuing her claims vigorously, and she has retained counsel competent and experienced in class and complex litigation, including with regards to the claims alleged herein.

47.     Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. There are, on information and belief, thousands of class members of each class, such that joinder of all members is impracticable.

48.     No difficulties are likely to be encountered in the management of this action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.

49.     Defendants have acted and failed to act on grounds generally applicable to Plaintiff and the other members of each class, thereby making relief appropriate with respect to the class as a whole. Prosecution of separate actions by individual members of the classes, should they even realize that their rights have been violated, would likely create the risk of inconsistent or varying adjudications with respect to individual members of the classes that

would establish incompatible standards of conduct.

50.     The identities of the class members are, on information and belief, readily

identifiable from the records of Defendants or their vendor(s).

**COUNT I**
**Violations of the TCPA, 47 U.S.C. § 227**
**(On Behalf of Plaintiff and the TCPA Class)**

51.     Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth

herein.

52.     It is a violation of the TCPA to initiate any telemarketing call to a cellular or

residential landline number using an artificial or prerecorded voice. 47 U.S.C. §

227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(3).

53.     Defendants initiated or caused to be initiated calls to the telephone numbers of

Plaintiff and the other members of the TCPA Class using an automatic telephone dialing system,

as well as with an artificial or prerecorded voice.

54.     These calls were made without regard to whether or not Defendants had

previously obtained express permission from the called party to make such calls.  In fact,

Defendants did not have prior express consent to call the phones of Plaintiff and the other

members of the TCPA Class when the calls were made.

55.     These calls were willful or knowing.

56.     Defendants violated the TCPA by making non-emergency calls to the phones of

Plaintiff and others using an automatic telephone dialing system or an artificial or prerecorded

voice, without prior express consent.

57.     To the extent that some of the calls to Plaintiff and the class were made by

vendors of National Congress, NBBI, or AccessOne, National Congress, NBBI, and AccessOne

are liable for those calls, too.

58.     As a result of Defendants' conduct and pursuant to Section 227(b)(3) of the

TCPA, Plaintiff and the other members of the TCPA Class were harmed and are each entitled to

a minimum of $500 in damages for each violation.  Plaintiff and the TCPA Class are also entitled

to an injunction against future calls.  47 U.S.C. § 227(b)(3).

59.     Because Defendants knew or should have known that Plaintiff and the other

members of the class had not given prior express consent to receive its automated calls to their

cell phones—and/or willfully caused automated calls to be made to the cell phones of Plaintiff

and the other members of the class without prior express consent—the Court should treble the

amount of statutory damages available to Plaintiff and the other members of the class, pursuant

to Section 227(b)(3) of the TCPA.

WHEREFORE, Plaintiff Mary Bilek, individually and on behalf of the TCPA Class,

respectfully requests that the Court enter judgment against Defendants for:

A.     Certification of the TCPA Class as alleged herein;

B.     A declaration that Defendants violated the TCPA as to Plaintiff and the

TCPA Class;

C.     Damages, pursuant to 47 U.S.C. § 227(b)(3);

D.     Injunctive relief, pursuant to 47 U.S.C. § 227(b)(3), aimed at ensuring the

prevention of Defendants from violating the TCPA in the future,

including:

1.     Requiring Defendants to hire a Court-approved, independent

auditing company to (a) investigate all allegations of TCPA

violations, and (b) audit no less than 10% of outbound calls to

- 14 -

ensure that they had consent and that the consumer had not

previously asked that calls stop, and (c) report the results of the

above investigations to the Court and Plaintiff's counsel on a

quarterly basis.

2.    Requiring Defendants to include an automated IVR opt-out

mechanism at the beginning of any and all prerecorded-voice calls;

E.    Attorneys' fees and costs, as permitted by law; and

F.    Such other or further relief as the Court deems just and proper.

**COUNT II**
**Violations of the TCPA, 47 U.S.C. § 227**
**(On Behalf of Plaintiff and the TCPA Internal DNC Class)**

60.    Plaintiff re-alleges and incorporates all allegations as if fully set forth herein.

61.    It is a violation of the TCPA to fail to stop calling a person or phone number after

a request to stop calling. 47 C.F.R. § 64.1200(d).

62.    It is a violation of the TCPA not to include the name of the party on whose behalf

calls are being made in the beginning of a telemarketing call. 47 C.F.R. § 64.1200(d)(4).

63.    Defendants initiated or caused to be initiated calls to the telephone numbers of

Plaintiff and the other members of the TCPA Internal DNC Class in violation of these

regulations. The reason for the noncompliant calls is that no Defendant had telemarketing

policies that complied with 47 C.F.R. § 64.1200(d). Alternatively and additionally, Defendants

unreasonably and willfully failed to adhere to any policies that might have complied with the

letter of 47 C.F.R. § 64.1200(d), thus causing the violative calls.

64.    These violations were willful or knowing.

- 15 -

WHEREFORE, Plaintiff Mary Bilek, individually and on behalf of the TCPA Internal DNC Class, respectfully requests that the Court enter judgment against Defendants for:

A.  Certification of the TCPA Internal DNC Class as alleged herein;

B.  A declaration that each Defendant violated the TCPA as to Plaintiff and the TCPA Internal DNC Class;

C.  Damages, pursuant to 47 U.S.C. § 227(c)(5);

D.  Injunctive relief, pursuant to 47 U.S.C. § 227(c)(5), aimed at ensuring the prevention of TCPA violations in the future, including:

1.  Requiring Defendants, and each of them, to hire a Court-approved, independent auditing company to (a) investigate all allegations of TCPA violations, and (b) audit no less than 10% of outbound calls to ensure compliance, and (c) report the results of the above investigations to the Court and Plaintiff's counsel on a quarterly basis;

2.  Requiring Defendants to honor any automated IVR opt-out mechanism at the beginning of any and all prerecorded-voice calls;

3.  Prohibiting Defendants from misleading call recipients into believing that calls were for name-brand health insurance, when calls were truly designed to sell health benefit plans.

E.  Attorneys' fees and costs, as permitted by law; and

F.  Such other or further relief as the Court deems just and proper.

## COUNT III
### Violations of the ATDA, 815 ILCS 305/1 *et seq.*
### (On Behalf of Plaintiff and the ATDA Class)

65. Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

66. The ATDA prohibits "play[ing] a prerecorded message placed by an autodialer without the consent of the called party." 815 ILCS 305/30(b).

67. Under the ATDA, an "autodialer" or "autodialer system" is defined as "any telephone dialing or accessing device, machine, computer or system capable of storing telephone numbers which is programmed to sequentially or randomly access the stored telephone numbers in order to automatically connect a telephone with a recorded message[.]" 815 ILCS 305/5(a).[2]

68. A "recorded message" refers to "any taped communication soliciting the sale of goods or services without live voice interaction." 815 ILCS 305/5(c).

69. Defendants did not have the consent of Plaintiff or the other members of the ATDA Class to play a prerecorded message placed by an autodialer.

70. Nonetheless, Defendants caused calls to be made to the phones of Plaintiff and the other members of the ATDA Class using a telephone dialing or accessing device, machine, computer or system capable of storing telephone numbers which is programmed to sequentially or randomly access the stored telephone numbers in order to automatically connect a telephone with a recorded message. No human being physically dialed each digit of Plaintiff's or the other ATDA Class members' phone numbers to connect their telephones with a recorded message.

71. Defendants' prerecorded messages to the phones of Plaintiff and the other ATDA Class members included language soliciting the sale of goods or services without live voice

---

[2] The term "autodialer" or "autodialer system" does not include "device[s] associated with a burglar alarm system, voice message system or fire alarm system." 815 ILCS 305/5(a).

interaction, including offering insurance-related products.

72.     Consequently, Defendants violated the ATDA by playing a prerecorded message placed by an autodialer during calls to the phones of Plaintiff and the other ATDA Class members, without such persons' consent.

73.     As a result of Defendants' conduct and pursuant to Section 30(c)-(c-5) of the ATDA, Plaintiff and the other members of the ATDA Class were harmed and are each entitled to statutory damages of $500 per violation and three times any actual damages, as well as costs and attorneys' fees. 815 ILCS 305/30(c)-(c-5).

WHEREFORE, Plaintiff Mary Bilek, individually and on behalf of the ATDA Class, respectfully requests that the Court enter judgment against Defendants for:

A.     Damages, pursuant to 815 ILCS 305/30;

B.     Attorneys' fees and costs, as permitted by law; and

C.     Such other or further relief as the Court deems just and proper.

**COUNT IV**
**Violations of the ATDA, 815 ILCS 305/1 *et seq.***
**(On Behalf of Plaintiff and the Caller ID Class)**

74.     Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

75.     The ATDA prohibits "mak[ing] or caus[ing] to be made telephone calls utilizing an autodialer in a manner that does not comply with Section 15." 815 ILCS 305/30(a).

76.     Section 15 of the ATDA, in turn, provides that "[a]n autodialer may not be operated in a manner that impedes the function of any caller ID when the telephone solicitor's service or equipment is capable of allowing the display of the solicitor's telephone number." 815 ILCS 305/15(d).

- 18 -

77.     Under the ATDA, an "autodialer" or "autodialer system" is defined as "any telephone dialing or accessing device, machine, computer or system capable of storing telephone numbers which is programmed to sequentially or randomly access the stored telephone numbers in order to automatically connect a telephone with a recorded message[.]" 815 ILCS 305/5(a). A "recorded message" refers to "any taped communication soliciting the sale of goods or services without live voice interaction." 815 ILCS 305/5(c).

78.     Defendants played a prerecorded message soliciting the sale of National Congress, NBBI, and AccessOne insurance-related goods or services placed by an autodialer in calls to the phones of Plaintiff and the other members of the Caller ID Class.

79.     Specifically, Defendants' calls to Plaintiff and the other Caller ID Class members were made by a telephone dialing or accessing device, machine, computer or system capable of storing telephone numbers, which was programmed to sequentially or randomly access Plaintiff's and the other Caller ID Class members' stored telephone numbers in order to automatically connect their telephones with a recorded message soliciting the sale of National Congress, NBBI, and AccessOne goods or services without live voice interaction.

80.     While, on information and belief, the service or equipment used to make such calls was capable of allowing the display of its telephone number, Defendants or their vendor(s) impeded caller identification by using spoofed numbers during the calls to Plaintiff and the other members of the Caller ID Class.

81.     As a result of Defendant's conduct and pursuant to Section 30(c)-(c-5) of the ATDA, Plaintiff and the other members of the Caller ID Class were harmed and are each entitled to statutory damages of $500 per violation and three times any actual damages, as well as costs and attorneys' fees. 815 ILCS 305/30(c)-(c-5).

WHEREFORE, Plaintiff Mary Bilek, individually and on behalf of the Caller ID Class, respectfully requests that the Court enter judgment against Defendants for:

      A.     Damages, pursuant to 815 ILCS 305/30;

      B.     Attorneys' fees and costs, as permitted by law; and

      C.     Such other or further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully submitted,

Dated: March 15, 2019

MARY BILEK, individually and
on behalf of others similarly situated

By:  */s/ Alexander H. Burke*

Alexander H. Burke
Daniel J. Marovitch
BURKE LAW OFFICES, LLC
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
Telephone: (312) 729-5288
aburke@burkelawllc.com
dmarovitch@burkelawllc.com

*Counsel for Plaintiff*

- 20 -

## **Document Preservation Demand**

Plaintiff hereby demands that each Defendant take affirmative steps to preserve all recordings, data, databases, call records, consent to receive autodialed or artificial or prerecorded voice calls, e-mails, recordings, documents, and all other tangible things that relate to the allegations herein, Plaintiff, or the putative class members, or the making of telephone calls, the events described herein, any third party associated with any telephone call, campaign, account, sale, or file associated with Plaintiff or the putative class members, and any account or number or symbol relating to any of them. These materials are very likely relevant to the litigation of this claim. If Defendant is aware of any third party that has possession, custody, or control of any such materials, Plaintiff demands that Defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of Defendants.

*/s/ Alexander H. Burke*