**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MARY BILEK, individually and | ) | |
| on behalf of others similarly situated, | ) | Case No. 1:18-cv-03083 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NATIONAL CONGRESS OF EMPLOYERS, | ) | Hon. Judge Charles R. Norgle, Sr. |
| INC., et al., | ) | Hon. Mag. Judge Jeffrey T. Gilbert |
| Defendants. | ) | |

## <u>PLAINTIFF'S OPPOSITION TO HII MOTION TO STAY [Dkt. 168]</u>

HII has asked the Court to stay these proceedings while its motion to dismiss is pending, on the ground that – in HII's view – its motion to dismiss is likely to be granted. Alternatively, HII asks the Court to bifurcate discovery to determine whether it sells a particular NCE product.

The motion to stay should be denied because the reasons it proffers for a stay are pretext: HII's position has <u>always</u> been that it should <u>never</u> have to tell Plaintiff anything about its involvement in the calls at issue. When presented with a subpoena before HII was added to the case over three months ago, it filed a motion to quash, arguing that it should not have to be bothered with the burden of responding because it was a non-party. <u>Exhibit A</u>. When Plaintiff acquiesced and added HII as a party in order to avoid third-party motion practice, but before Plaintiff issued her requests, HII's position as stated in court was that the parties should wait. Dkt. 131. And now, without meeting and conferring, HII persists in trying to prevent discovery by seeking a stay. HII's actions demonstrate that its motion is nothing but yet another attempt to delay these proceedings and prevent Plaintiff from obtaining evidence supporting her claims.

HII's argument as to bifurcation, too, is misdirection designed to prevail through an information vacuum *fait accompli*. Determining whether HII sold a particular "NCE Premier"

product will not be dispositive as to whether HII is a proper defendant here. Plaintiff seeks to hold HII liable for its actions and involvement as a facilitator and key intermediary for the sale and lead generation of NCE-branded products derived from illegal telemarketing, *without limitation to a specific product*. There is no question that HII has such a relationship with NCE, and relevant evidence—as demonstrated by, inter alia, the declaration of the originating caller, deposition testimony of one of the agents of HII's contracted lead generator, its sub-agent agreement with the lead generator that quoted an NCE-branded plan to Plaintiff, and NCE's identification of HII as its third-party administrator. Bifurcating discovery now – a year-and-a-half into these proceedings and with a defendant that has shown zero intent to cooperate in discovery – will do nothing but ensure further delay, obstruction, and piecemeal motion practice.

As further detailed below, HII's motion to stay or bifurcate should be denied.

I. **BACKGROUND**

After receiving a quote for an NCE product during one of dozens of similar, nonconsensual robocalls to her cell phone, Plaintiff filed this action on April 30, 2018, seeking redress for unsolicited autodialed or prerecorded-voice telemarketing calls made by or on behalf of Defendant National Congress of Employers, Inc. ("NCE"). NCE filed its answer on June 20, 2018. Dkt. 14. On March 15, 2019, Plaintiff amended her complaint to add additional defendants her investigation revealed were involved in the telemarketing lead generation scheme at issue—including Defendants National Benefit Builders, Inc. ("NBBI") and AccessOne Consumer Health, Inc. ("AccessOne"), who contract to provide the NCE-branded products to NCE members. Dkt. 43, FAC ¶ 22. Plaintiff also added counts asserting Defendants' violations of the TCPA's internal do-not-call rules, 47 C.F.R. § 64.1200(d), as well as the robocall and caller ID interference prohibitions under the Illinois Automatic Telephone Dialers Act ("ATDA"), 815

ILCS 305/1 *et seq*. Dkt. 43. NCE filed its answer in March 2019, and NBBI and AccessOne filed theirs in April 2019. Dkt. 46, 60-61.

From the beginning of this action, NCE falsely maintained that it didn't engage in telemarketing and didn't have any information about the calls to Plaintiff. Left with no other choice, Plaintiff was forced to pursue dozens of third-party subpoenas to attempt to piece together how the calls came to be made. Of course, NCE's representations proved to be false: It *does* utilize telemarketing to generate sales of NCE-branded products, and Plaintiff discovered that the quote she received was provided by lead generator Health Advisors of America, Inc. ("Health Advisors") during a call physically made by Rising Eagle Capital Group LLC ("Rising Eagle"). Despite withholding its identity for a year, Exhibit B, NCE ultimately identified Health Insurance Innovations, Inc. ("HII") as its third-party administrator applicable to the lead generation Plaintiff received—i.e., the intermediary whose platform and services were used to provide scripts and pricing information, supply quotes, and facilitate sales of NCE-branded products, including through the use of its proprietary online lead generation platform.

Given HII's relevance to Plaintiff's claims, she subpoenaed it on June 11, 2019, to sit for a deposition and provide relevant documents pertaining to Plaintiff, its applicable policies, practices, and procedures, and the calling and lead generation at issue. Exhibit C. HII refused to provide any documents, and instead moved to quash Plaintiff's subpoena on the basis that it was purportedly "disproportional and unduly burdensome non-party discovery." HII also deceptively asserted that Health Advisors "was never a selling agency on HII's platform[,]" notwithstanding Health Advisors' production of an agency agreement with HII. Exhibits A, D. In light of HII's position, Plaintiff amended her complaint to add HII as a defendant. Dkt. 116. Yet, even that hasn't succeeded in progressing this case: HII sought further delay in discovery, and the Court

permitted a delayed discovery schedule in granting it an extension to answer or otherwise plead. Dkt. 131. After moving to dismiss on September 27, 2019, Dkt. 140, HII has now filed a motion to stay or bifurcate pending the Court's decision on that motion, further detracting from the efficient prosecution of this action. Dkt. 168. Plaintiff here opposes that motion.

## II.   LEGAL STANDARD

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936). "Courts disfavor stays of discovery 'because they bring resolution of the dispute to a standstill.'" *Gookins v. Cty. Materials Corp.*, No. 19-867, 2019 WL 3282088, at *1 (S.D. Ind. July 18, 2019). "[A] party has no right to a stay [pending a motion to dismiss], and the party seeking a stay bears the burden of proving that the Court should exercise its discretion in staying the case." *Id.* (citing *Ind. State Police Pension Trust v. Chrysler LLC*, 556 U.S. 960, 961 (2009)).

Likewise, a court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," although a party seeking such relief must "include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." Fed. R. Civ. P. 26(c)(1). "The decision to grant or deny bifurcation is a heavily fact-intensive analysis dependent upon the costs and benefits of bifurcation under the unique circumstances of each case." *Hunter v. Sood*, No. 13-2569, 2014 WL 1613024, at *2 (N.D. Ill. Apr. 16, 2014).

4

III.    **ARGUMENT**

A.    **There is no good cause to stay these proceedings.**

"[D]istrict courts enjoy extremely broad discretion in controlling discovery." *Jones v. City of Elkhart*, 737 F.3d 1107, 1115 (7th Cir. 2013); *In re Groupon, Inc. Sec. Litig.*, No. 12-2450, 2014 WL 12746902, at *1 (N.D. Ill. Feb. 24, 2014) (citing *Crawford-El v. Britton*, 523 U.S. 574, 598–99 (1998)). However, a case management schedule "may be modified only for good cause and with the judge's consent[,]" Fed. R. Civ. P. 16(b)(4), and "the suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else[,]" *Landis*, 299 U.S. at 255.

Here, the Court has already entered a discovery schedule requiring Rule 26(a)(1) disclosures to be exchanged within 21 days after Defendants' responsive pleading deadline of September 27, 2019,[1] followed by the issuance of discovery requests within 21 days thereafter. Dkt. 131. Plaintiff preemptively propounded her discovery requests on HII, to ensure that the clock for Defendant's responses would run as soon as possible within the confines of the Court's schedule—i.e., treated as having been served the day the Rule 26(a)(1) disclosures were due, or October 18, 2019, with a response date of November 18, 2019.

1.    **HII's "our-motion-to-dismiss-will-be-granted" argument is self-serving, wrong, and futile.**

"The mere filing of a motion to dismiss does not automatically stay discovery.... Nor does filing a motion to stay mean that a court will automatically grant it." *New England Carpenters Health & Welfare Fund v. Abbott Labs.*, No. 12-1662, 2013 WL 690613, at *1 (N.D.

---

[1]    Based on the context of the Court's minute order, Plaintiff understood the Court's setting of a deadline in reference to when "responsive pleadings" were due to encompass not just answers, but responsive motions like the one filed by HII, as well.

Ill. Feb. 20, 2013) (citing *SK Hand Tool Corp. v. Dresser Indus.*, 852 F.2d 936, 945 (7th Cir. 1988); *DSM Desotech Inc. v. 3D Sys. Corp.*, No. 08-1531, 2008 WL 4812440, at *2 (N.D. Ill. Oct. 28, 2008)). "[A] party has no right to a stay, and the party seeking a stay bears the burden of proving that the Court should exercise its discretion in staying the case." *Red Barn Motors, Inc. v. Cox Enterprises, Inc.*, No. 14-1589, 2016 WL 1731328, at *2 (S.D. Ind. May 2, 2016) (citing *Ind. State Police Pension Trust*, 556 U.S. at 961).

HII's self-serving belief that its motion to dismiss is "meritorious" is not a valid basis for granting a stay. *See New England Carpenters Health & Welfare Fund*, 2013 WL 690613, at *2 (denying motion to stay, noting "[i]t may well be that Abbott's motion to dismiss will be successful, but until the District Judge rules on the motion, Abbott's assertion [that the motion has a high likelihood of success] is mere speculation").

Moreover, HII's motion to dismiss cannot be "meritorious" where it ignores the plain allegations of Plaintiff's complaint. For instance, the Court may properly exercise specific personal jurisdiction over HII because it targeted Plaintiff and other consumers *in Illinois* with the lead generation and calling at issue. Compl. ¶ 31; *see also* <u>Exhibit B</u> (NCE discussing case with HII in context of disclosing "everyone selling in IL"); <u>Exhibit E</u>, Duffie Dep. at 59 ("HII knew the state in which the consumer that was being quoted lived when it provided the quotes").

Plaintiff also does not need to allege that HII physically placed the calls at issue; rather, HII is directly liable for its own acts in materially facilitating and participating in the calling at issue (including by paying for them, providing scripts, and directly participating during the calls by virtue of providing real-time access to pricing information and sending quotes to the recipient during the call), as well as vicariously liable under common law principles of agency. This includes apparent authority by emailing quotes to call recipients during the calls using its

6

tradename and authorizing the agents to use approved scripts and access and input data into its system, ratification by facilitating the calls and retaining the monetary benefits of resulting sales despite knowing that they were made through unsolicited robocalls, and implied actual authority by directly contracting with the lead generators and orchestrating the telesales at issue. Compl. ¶¶ 55, 43, 46, 61, 92, 98, 102.

Likewise, HII's argument that there is no private right of action for internal do-not-call violations under 47 C.F.R. § 64.1200(d) is wrong: As if the plain language of the statute weren't clear enough, the FCC has confirmed that 47 C.F.R. § 64.1200(d) violations are actionable under 47 U.S.C. § 227(c)(5)—which provides for injunctive relief and up to $500 per violation (or treble damages upon a finding of willfulness). *In re DISH*, 28 FCC. Rcd. 6574, ¶ 29 (2013). The Court is "bound to follow" this precedent. *Blow v. Bijora, Inc.*, 855 F.3d 793, 802 (7th Cir. 2017); *Charvat v. GVN Michigan, Inc.*, 561 F. 3d 623, 628-29 (6th Cir. 2009) (finding that the private right of action in 47 U.S.C. § 227(c)(5) applies to violations of 47 C.F.R. § 64.1200(d)).

And while HII and its co-defendants have worked hard to frustrate the discovery process in this case, the materials Plaintiff has obtained thus far demonstrate that HII's suggestion that it has nothing to do with NCE is nonsense. Sean Duffie, an agent of the Health Advisors entity that quoted Plaintiff through HII's system, testified that he contracted with HII in its capacity as an insurance administrator providing quotes and insurance packages for solicitation to consumers. Exhibit E, Duffie Dep. at 80. Health Advisors has also produced its sub-agent agreement with HII for the sale of insurance-related products, as well as an Assignment of Commissions agreement through which HII agreed to its marketing fees and commissions. Exhibit D. And Rising Eagle, the lead generator that physically placed the call at issue during which Health Advisors quoted an NCE product to Plaintiff via the HII system, itself has provided a declaration

confirming the relationship with HII. Exhibit F, Spiller Decl. ¶ 6.

HII is an unrepentant TCPA violator that has been sued multiple times for the same violations alleged here. Indeed, what could be more probative of the lack of merit to its motion to dismiss than the fact that it or its subsidiaries already *lost* motions to dismiss similar TCPA claims? *See Moser v. Health Ins. Innovations, Inc.*, No. 17-1127, 2018 WL 325112, at *7 (S.D. Cal. Jan. 5, 2018), *Engle v. Unified Life Ins. Co., Inc.*, No. 14-1908, 2014 WL 12508347 (S.D. Cal. Oct. 27, 2014); *Cunningham v. Health Plan Intermediaries Holdings, LLC*, No. 18-919, 2018 WL 7350924 (M.D. Fla. Nov. 15, 2018). As such, Defendant's motion should be denied.

### 2.    A stay is futile and lacks good cause.

HII's argument that "good cause" exists to stay discovery because granting its motion to dismiss would purportedly "dispose of this case in its entirety" is wrong: Whether or not HII's motion to dismiss is granted will <u>not</u> resolve Plaintiff's claims against its co-defendants, and thus even if this Court dismisses HII, Plaintiff will *still* need to subpoena HII for relevant evidence and deposition testimony. This is particularly the case where NCE, Rising Eagle, Health Advisors, and Sean Duffie all point to HII as the third-party administrator with relevant evidence applicable to the lead generation at issue. *E.g.,* Exhibit E, Duffie Dep. at 19-23, 56, 59 (explaining process whereby agent logs into HII's online platform to receive pricing information and deliver quotes, and that he no longer has access to it); Exhibit D (Health Advisors agent agreement with HII); Exhibit F, Spiller Decl. ¶ 6 (confirming calls transferred to Health Advisors were for HII); Exhibit G, Interrog. No. 5. Thus, imposing a stay will do nothing but unfairly prejudice Plaintiff by unnecessarily delaying the inevitable discovery Plaintiff must take.

Further, while NCE, NBBI, and AccessOne have filed a separate motion to dismiss, Dkt. 147, they are in a different position than HII: While their motion to dismiss should, like HII's, be

denied on its merits, NCE, NBBI, and AccessOne have affirmatively waived any jurisdictional arguments through their active defense of this case in this District for over six months (in the case of NBBI and AccessOne) and seventeen months (in the case of NCE), including through serving and responding to discovery, attending multiple court hearings, engaging in adversarial motion practice, and even answering earlier complaints without moving to dismiss on any ground, jurisdictional or otherwise. Moreover, NCE, NBBI, and AccessOne notably do not seek a stay; in fact, they agreed to proceed with discovery in this matter as a condition of Plaintiff agreeing to not oppose an extension for them to respond to her operative complaint. Dkt. 122 ¶ 5. But because these Defendants largely point to HII or its agents as the parties with the bulk of relevant information, a stay as to HII severely limits Plaintiff's ability to investigate her claims.

Because Plaintiff will still need to conduct discovery as to HII regardless of the outcome of its motion to dismiss, its request to stay discovery is futile and should be denied. *See Principle Sols. LLC v. Feed.Ing BV*, No. 13-223, 2015 WL 3936583, at *2 (E.D. Wis. June 25, 2015) (denying motion to stay pending motion to dismiss, where "even if [defendant] prevails on his motion to dismiss, he would still be subject to deposition by means of a non-party subpoena").

### 3. Denying a stay will not impose undue burden on HII, but it *will* burden Plaintiff.

Plaintiff has been trying to get relevant discovery from HII for months. First, NCE intentionally withheld disclosure of HII from Plaintiff's counsel for a year, which forced Plaintiff's counsel to waste tremendous time, money, and energy issuing over thirty subpoenas to attempt to piece together NCE's lead generation process. *See* <u>Exhibit B</u> (May 2018 email between NCE and HII, with NCE's owner telling HII's VP of Compliance that "if [HII's in-

house counsel] can find a way for me to avoid mentioning [HII] that would be ideal").[2] After HII's disclosure, Plaintiff subpoenaed HII on June 11, 2019, for a deposition and production of materials relating to Plaintiff, its applicable practices, and the calls and lead generation at issue. However, HII refused to produce any materials and, instead, moved to quash, citing the purported "disproportional and unduly burdensome non-party discovery." Given this objection, Plaintiff added HII as a defendant. Dkt. 116. Now, HII *still* doesn't want to produce discovery; instead, HII seeks to avoid it with a dismissal of Plaintiff's claims. Of course, resolution of HII's motion to dismiss won't obviate the need for such discovery, but in the meantime, Plaintiff will have wasted the better part of a year trying to get basic information about the facts of this case.

Other key parties at issue – NCE, Rising Eagle, Sean Duffie, and Health Advisors – have indicated that HII is the entity best (or solely) capable of providing relevant documents pertaining to the lead generation and calling at issue, including by virtue of being the intermediary between the telephone lead generation and seller Defendants. *E.g.,* Exhibits D, H. This case has progressed too little for too long, and where HII is the party best equipped to provide substantive information concerning the calling and lead generation Plaintiff sued about, a further delay plainly detracts from the fair and efficient adjudication of this case. "[T]he suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else[,]" *Landis*, 299 U.S. at 255, and HII here fails to meet that burden. *See Evanston Ins. Co. v. Keepers Fin. Corp.*, No. 11-1107, 2011 WL 13220156, at *6 n. 43 (C.D. Cal. Oct. 13, 2011) ("[A] party cannot justify a stay on the basis that it will be a hardship for it to defend the suit it wishes to have stayed.").

---

[2]      Indeed, for a significant portion of this lawsuit, NCE falsely contended that it didn't engage in telemarketing at all.

**B.** **There is no valid reason to bifurcate discovery.**

"Given that a court is expected to act to secure the just, speedy, and inexpensive determination of every action, bifurcation remains the exception and not the rule." *Estate of Watts v. Heine*, No. 07-644, 2008 WL 4056317, at *1 (E.D. Wis. Aug. 25, 2008) (citing *Trading Techs. Int'l v. eSpeed, Inc.*, 431 F. Supp. 2d 834, 836-37 (N.D. Ill. 2006)).

**1.** **HII's effort to limit the scope of discovery to "NCE Premier" is a red herring.**

This case is <u>not</u> limited to calls involving solicitations of any one particular NCE-branded product, and HII's suggestion that the extent to which it solicits NCE Premier is a "threshold issue" is, thus, a red herring.

First, from a dispositive viewpoint, it doesn't matter if HII sells NCE-branded products **<u>at all</u>**, since Plaintiff's claims for all but one of her three proposed classes are severable of HII's involvement: (1) Plaintiff's Internal DNC Class (Count II) is against each Defendant based on violations of the TCPA's internal do-not-call rules, (2) Plaintiff's ATDA Class (Count III) includes "[a]ll persons in the State of Illinois who Rising Eagle called, and … NCE or Unified products or services were quoted[,]" and (3) Plaintiff's Caller ID Class (Count IV) is based on each Defendant's violation of the ATDA's prohibition against interfering with caller identification. Thus, even if HII truly had no involvement at all with NCE—an assertion that is demonstrably false, *e.g.*, <u>Exhibit B</u> (email between NCE and HII about this case)—the fact that discovery will proceed against the other Defendants makes bifurcation as to HII unnecessarily piecemeal and futile because Plaintiff will *still* be pursuing the same discovery as to the extent and nature of the calling and NCE-related lead generation at issue. The other relevant parties and non-parties to this action – NCE, Health Advisors, Sean Duffie, and Rising Eagle – have all identified HII as the entity with crucial information relating to the NCE lead generation process,

11

and so even if HII is somehow dismissed from this action, it can expect a third-party subpoena (again). HII's unwarranted problem with engaging in discovery like its co-defendants is not a valid basis to upend the ordinary and longstanding course of discovery in these proceedings.

Second, the particular brand of NCE product being sold is immaterial under the TCPA, since the statute is content-neutral. *See Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999, 1012 (N.D. Ill. 2010) (citing *Joffe v. Acacia Mortg. Corp.*, 121 P.3d 831 (Ariz. Ct. App. 2005), for finding that "the TCPA was narrowly tailored to serve the significant and content-neutral governmental interest"). Thus, it matters not whether Plaintiff was solicited NCE Premier or some other NCE-branded product; the point is that Defendants, including HII, are using unsolicited robocalling to solicit NCE-branded products. *See* 47 U.S.C. § 227(b)(1)(A)(iii) (prohibiting "any" call made using an automatic telephone dialing system or an artificial or prerecorded voice without the prior express consent of the called party). The particular brand doesn't make HII any more or less liable under the TCPA for the illegal calls made at its direction and on its behalf as a "third-party administrator" soliciting sales of NCE products. *See In re DISH*, 28 FCC Rcd. 6574, at ¶ 1 (confirming that those on whose behalf calls are made in violation of the TCPA may be subject to vicarious liability). Notably, HII doesn't contend, in its declaration or otherwise, that it has *no* relationship to generate sales of NCE-branded products.[3]

---

[3]    That HII attempts to persuade the Court through a carefully-worded declaration also shows why its motion should be denied. HII's declarant states that "HII does not have a contract or business relationship with [NCE] … to sell the NCE Premier product or allow third-parties to use the HII Portal to sell the NCE Premier product[,]" but this contradicts the fact that NCE ***itself*** has identified HII as a third-party administrator applicable to "NCE Premier." Exhibit G at 4-5; Dkt. 168-2, Krul Decl. ¶¶ 6-7. HII's declaration also artfully asserts that "[t]he NCE Premier product is not one of the products listed in the Program Agreement" between Unified's agent Xchange and HII to market NCE-branded programs, Dkt. 168-2, Krul Decl. ¶ 7, while neglecting to inform the Court that, *of course* it doesn't, since that agreement doesn't identify ***any*** NCE-branded product by name. Exhibit H. Moreover, the Krul declaration is written in the present

Thus, even if HII doesn't sell the particular product referenced in the call to Plaintiff (a suggestion made only by HII in the face of overwhelming contradictory evidence), this does not preclude a finding of liability based on its participation in facilitating Rising Eagle and its contracted agent Health Advisors in placing the illegal call to generate business for NCE.

Courts do not bifurcate discovery where the applicable issues are intertwined. *Beezley v. Fenix Parts, Inc.*, 328 F.R.D. 198, 203 (N.D. Ill. 2018). Here, since Plaintiff's case will require discovery into the extent and nature of HII's involvement in generating sales of NCE products regardless of whether "the NCE Premier product is a product quoted or sold through HII's internet portal"—particularly given the known relationships between Rising Eagle, Health Advisors, and NCE with HII as an NCE third-party administrator—discovery is unavoidable. Piecemeal discovery as to "NCE Premier" as opposed to the call and lead generation process generally does not support judicial economy or the efficient adjudication of these proceedings.

### 2.    Bifurcation will harm Plaintiff through even further delay and piecemealed discovery disputes.

After a year-and-a-half of litigation—including multiple discovery requests, numerous meet-and-confers, a fully-briefed motion to compel (Dkt. 36), an order by the Court *compelling* NCE to produce such after oral argument (Dkt. 92), and a subsequent, supplemental production by Defendant—HII remains the ***sole*** third-party administrator NCE identified as having been used to market its "NCE Premier" product. *E.g.,* Exhibit G at 4-5 (NCE's amended interrogatory responses). Sean Duffie—an agent of the Health Advisors entity that provided the quote to Plaintiff during one of the calls at issue—also confirmed his company's relationship with HII. *See* Exhibit E, Duffie Dep. at 80. Indeed, Health Advisors itself has produced a contract with HII

---

tense, likely because HII no longer has a relationship with Unified Life. Regardless, what HII sells today has zero relevance as to what it was selling when Plaintiff received the calls at issue.

and examples of NCE-related scripts HII provided it to use during calls, as well as emails with HII. Exhibits D, I. Rising Eagle—the company that physically placed the call to Plaintiff in which she was quoted an NCE product—likewise confirmed the HII relationship. Exhibit F, Spiller Decl. ¶ 6. And Plaintiff's counsel's client in another lawsuit, *Hossfeld v. Am. Fin. Sec. Life Ins. Co.*, No. 0:19-cv-60597 (S.D. Fla.), even received direct, emailed solicitations during multiple calls for NCE from HII *after this suit had been filed*. Exhibit J (pages 4, 12, 17 of PDF).

For its part, HII has known about this lawsuit *at least* since NCE told HII it wanted to avoid having to identify HII to Plaintiff's counsel in discovery over a year ago. Exhibit B. Before being added as a defendant, HII refused to provide any materials in response to Plaintiff's subpoena, and instead moved to quash because having to provide basic information about its business and the lead generation at issue was purportedly "disproportional and unduly burdensome non-party discovery." But after having been added as a defendant in lieu of proceeding with the motion to quash, HII now asks this Court to delay discovery even further, to either stay it entirely or break it up into piecemeal issues. Enough is enough: This case has been pending for well over a year, and the interests of justice will not be served by further delay and obstruction. *See In re Abbott Labs. Derivative S'holder Litig.*, No. 99-7426, 2003 WL 22114274, at *1 (N.D. Ill. Sept. 9, 2003) (prolonged length of case without progress "counsels against any further delay" in denying motion to bifurcate discovery); *Mitutoyo Corp. v. Cent. Purchasing, Inc.*, No. 03-990, 2004 WL 635064, at *2 (N.D. Ill. Mar. 31, 2004) ("bifurcating discovery at this late stage of the proceedings is untimely"). If HII could truly show that it didn't solicit for NCE, it has already had ample opportunity and apparently elected not to do so. The fact that it has, instead, chosen to fight tooth-and-nail to avoid producing responsive materials is highly telling.

Moreover, HII's persistent reticence in responding to discovery practically guarantees

14

that bifurcating discovery will result in piecemeal discovery disputes that exponentially delay and frustrate the efficient progress of these proceedings. *See Beezley*, 328 F.R.D. at 203-04 ("Given the history of the case thus far, discovery is likely to be contentious.... There is absolutely nothing to suggest the parties wouldn't continue in this vein, with time-consuming disputes arising over whether particular discovery [falls within the bifurcated parameters or not]. From this perspective, there is nothing to gain in terms of judicial economy by bifurcating discovery."). It is far more efficient to address all issues at once through discovery in the ordinary course, rather than subjecting these proceedings to delay after delay resulting from discrete discovery fights. Plaintiff submits that this Court chose to not bifurcate discovery throughout these proceedings for good reason; it should not now change the status quo under which this lawsuit has been litigated for the past year-and-a-half. Consequently, because there is no good reason to bifurcate discovery, and bifurcation will detract from judicial economy and the efficient resolution of these proceedings, HII's motion should be denied.

### 3. HII failed to comply with Fed. R. Civ. P. 26(c)(1).

The Federal Rules require that a party moving for a protective order – including that "limit[s] the scope of disclosure or discovery to certain matters" – must include "a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." Fed. R. Civ. P. 26(c)(1). HII's motion includes no such certification. *See* Dkt. 168. As such, it should be denied for this reason alone.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, HII's motion to stay or bifurcate discovery should be denied. The Court should order HII to respond to Plaintiff's discovery requests by November 18, 2019, which is 30 days after the parties' exchange of Rule 26(a)(1) disclosures were due, *see* Dkt. 131.

Respectfully submitted,

MARY BILEK, individually and on behalf of others similarly situated

Dated: October 31, 2019                                      */s/ Alexander H. Burke*

Alexander H. Burke
Daniel J. Marovitch
BURKE LAW OFFICES, LLC
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
Telephone: (312) 729-5288
aburke@burkelawllc.com
dmarovitch@burkelawllc.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on October 31, 2019, I electronically filed the foregoing with the

Clerk of the Court, using the CM/ECF system, which will send notification of such filing to all

counsel of record.

*/s/ Alexander H. Burke*

16