

## ASSIGNMENT OF COMMISSIONS

*Complete the following if you want HII to pay your Marketing Fees and or Commissions to a properly licensed and appointed insurance Agency or another Agent:*

I (your name) ▮

Hereby assign to Assignee (entity name): ▮

Assignee Address: ▮     City: ▮     State: ▮     Zip: ▮

all of my right, title, and interest in Marketing Fees and/or renewals to which I am now entitled or become entitled, under existing contracts and agreements, heretofore entered into by and between myself and HII hereby authorize and empower HII, to pay assignee all Marketing Fees and renewals now due or which may accrue under said contracts, for a period of one year from this date and thereafter until such time as I terminate this assignment by written notice to HII.

I agree that such payments of Marketing Fees under my contract are the same as if payment was made directly to me. I hereby covenant and agree that I am the absolute and sole owner of said Commissions and Marketing Fees, free from prior assignment or any encumbrance of any kind or character whatsoever, and that I have full right and lawful authority to sell and transfer the same as aforesaid.

Witness my hand this ▮ day of ▮ , Year ▮

Agent's Signature: ▮
IP Address: ▮

CAUTION: The person assigning his or her Marketing Fees (assignor) will not recover the right to receive any further Marketing Fees during the one year period from the date of this assignment unless and until the person to whom such rights are assigned (assignee) releases, in writing, his or her rights to receive such Marketing Fees. Please be certain you understand this before signing the form. This instrument may be revoked, in writing, by the Assignor at any time after the one year period.



### CERTIFICATE OF INSURANCE

| | |
|---|---|
| **NOTICE:** This insurance provides professional liability (E&O) insurance coverage for properly licensed individual insurance agents and insurance consultants. It is written on a "claims-made and reported" basis and applies only to "written claims" first made against an insured and reported to the Insurer during the Named Insured's Certificate Period. No coverage exists for claims first made or reported after the Named Insured's Certificate Period unless an extended reporting period applies. (For those Named Insureds who are residents of or practice in New York State, no coverage exists for claims first made or reported after the end of the coverage relationship unless an Extended Reporting Period applies.) Defense costs reduce the Limits of Liability and are subject to the Retention. Please review the policy carefully and discuss the coverage with your insurance agent or broker. This certificate of insurance does not amend, extend, or alter the coverage afforded by the insurance policy, and coverage is subject to all of the terms, conditions and exclusions of the policy. | |

| NAMED INSURED: | PRODUCER: |
|---|---|
| ▇▇▇▇▇▇▇▇▇▇ | ▇▇▇▇▇▇▇▇▇▇ |

**COMPANY AFFORDING COVERAGE:** Continental Casualty Company.

**Option A:** Life, accident, health, LTC, disability, including Medicare Advantage & Medicare Supplements, employee benefit administration

| Policy Number | Certificate Period | | Limits of Liability |
|---|---|---|---|
| ▇▇▇▇ | ▇▇▇▇ | ▇▇▇▇ | $1 Million per claim / $3 Million annual aggregate |

| COVERAGE: | RETENTION AMOUNT: Each Claim |
|---|---|
| Life, LTC, Accident, and Health | $0 |
| Medicare Advantage and Medicare Supplemental | $0 |
| Disability Income Insurance | $0 |
| Indexed Annuities/Fixed Annuities (if purchased) | Not Purchased |
| Variable Annuities (if purchased) | Not Purchased |
| Mutual Funds (if purchased) | Not Purchased |

| NOTICE OF CLAIMS:<br>Life Agent Intake Notice Administrator, CNA<br>CNA - Claims Reporting<br>PO Box 8317, Chicago IL 60680-8317<br>or via email: SpecialtyProNewLoss@cna.com | SPECIAL PROVISIONS: |
|---|---|

Named Insured's Endorsement attached at Certificate Inception:

| DATE: ▇▇▇▇ | By Authorized Representative:<br>▇▇▇▇ |
|---|---|

**Coverage:** This certificate of insurance is not a contract of insurance. It is merely evidence of insurance provided under a Master Policy. Covered claims are paid in accordance with the terms of the Master Policy. Coverage is provided based on representations made on the Named Insured's Application for Insurance. No coverage exists if the representations made on the Named Insured's Application for Insurance are discovered to be false. Failure to provide true and accurate responses to any of the questions on the Application for Insurance will result in the immediate voiding of the insurance coverage issued and/or the denial of claims asserted against the Named Insured. Coverage is in-force only if premium payments are current. A Policy Aggregate of $50,000,000 applies under the Master Policy except with respect to those Named Insureds who are resident of or practice in New York State. A complete copy of the policy is available at www.napa-benefits.org/nd.



# HEALTH INSURANCE INNOVATIONS (HII)
# FAIR CREDIT REPORTING ACT DISCLOSURE & AUTHORIZATION FORM

HEALTH INSURANCE INNOVATIONS AND/OR ITS AFFILIATED COMPANIES ("HII") MAY OBTAIN A CONSUMER REPORT ABOUT YOU IN CONNECTION WITH YOUR PROSPECTIVE AGENT APPLICATION AND/OR COMMISSION ADVANCE APPLICATION ("THE APPLICATION").

**AUTHORIZATION**

I authorize HII to conduct a public records search, and/or to obtain a consumer report and/or an investigative consumer report about me from a consumer reporting agency. These reports may concern my credit history, worthiness, standing, and/or capacity. These reports may also concern my character, general reputation, personal characteristics, mode of living, criminal history, motor vehicle record or other data relevant to the Application. I understand that HII will use this information in whole or in part as a factor in considering the Application.

I understand that if HII decides not to approve the Application, and thereby to take adverse action against me because of information contained in any consumer report(s) authorized by my signature on this form, HII will provide to me:

- a written pre-adverse action disclosure;
- an adverse action notice;
- a copy of any consumer report(s) received and used by HII;
- a copy of "A Summary of Your Rights Under the Fair Credit Reporting Act";

the name, address, and telephone number of any consumer-reporting agency that furnished a consumer report about me to them.

I understand that I am entitled to contest the accuracy or completeness of information contained in any consumer report. I understand that I am entitled to receive an additional free copy of any consumer report. I understand that the consumer reporting agency does not itself make any decision regarding the Application, and the agency cannot explain HII's decision to me.

A photocopy or fax copy of this authorization shall be as effective as the original. This authorization remains valid until I revoke it in writing sent to HII.

Printed Name: ███████████_____ Social Security Number: ███████████

Signature: ████████_____ Date: ████████████_____

Date of Birth: ████████___

Street Address: ████████████_____

City / State / Zip: ████████_____████████



HII AGENT PROFILE FORM

# AGENT PROFILE FORM

**Complete all of the following information about yourself:**

Agent Name: (Exactly how it appears on your insurance license) ███████████

DOB: ███████    SS#: ███████    Driver's License #: ███████████    State: FL

Home Address: ███████████    City: ███████    State: ███    Zip: ███

Email: ███████████    Mobile: ███████    Home Phone:

List your E&O Coverage insurer: NAPA    Amount of Coverage: 100000.00

Effective date: ███████    Paid to Date: ███████

(Provide us with a copy of your current E&O Insurance Coverage.)
Indicate the lines of insurance you are licensed to sell:    ✔ Life    ✔ Health    Other:

List the states you are currently licensed to sell in: SEE NIPR

**If Commission are being paid to a licensed insurance Agency (Corp. or LLC), complete the following:**

Agency Name:    Tax ID:    Email: ███████████

Business Address:    City:    State:    Zip:

Business Email:    Phone:    Website:

E&O Insurance Coverage through:    Amount of Coverage:

Effective date:    Paid to Date:

Indicate the lines of insurance the agency is licensed to sell:    Life    Health    Other:

List the states the agency is currently licensed to sell in:

**Please answer the following questions:**
Any "YES" answer to questions 1 thru 6 below requires a separate statement, including dates, location, basis of charge and legal documentation indicating final disposition of the case.

1. Have you ever been convicted of a felony?    YES    NO

2. Do you currently have any pending felony convictions in the courts?    YES    NO

3. Have you ever had an administrative action taken against you by a state insurance department?    YES    NO

4. Has a carrier ever terminated your appointment for anything other than lack of production?    YES    ✓ NO

5. Has your insurance license ever been suspended, cancelled or revoked by any Department of Insurance?    YES    NO

6. Have you ever filed Bankruptcy, been sued or had a judgment entered against you?    YES    NO

**Notice Regarding Background Checks**
Before our company may begin processing your appointment and/or license application, we are required by *federal law to ensure that all agents and/or employees we wish to do business with are not convicted criminals or felons. *(Criminal checks are based on the Violent Crime Control Act of 1994). We will notify you if your background report results are unfavorable, and we consequently decline your license appointment. In addition, you will be advised to discontinue submission of business to our company and/or service to any of our clients as well. In the event that the information reflected in the criminal report is incorrect, we will advise you of the protocol to appeal.



HII AGENT PROFILE FORM

**Make sure that every line is completed before signing:**

I hereby certify that all of the above information is true and complete to the best of my knowledge. I further understand that any false statements on this form may be sufficient cause for termination.

Agent Signature: ▓▓▓▓▓▓▓▓▓▓  Title: ▓▓▓▓▓▓  Date: ▓▓▓▓▓▓▓▓▓▓

Recruited By:  HII Code #:

IP Address: ▓▓▓▓▓▓▓



# HEALTH INSURANCE INNOVATIONS (HII)
## SUB-AGENT INFORMATION FORM

**COMPLETE THE FOLLOWING INFORMATION ABOUT YOURSELF:**

Agent Name _____ Date of Birth _____ Social Security # _____

Corporation/Agency Name _____ Tax I.D.* _____ Email _____

Business Street Address _____ City _____ St. _____ Zip _____

Resident Street Address _____ City _____ St. _____ Zip _____

Business Telephone # (____) - _____ Fax # (____) - _____ Resident Telephone # (____) - _____

\* If HII is to pay Marketing Fees/ Commissions to an Agency or Corporation and you are not the Owner / Officer, you must sign the assignment below, and we must have another License Request Form completed by the Agency Owner / Officer, as well as copies of his or her license. Include the Agency's license if applicable in your state.

**ANSWER THE FOLLOWING QUESTIONS:**

1. Have you ever been convicted of a felony? ........................................................... ○ YES ⦿ NO
2. Have you ever had an action taken against your insurance license by any State Insurance Department? .............. ○ YES ⦿ NO
3. Have you ever filed Bankruptcy, been sued or had a judgement entered against you? ○ YES ⦿ NO

*Any "YES" answer above requires a separate statement, including dates, location, basis of charge and legal documentation indicating disposition of case.*

1. Do you carry errors and omissions coverage? ⦿ YES ○ NO (If YES, list carrier name and limits) NAPA 1MIL/3MIL
2. What lines of insurance are you licensed to sell: Life   Accident / Health   Other _____
3. Please list the state(s) where you hold a license: State SEE License # SEE NIPR ; State SEE License # SEE NIPR ; State SEE License # SEE NIPR

*Attach copies of your resident and all nonresident licenses. (HII does not require an appointment fee.)*

**ASSIGNMENT OF MARKETING FEES / COMMISSIONS REQUEST:**

*Only complete the following if authorizing HII to pay your Marketing Fees/ Commissions to a Corp., Agency, or another Agent.*

I, _____ Agent Code # _____, hereby assign to Assignee: _____ all of my right, title, and interest in Marketing Fees and/or renewals to which I am now entitled or become entitled, under existing contracts and agreements, heretofore entered into by and between myself and HII. I hereby authorize and empower HII, to pay assignee all Marketing Fees and renewals now due or which may accrue under said contracts, for a period of one year from this date and thereafter until such time as I terminate this assignment by written notice to HII. I agree that such payments of Marketing Fees under my contract are the same as if payment was made directly to me. I hereby covenant and agree that I am the absolute and sole owner of said Marketing Fees, free from prior assignment or any encumbrance of any kind or character whatsoever, and that I have full right and lawful authority to sell and transfer the same as aforesaid.

Witness my hand this ____ day of _____, Year ____, Agent's Signature _____

CAUTION: The person assigning his or her Marketing Fees (assignor) will not recover the right to receive any further Marketing Fees during the one-year period from the date of this assignment unless and until the person to whom such rights are assigned (assignee) releases, in writing, his or her rights to receive such Marketing Fees. Please be certain you understand this before signing the form. This instrument may be revoked, in writing, by the Assignor at any time after the one-year period.

Address of Assignee: _____ Tax I.D. # _____

**STATEMENT OF UNDERSTANDING:**

This Statement of Understanding must be signed to be in effect and is between undersigned Agent and Health Insurance Innovations, herein referred to HII. HII agrees to pay Marketing Fees / Commissions on the plans listed on the attached Addendum in accordance with, and subject to, the conditions and covenants below.

- The term "monthly plan cost and paid" shall mean monies, excluding any enrollment fee, monthly administrative fee or association dues, due and paid for the plan after the effective date of this Agreement by each member and for whom the Agent is the representative of record.
- Marketing Fees / Commissions shall be payable only when Agent is (a) properly approved to transact business for HII and (b) is continuously recognized by HII as the Agent of Record to receive said Marketing Fees / Commissions.
- This Agreement may be terminated by either party with a 30 day written notice but only with respect to new cases. Such terminations will have no effect on the payment of Marketing Fees / Commissions on business written prior to the effective date of termination as may otherwise be payable.
- No advertising material (on paper, over the radio or television or on the Internet) bearing HII or our product name or describing any named product distributed by HII can be produced without prior written approval from HII.
- The Agent is an independent contractor, not an employee of HII.
- The Agent has no authority to act on behalf of HII, bind coverage, waive, or alter any provision of the application or the Product under which membership is issued.
- Representations and opinions of the Agent are not binding on HII plans.
- By signing below, I grant HII prior written express invitation and permission to transmit facsimile and email advertisements to me.
- Ensure compliance with the Federal Trade Commission's Telemarketing Sales Rule, including, but not limited to Local, State, and Federal laws promulgated pursuant to the Telephone Consumer Protection Act (TCPA).
- Support DNC Manager (can be the Agent) in:
  - managing, updating, and maintaining the internal Do Not Call list
  - implement and disseminate internal DNC policy and procedures to all entity staff
  - obtaining certification from each entity supplying leads to verify that supplied leads have been checked against the National and applicable State registries
  - ensuring purchased or agency-generated leads are not obtained via pre-recorded solicitation calls without the express, written consent of the persons being called, regardless of whether said persons are or are not on the Do Not Call registry
  - scrubbing leads if the lead supplier does not certify that they were checked against the National and applicable State registries.
  - checking all supplied/purchased leads against the National, State, Local, and Internal DNC lists prior to distributing list for solicitation.
  - Placing telephone calls to any telephone number on the applicable Internal, Local, State or National DNC registry, outside of exceptions listed in the registries' policies and procedures.
  - Ensure all Agent's staff, including full-time, part-time and 1099 employees receive, review and document receipt of the Agent's DNC policy and procedures. Written documentation of receipt and understanding of Agent's DNC policy is required to be kept on file in each staff members' file & reconfirmed every six months.

**READ CAREFULLY BEFORE SIGNING:**
The above information is true and complete. I understand false statements on this form may be sufficient cause for termination. I have read the Statement of Understanding and understand that if these guidelines are not followed, the result will be termination of this Agreement.

Agent Signature:_____ Date:_____ Title:_____

Sub-AGN Name:_____ HII Code #:_____ GA/MGA Name: _____ HII Code #:_____

Recruited By:_____

IP Address:_____

**Mail your completed required forms and a copy of your current license(s) to your GA or MGA.
If none is listed, fax the completed, signed documents to 1-877-376-5832, or
you can mail the forms to Health Insurance Innovations, 14501 N. Florida Ave., Suite 201, Tampa, FL 33613**

# Exhibit A

### A. Preamble

This Business Associate Agreement (the "Agreement") is made by and between Health Plan Intermediaries Holdings, LLC ("Covered Entity"), and the individual or entity ("Business Associate") named on the Sub-Agent Information Form ('Sub-Agent Form') to which Exhibit A is attached as of the date Business Associate executed the Sub-Agent Information Form.

Business Associate solicits individuals to purchase insurance products offered by Covered Entity and provides certain administrative services in connection therewith to or on behalf of Covered Entity (the "Services") pursuant to the terms and conditions contained in the Sub-Agent Form. Covered Entity and Business Associate mutually agree to comply with the requirements of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and its implementing regulations (45 C.F.R. Parts 160, 162 and 164), and the requirements of the Health Information Technology for Economic and Clinical Act, as incorporated in the American Recovery and Reinvestment Act of 2009 (the "HITECH Act"), that are applicable to business associates). Covered Entity and Business Associate agree to incorporate into this Agreement any applicable regulations issued by the United States Department of Health and Human Services ("HHS") with respect to the HITECH Act that relate to the obligations of business associates. Business Associate recognizes and agrees that it is obligated by law to meet the applicable provisions of the HITECH Act.

### B. Privacy and Security of Protected Health Information and Electronic Protected Health Information.

1. **Permitted Uses and Disclosures.** Business Associate is permitted or required to use or disclose Protected Health Information ("PHI") and electronic PHI it creates or receives for or from Covered Entity or to request PHI and electronic PHI on Covered Entity's behalf only as follows:

    (a) Functions and Activities on Covered Entity's Behalf. To perform functions, activities, services, and operations on behalf of Covered Entity, consistent with this Agreement, HIPAA, as amended by the HITECH Act, and its' implementing regulations.

    (b) Business Associate's Operations. Business Associate may use the Minimum Necessary PHI and electronic PHI for Business Associate's proper management and administration or to carry out Business Associate's legal responsibilities. Business Associate may disclose the Minimum Necessary PHI and electronic PHI for Business Associate's proper management and administration or to carry out Business Associate's legal responsibilities only if:

    (i) The disclosure is Required by Law; or
    (ii) Business Associate obtains reasonable assurances from any person or organization to which Business Associate will disclose PHI or electronic PHI that the person or organization will:

    (a) Hold such PHI, electronic PHI in confidence and use or further disclose it only for the purpose for which Business Associate disclosed it to the person or organization or as Required by Law; and
    (b) Promptly notify Business Associate (who will in turn promptly notify Covered Entity) of any instance of which the person or organization becomes' aware in which the confidentiality of such PHI or electronic PHI was breached.

2. **Minimum Necessary and Limited Data Set**. Business Associate's use, disclosure or request of Protected Health Information shall utilize a Limited Data Set, as defined by HIPAA, if practicable. Otherwise, Business Associate will, in its performance of the functions, activities, services, and operations specified in Section A.1(a) above, make reasonable efforts to use, to disclose, and to request from Covered Entity only the minimum amount of Covered Entity's Protected Health Information reasonably necessary to accomplish the intended purpose of the use, disclosure or request.

3. **Prohibition on Unauthorized Use or Disclosure**. Business Associate will neither use nor disclose PHI or electronic PHI except as permitted or required by this Agreement, as otherwise permitted in writing by Covered Entity, or as Required by Law. This Agreement does not authorize Business Associate to use or disclose PHI or electronic PHI in a manner that would violate the requirements of HIPAA, as amended and its implementing regulations (45 C.F.R. Parts 160, 162, 164 as applicable), if done by Covered Entity, except as set forth in Section A(1)(b) above.

4. **Sale of PHI**. Business Associate shall not directly or indirectly receive remuneration in exchange for PHI except where permitted by the Agreement and consistent with applicable law.

5. **Marketing**. Business Associate shall not directly or indirectly receive payment for any use or disclosure of PHI for marketing purposes except where permitted by the Agreement and consistent with applicable law.

6. **Fundraising**. Business Associate shall not use or disclose PHI for fundraising purposes except where permitted by the Agreement and consistent with applicable law.

7. **Genetic Information**. Business Associate shall not use or disclose genetic information to the extent prohibited by 45 C.F.R § 164.502(a)(5)(i).

8. **Business Associate's Performance of Covered Entity Obligations.** To the extent that Covered Entity and Business Associate agree that Business Associate is to carry out Covered Entity's or its clients' obligations under 45 C.F.R. Part 164, Subpart E (the Privacy Rule), Business Associate shall comply with the requirements of the Privacy Rule that apply to Covered Entity or its clients in the performance of such obligation. In addition, Business Associate shall comply with the requirements of 45 C.F.R. Part 164, Subpart C applicable to business associates. This provision shall not be interpreted to limit the generality of any other provision of this Agreement.

9. **Information Safeguards**. Business Associate will develop, document, implement, maintain, and use appropriate administrative, technical, and physical safeguards, in compliance with Social Security Act § 1173(d) (42 U.S.C. § 1320d-2(d)) and 45 C.F.R. Part 164, Subpart C (the "Security Rule"), as amended and applicable. The safeguards will be designed to preserve the integrity, availability and confidentiality of electronic PHI, and to prevent intentional or unintentional non-permitted or violating use or disclosure of, PHI. Business Associate will additionally develop any safeguards to the extent required by the HITECH Act. Business Associate will document and keep these safeguards current. Business Associate agrees to mitigate any harmful effect that is known to the Business Associate resulting from a use or disclosure of PHI or electronic PHI by the Business Associate or its subcontractors in violation of the requirements of this Agreement.

10. **Subcontractors and Agents**. Business Associate will require any of its subcontractors and agents, to which Business Associate is permitted by this Agreement or in writing by Covered Entity to disclose PHI and electronic PHI, to provide reasonable assurances, evidenced by written contract, that such subcontractor or agent will comply with the same

privacy and security obligations as Business Associate with respect to such PHI and, electronic PHI.

## C. Compliance with Standard Transactions

If Business Associate conducts, in whole or part, Standard Transactions for or on behalf of Covered Entity, Business Associate will comply, and will require any subcontractor or agent involved with the conduct of such Standard Transactions to comply, with each applicable requirement of 45 C.F.R. Part 162. Business Associate will not enter into, or permit its subcontractors or agents to enter into, any Trading Partner Agreement in connection with the conduct of Standard Transactions for or on behalf of Covered Entity that:

1. Changes the definition, data condition, or use of a data element or segment in a Standard Transaction;
2. Adds any data element or segment to the maximum defined data set;
3. Uses any code or data element that is marked "not used" in the Standard Transaction's implementation specification or is not in the Standard Transaction's implementation specification; or
4. Changes the meaning or intent of the Standard Transaction's implementation specification.

## D. Individual Rights.

1. **Access**. Business Associate will, within fifteen (15) business days after Covered Entity's request, make available to Covered Entity or, at Covered Entity direction, to the individual (or the individual's personal representative) for inspection and obtaining copies any PHI and electronic PHI about the individual that is in Business Associate's custody or control as part of Designated Record Set, so that Covered Entity may meet its access obligations under 45 C.F.R. § 164.524 and, where applicable, the HITECH Act. Business Associate shall make such information available in an electronic format where directed by Covered Entity.

2. **Amendment**. Business Associate will, upon receipt of notice from Covered Entity, promptly amend or permit Covered Entity access to amend any portion of the PHI and electronic PHI in a Designated Record Set, so that Covered Entity may meet its amendment obligations under 45 C.F.R. § 164.526.

3. **Accounting**. Business Associate shall document such disclosures of PHI and information related to such disclosures as would be required for Covered Entity to respond to a request by an Individual for an accounting of disclosures of PHI in accordance with the Individual's right to receive such accounting under 45 C.F.R. § 164.528. Business Associate shall provide to Covered Entity or an Individual if so directed by Covered Entity, information collected in accordance with this provision with fifteen (15) days after Covered Entity' request to permit Covered Entity to respond to a request by an Individual for an accounting of disclosures of PHI in accordance with the Individual's right to receive such accounting under 45 C.F.R. § 164.528.

4. **Restriction Requests; Confidential Communications**. Business Associate shall immediately notify Covered Entity's Privacy Officer of any individual request made pursuant to 45 C.F.R. § 164.522 that Covered Entity or Business Associate restrict the disclosure of PHI of the individual. Business Associate is required to comply with an Individual's restriction request, except as otherwise Required by Law, if it is to a health plan for payment or health care operations and pertains to a health care item or service for which the health care provider was paid in full "out of pocket" by the Individual.

5. **Inspection of Books and Records**. For purposes of the Secretary of HHS (the "Secretary") determining Covered Entity's compliance with the HIPAA Privacy Rule and Security Rule, Business

Associate shall make available to the Secretary, in a time and manner designated by the Secretary, its internal practices, books, and records (including policies and procedures), relating to the use and disclosure of PHI received from, or created or received by, Business Associate on behalf of Covered Entity. Covered Entity may, from time to time and upon reasonable notice, inspect the facilities, internal practices, books and records of Business Associate for the purpose of determining Business Associate's compliance with this Agreement.

### E. Breach of Privacy & Security Obligations

1. **Breach.** Business Associate will report to Covered Entity any use or disclosure of PHI or electronic PHI not permitted by this Agreement or by Covered Entity in writing. Business Associate will make the report to Covered Entity's Privacy Officer within five (5) business days after Business Associate becomes aware of such non-permitted use or disclosure. In addition, Business Associate will report, following discovery and without unreasonable delay, but in no event later than five (5) business days following discovery, any "Breach" of "Unsecured Protected Health Information" as these terms are defined by the HITECH Act and any implementing regulations, even if Business Associate deems the unauthorized acquisition, access or use to be in good faith, unintentional or inadvertent and even if Business Associate deems the risk of harm posed to the individuals involved to be insignificant. Business Associate shall cooperate with Covered Entity in investigating the Breach and in meeting the Covered Entity's obligations under the HITECH Act and any other security breach notification laws.
    (a) The initial notice shall include, to the extent possible, the identification of each individual whose' PHI has been, or is reasonably believed by the Business Associate to have been, accessed, acquired, or disclosed during such Breach.
    (b) After making the initial notice as required under Section E(1)(a), Business Associate shall make best efforts to collect and provide to Covered Entity as soon as reasonably practical any such information that Business Associate is unable to provide in the initial notice, including the following:
        (i) Identify the nature of the non-permitted access, use or disclosure, including the date of the Breach and the date of discovery of the Breach;
        (ii) Identify the PHI or electronic PHI accessed, used or disclosed as part of the Breach (e.g., full name, social security number, date of birth, etc.);
        (iii) Identify who made the non-permitted disclosure, or violated access, use or disclosure and who received the non-permitted disclosure;
        (iv) Identify what corrective action Business Associate took or will take to prevent further non-permitted access, uses or disclosures;
        (v) Identify what Business Associate did or will do to mitigate any deleterious effect of the non-permitted access, use or disclosure; and
        (vi) Provide such other information, including a written report, as Covered Entity may reasonably request.

2. **Security Incident.** Business Associate will additionally report to Covered Entity as requested by Covered Entity any attempted or successful (a) unauthorized access, use, disclosure, modification, or destruction of Covered Entity's electronic PHI of which Business Associate becomes aware, or (b) interference with system operations in Business Associate's Information System containing Covered Entity's electronic PHI ("Security Incident") of which Business Associate becomes aware. If the Security Incident resulted in an unauthorized access, use, or disclosure, then a written report shall be provided according to the timeline and content requirements in Section D.1 above.

3. **Mitigation.** Business Associate agrees to mitigate, to the extent practicable, any harmful effect resulting from any Breach or successful Security Incident caused by Business Associate. In addition, Business Associate shall cooperate with and implement any reasonable mitigation requests by Covered Entity relating to any Breach or Security Incident caused by Business Associate. Any mitigation performed pursuant to this Section shall be done at Business Associate's expense.

### F. Term and Termination

1. **Term** - The Term of Exhibit A shall be effective as of the Effective Date and may be terminated in accordance with the termination rights set forth in the Agreement.

2. **Termination of Agreement** -

    (a) Right of Covered Entity to Terminate for Breach. Business Associate authorizes termination of this Agreement by Covered Entity upon Covered Entity's knowledge of a material breach by Business Associate. Upon violation of a material term of this Agreement by Business Associate, Covered Entity may either:
    - (i) Provide a fifteen (15) day opportunity for Business Associate to cure the material breach or end the violation and, if Business Associate does not cure the material breach or end the violation within the fifteen (15) day period, Covered Entity may terminate this Agreement and any other agreement between Covered Entity and Business Associate pursuant to which Business Associate provides the Services to Covered Entity;
    - (ii) If Business Associate has breached a material term of this Agreement and cure is not, in Covered Entity's reasonable determination, possible, Covered Entity may immediately terminate this Agreement and the agreement between Covered Entity and Business Associate pursuant to which Business Associate provides the Services to Covered Entity; or
    - (iii) If neither termination nor cure are, in Covered Entity's sole determination, feasible, Covered Entity shall report the violation to the Secretary.

    (b) Termination by Business Associate. Business Associate may terminate Agreement if it determines, after reasonable consulting with Covered Entity, that Covered Entity has breached any material provision of this Agreement and upon written notice to Covered Entity of the breach, Covered Entity fails to cure the breach within fifteen (15) days after receipt of the notice. Business Associate may exercise this right to terminate Agreement by providing Covered Entity written notice of termination, stating the failure to cure the breach of this Agreement that provides the basis for the termination. Any such termination will be effective upon such reasonable date as the parties mutually agree. If Business Associate reasonably determined that Covered Entity has breached a material provision of this Agreement and such breach has not been cured, but Business Associate and Covered Entity mutually determine that termination of the Agreement is not feasible, Business Associate may report such breach to HHS.

    (c) Obligations upon Termination
    - (i) Return or Destruction. Upon termination, cancellation, expiration or other conclusion of Agreement and Exhibit A, Business Associate will, if feasible, return to Covered Entity or destroy all PHI and electronic PHI in whatever form or medium (including any electronic medium) and all copies of any data or compilations derived from and allowing identification of any individual who is a subject of PHI and electronic PHI. Business Associate will complete such return or destruction as promptly as possible, but not later than thirty (30) business days after the effective date of the termination, cancellation, expiration or other conclusion of Agreement. All costs related to the Business Associate's return or destruction of PHI and electronic PHI will be paid by the Business Associate. Business Associate will identify any PHI and electronic PHI that cannot feasibly be returned to Covered Entity or destroyed. Business Associate will limit its further use or disclosure of that PHI and electronic PHI to those purposes that make return or destruction of that PHI and electronic PHI infeasible. Within thirty (30) business days after the effective date of the termination, cancellation, expiration or other conclusion of

    Agreement, Business Associate will (a) certify on oath in writing to Covered Entity that such return or destruction has been completed, (b) deliver to Covered Entity the identification of any PHI and electronic PHI for which return or destruction is infeasible, and (c) certify that it will only use or disclose such PHI and electronic PHI for those purposes that make return or destruction infeasible.

   (ii) <u>Continuing Privacy Obligation</u>. Business Associate's obligation to protect the privacy of the PHI and electronic PHI it created or received for or from Covered Entity will be continuous and survive termination, cancellation, expiration or other conclusion of Agreement or Exhibit A, for as long as Business Associate maintains PHI.

 (d) <u>Other Obligations and Rights</u>. Business Associate's other obligations and rights and Covered Entity's obligations and rights upon termination, cancellation, expiration or other conclusion of Agreement will be those set out in the Agreement, as well as Exhibit A.

## G. General Provisions –

1. **Indemnity**. Each party (the "Indemnifying Party") will indemnify and hold harmless the other (the "Indemnified Party") and any Indemnified Party affiliate, officer, director, employee or agent from and against any reasonable expenses, including, without limitation, judgments, settlements, penalties, assessments, reasonable attorney's fees and costs, incurred as a direct result of a third-party claim arising out of or in connection with a breach of this Agreement by the Indemnifying Party or any subcontractor, agent, person or entity under the Indemnifying Party's control. . This duty of indemnity is contingent upon the Indemnified Party giving the Indemnifying Party the following: (a) prompt notice of the third-party claim; (b) an opportunity to exercise sole control over the defense and/or settlement of the third-party claim, provided that the Indemnifying Party shall secure the Indemnified Party's advance, written consent to any settlement; and (c) reasonable assistance in the defense and/or settlement of the third-party claim.

2. **Definitions**. With respect to any information created, received, maintained, or transmitted by Business Associate from or on behalf of Covered Entity or another business associate of Covered Entity ("<u>Covered Entity Information</u>"), the following definitions apply:
   (a) The capitalized terms "<u>Covered Entity</u>," "<u>Electronic Protected Health Information</u>" ("<u>electronic PHI</u>" or "<u>ePHI</u>") shall be construed to be Electronic Protected Health Information), "<u>Protected Health Information</u>" ("<u>PHI</u>" shall be construed to be Protected Health Information), "<u>Standard</u>," "<u>Trading Partner Agreement</u>," and "<u>Transaction</u>" have the meanings set out in 45 C.F.R. § 160.103.
   (b) The term "Standard Transactions" shall have the meaning set out in 45 C.F.R. § 162.103. The term "Minimum Necessary" shall have the meaning set out in 45 C.F.R. § 164.502.
   (c) The term "<u>Required by Law</u>" has the meaning set out in 45 C.F.R. § 164.103.
   (d) The terms "<u>Health Care Operations</u>," "<u>Payment</u>," "<u>Research</u>," and "<u>Treatment</u>" have the meanings set out in 45 C.F.R. § 164.501.
   (e) The term "<u>Limited Data Set</u>" has the meaning set out in 45 C.F.R. § 164.514(e). The term "<u>use</u>" means, with respect to PHI, utilization, employment, examination, analysis or application within Business Associate.
   (f) The terms "<u>disclose</u>" and "<u>disclosure</u>" mean, with respect to PHI, release, transfer, providing access to or divulging to a person or entity not within Business Associate.
   (g) Any other capitalized terms not identified here shall have the meaning as set forth in 45 Code of Federal Regulations ("<u>C.F.R.</u>") Parts 160, 162, and 164 for the Administrative Simplification provisions of Title II, Subtitle F of HIPAA, or in the HITECH Act.

3. **Owner of Protected Health Information**. Covered Entity is the exclusive owner of PHI and electronic PHI generated or used under the terms of this Agreement.

4. **Amendment to Agreement**. This Agreement may not be amended or revised except with the written consent of the parties. The parties agree to take such action as is necessary to amend this Agreement from time to time as is necessary for the parties to comply with the requirements of HIPAA/HITECH, as may be amended from time to time.

5. **Disclosure of De-identified Data**. The process of converting PHI or electronic PHI to De-identified Data ("DID") is set forth in 45 C.F.R. § 164.514. In the event that Covered Entity provides Business Associate with DID, Business Associate shall not be given access to, nor shall Business Associate attempt to develop on its own, any keys or codes that can be used to re-identify data

6. **Creation of De-Identified Data**. In the event Business Associate wishes to convert PHI or electronic PHI to DID, it must first subject its proposed plan for accomplishing the conversion to Covered Entity for Covered Entity's approval, which shall not be unreasonably withheld.

7. **Intent**. The parties agree that there are no intended third party beneficiaries under this Agreement.