IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARY BILEK, individually and on behalf of others similarly situated,<br>Plaintiff<br><br>v.<br><br>NATIONAL CONGRESS OF EMPLOYERS, INC., et al.,<br><br>Defendants. | Civil Action No. 1:18-cv-03083<br><br>Hon. Judge Charles R. Norgle, Sr.<br>Hon. Mag. Judge Jeffrey T. Gilbert |

## DEFENDANTS NATIONAL CONGRESS OF EMPLOYERS, INC., NATIONAL BENEFIT BUILDERS, INC., AND ACCESSONE CONSUMER HEALTH, INC.'S MOTION TO QUASH PLAINTIFF'S SUBPOENAS TO NON-PARTIES

Defendants, NATIONAL CONGRESS OF EMPLOYERS, INC. ("NCE"), NATIONAL BENEFIT BUILDERS, INC., ("NBBI"), and ACCESSONE CONSUMER HEALTH, INC. ("AOH") (collectively "Defendants") by and through undersigned counsel, file this Motion to Quash Plaintiff's Subpoenas to Non-Parties[1], and in support states as follows:

### BACKGROUND

On April 30, 2018, Plaintiff filed a single-count Complaint against NCE for alleged violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. ("TCPA"). (Dkt. 1). Subsequently, on March 15, 2019, Plaintiff filed the First Amended Class Action Complaint ("FAC") in this matter asserting various allegations against Defendants, among others, pertaining to telemarketing calls that were allegedly made to sell a product identified as "NCE Premier Platinum Plus." (Dkt. 43). In the FAC, Plaintiff pointedly stated that former defendant Ann Fils

---

[1] Defendants' filing shall not be construed as a waiver of Defendants' position that this Court lacks personal jurisdiction over Defendants, which is subject to Defendants' pending Motion to Dismiss to Second Amended Complaint.

4840-4201-3103.1 1

and Benefits Matter engaged another entity, Celerity, to make or facilitate some or all of the calls at issue and that Ann Fils admitted to making the telemarketing calls at issue in this case through Celerity's inbound call records. (Dkt. 43).

Despite Plaintiff's statement that Ann Fils, Benefits Matter, and Celerity admitted to being involved with the telemarketing calls at issue here, on July 31, 2019, Plaintiff filed a Motion for Leave to File Amended Complaint, completely changing her agency and liability theories as to Defendants and adding new defendants, Health Insurance Innovations ("HII") and Unified Insurance Company. (Dkt. 102). The Court ultimately granted Plaintiff's motion and Plaintiff filed the Second Amended Complaint ("SAC") in this matter. (Dkt. 116). In her SAC, Plaintiff now claims that Rising Eagle Capital Group LLC made the calls at issue and warm transferred them to Enrollment Center of America (Dkt. 116, ¶ 5). Plaintiff further alleges that "HII is the facilitator and orchestrator for these telemarketing sales" and is "at the center of this telemarketing scheme." (Dkt. 116, ¶ 8).

Since the inception of this matter, Plaintiff has been engaging in voluminous and excessive third party discovery, seeking documents and information that are not proportional to the needs of this case and that implicate Defendants' privacy interests in their business operations, dealings and financials.

Under the Complaint and FAC, Plaintiff issued third party subpoenas to at least the following non-parties (1) Sean Duffie; (2) Inteliquent, Inc.; (3) Fextel; (4) Level 3 Communications; (5) Celerity Telecom; (6) Peerless Network; (7) Sprint; (8) T-Mobile; (9) YMAX Corporation; (10) Birch Communications; (11) Comcast; (12) Windstream; (13) AT&T; (14) Local Access; (15) Brightlink; (16) Talkie Telecom; (17) 3Y Telecom; (18) Rising Eagle; (19) John Spiller; (20) Jakob Mears; (21) SipJoin; (22) Telecom Carrier Access; (23) Compass

Global; (24) Ytel; and (25) Bandwidth. Since filing her SAC, Plaintiff has also issued third party subpoenas to non-parties (26) Group Plan Administrators, Inc. (Exhibit 1); (27) Benefit Transact Solutions, LLC (Exhibit 2); (28) Companion Life Insurance Company (Exhibit 3); (29) XChange Benefits, LLC (Exhibit 4); (30) GTGAHall Holdings, LLC (Exhibit 5); and (31) Alan Hall (Exhibit 6), seeking financial information, business communications, business dealings, business relationships and members personal information via broad and sweeping requests (the latest "Non-Party Subpoenas"). Plaintiff's allegations specify companies and actors allegedly involved in the calls at issue in this case and through which Plaintiff claims Defendants are vicariously liable. Nonetheless, Plaintiff is demanding documents from third-parties concerning any and every insurance agency, agent, broker, or insurer that NCE has had any relationship with since April 30, 2014.

Defendants move to quash the latest Non-Party Subpoenas and request that this Court apply appropriate standards for future issuance of non-party subpoenas by Plaintiff to reign in Plaintiff's gamesmanship and attempts to obtain documents that exceed the bounds of permissible discovery.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 45(a), a party may issue a subpoena to command production of documents or other tangible material in a person's possession or control. Fed. R. Civ. P. 45(a). A district court must quash or modify a subpoena that "(1) 'fails to allow a reasonable time for compliance,' (2) requires a nonparty to travel more than 100 miles, (3) 'requires disclosure of privileged or other protected matter, if no exception or waiver applies,' or (4) 'subjects a person to undue burden.'" *TCYK, LLC v. Doe*, 2013 U.S. Dist. LEXIS 145722, at *5 (N.D. Ill. Oct. 9, 2013) (quoting Fed. R. Civ. P. 45(c)(3)(A)). In determining whether a

subpoena "imposes an undue burden, the court asks whether the burden of compliance with [the subpoena] would exceed the benefit of production of the material sought by it." *The Bicycle Peddler, LLC v. Does 1-99*, 2013 WL 4080196, at *2 (Aug. 13, 2013) (quotations omitted). "As with other discovery issues, whether to grant a motion to quash is within the sound discretion of the district court." *Sullivan v. Gurtner Plumbing, Inc.*, 2012 WL 896159, at *1 (N.D. Ill. Mar. 13, 2012).

A party has standing to quash a subpoena issued by another party to the litigation and directed to a non-party in two instances: if the movant has a claim of privilege attached to the information sought, or the subpoena implicates the movant's privacy interests. *Sunlust Pictures, LLC v. Does 1-75*, 2012 WL 3717768 (N.D. Ill. Aug. 27, 2012). Furthermore, the 7th Circuit has expressly stated that "[a] party has standing to move to quash a subpoena addressed to another if the subpoena infringes upon the movant's legitimate interests." *United States v. Raineri*, 670 F. 2d 702, 712 (7th Cir. 1982). "Courts have found standing . . . even where the Movant's privacy interest is minimal at best." *HTG Capital Partners, LLC v. Doe*, 2015 U.S. Dist. LEXIS 126358, at *9 (N.D. Ill. Sept. 22, 2015) (citing *Sunlust Pictures*, 2012 U.S. Dist. LEXIS 121368, at *2); see also *Malibu Media, LLC v. Does 1-25*, 2012 WL 2367555, at *2 (S.D. Cal. June 21, 2012).

All discovery is subject to the limitations imposed by Rule 26(b) of the Federal Rules of Civil Procedure. Pursuant to Federal Rule of Civil Procedure 26(b)(1), the parties are entitled to "obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The Rule 26 proportionality test allows the Court to "limit discovery if it determines that the burden of the discovery outweighs its benefits." *In re IKB Deutschland Industriebank AG*, 2010 WL 1526070, at *5 (N.D. Ill. Apr. 8, 2010).

"The limits and breadth of discovery expressed in Rule 26 are applicable to non-party discovery under Rule 45." *Noble Roman's, Inc. v. Hattenhauer Distrib. Co.*, 314 F.R.D. 304, 307 (S.D. Ind. 2016). Furthermore, Rule 26 explicitly permits the Court to *sua sponte* "limit the frequency or extent of discovery" if it determines that the discovery sought is unreasonably cumulative or duplicative, can be obtained from some other course that is more convenient, less burdensome, or less expensive, or the proposed discovery is outside the scope permitted by Rule 26(b)(1). Fed. R. Civ. P. 26(b)(2).

"The 'metrics' set forth in Rule 26(b)(2)(C)(iii) provide courts significant flexibility and discretion to assess the circumstances of the case and limit discovery accordingly to ensure that the scope and duration of discovery is reasonably proportional to the value of the requested information, the needs of the case, and the parties resources." The Sedona Conference, *The Sedona Conference Commentary on Proportionality in Electronic Discovery*, 11 Sedona Conf. J. 289, 294 (2010).

Accordingly, this Court is vested with broad discretion to tailor discovery to prevent an intrusion into Defendants' privacy interests and reign in the numerous overbroad and unproportional discovery requests Plaintiff has issued to non-parties, which are indicative of a fishing expedition.

### LEGAL ARGUMENT

1. <u>The Third Party Subpoenas Infringe on Defendants' Privacy Interests</u>

The Third Party Subpoenas issued by Plaintiff must be quashed because they infringe on Defendants' privacy and legitimate interests in their respective financial information, business relationships, communications and dealings.

4840-4201-3103.1                                5

Instances that fall under the privacy and legitimate interest exception include the assertion of interference with business relationships or production of private information about the party that may be in the possession of a third party. *See Countryman v. Cmty. Link Fed. Credit Union*, 2012 WL 1143572 (N.D. Ind. Apr. 3, 2012); *see also Farmer v Senior Home Companions of Indiana, Inc.*, 2009 WL 564193 (S.D. Ind. Mar. 5, 2009) (asserting interference with a client relationship). Businesses also have a legitimate interest in the privacy of their financial information. *See Ianfosca v. Benistar Admin Servs., Inc.*, 2011 WL 3155649, at *2 (S.D. Ind. July 26, 2011).

Here, Plaintiff's requests to the non-parties seek "[d]ocuments demonstrating the consideration or monetary amounts received or transferred in relation to NCE or any NCE-branded goods, products, memberships, or services, the particular persons or entities involved and the dates of such" from April 30, 2014 to the present. *See* Exhibit 1, Req. 4; Exhibit 2, Req. 4; Exhibit 3, Req. 5; Exhibit 4, Req. 5; Exhibit 5, Req. 4; Exhibit 6, Req. 4. Such requests will undoubtedly yield information unrelated to the instant litigation and concerning Defendants' financial information that is both private and confidential.

Furthermore, Plaintiff demands that the non-parties produce NCE "customer or member list, including but not limited to documents sufficient to identify the name, address, telephone number(s), email, and applicable plans, goods, products, or services, for consumers of NCE-branded goods, products, memberships, or services, as well as all associated data." *See* Exhibit 1, Req. 1; Exhibit 2, Req. 1; Exhibit 5, Req. 1; and Exhibit 6, Req. 1. Notably, these requests are not limited to a certain geographic area, product, agency or "caller." NCE has a legitimate privacy interest in protecting all the information of any and all members who are enrolled in its association and any demand to non-parties for this information is outside the bounds of

permissible discovery and an intrusion on NCE's business interests and operations. Furthermore, the information that non-parties may have pertaining to NCE's members will impute HIPPA and personal privacy issues that must be duly considered in light of federal and state regulations.

Additionally, a number of Plaintiff's requests to the non-parties seek documents, including confidential contracts and agreements, that would identify all business relationships of NCE without being tailored to the allegations set forth in the SAC. The requests also seek documents which would identify or disclose all "Program Managing Entities, managing General Underwriters, Third-Party Administrators, Managing General Agencies, General Agencies, Agencies, Sub-Agencies, Agents, and Lead Vendors that contract with NCE or are involved with any NCE-branded products, goods, or services[;]" and "all third-party administrators, lead generators, lead aggregators, telemarketers, and insurance companies and agents with whom NCE does business or otherwise partners[;]" and all "other products – including life insurance or other forms of insurance – [that] were sold, offered, or bundled along with NCE…[.]" Exhibit 1, Req. 2, 3, 5, 7; Exhibit 2, Req. 2, 3, 5, 7; Exhibit 3, Req. 1, 2, 3; Exhibit 4, Req. 1, 2, 3; Exhibit 5, Req. 2, 3, 5, 6, 8; and Exhibit 6, Req. 2, 3, 5, 6, 8. Defendants could not reasonably expect that any and every business relationship they have had would be accessible and publicly available information. It is clear that based on both the number of third party subpoenas issued by Plaintiff as well as the breadth of those requests, Plaintiff is on the proverbial fishing expedition, throwing dynamite into the water without any regard to the facts contained in the SAC. It must be noted that the facts in the operative complaint are vastly different to those set forth in Plaintiff's previous pleadings which ultimately turned out to be incorrect.

The production of every single document over 5 and 1/2 years relating to NCE's business relationships, communications, members, contracts, and finances would indeed yield details and

4840-4201-3103.1         7

information unrelated to the instant litigation and information that is both private and confidential to NCE. Further, documents requested, if produced, would contain every single iota of information relating to the proprietary business relationships NCE has or has had with any other entity, including information pertaining to product offerings and services that are not in any way proportional to the needs of this case and outside the bounds of permissible discovery under Rule 26.

2. Plaintiff's Discovery Requests to Non-Parties Violate Rule 26

General inquiries violate the principle that to further the application of the proportionality standard in discovery, requests should be targeted, clear, and as specific as possible. *See ADT Sec. Services, Inc. v. Pinancle Sec., LLC*, 2012 WL 2920985 (N.D. Ill. July 11, 2012) (citing Seventh Circuit Electronic Discovery Committee, *Principles Relating to the Discovery of Electronically Stored Information*, Principle 1.03 (2010).

Plaintiff's requests and demands set forth in her subpoenas for documents to non-parties exceed the bounds of Federal Rule of Civil Procedure 26(b), which governs the scope, frequency and extent of discovery. Fed. R. Civ. P. 26(b). Parties may obtain discovery on relevant, non-privileged matters that are proportional to the needs of the case, "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

"[T]he discovery rules are not a ticket to unlimited, never-ending exploration of every conceivable matter that captures an attorney's interest." *Eternity Mart, Inc. v. Nature's Sources,*

LLC, 2019 WL 6052366, at *3 (N.D. Ill. Nov. 15, 2019) (citing *Vakharia v. Swedish Covenant Hosp.*, 1994 WL 75055, at *2 (N.D. Ill. 1994).

In the instant matter, Plaintiff's discovery requests to the non-parties is speculative at best. Notably, Plaintiff has alleged that the calls at issue, and which are the basis for the operative, and seconded amended complaint, were made by Rising Eagle and warm transferred to Enrollment Center of America, who is enlisted by HII – who Plaintiff alleges is the "facilitator and orchestrator of these telemarketing sales." (Dkt. 116). Notwithstanding these allegations, Plaintiff has also stated on the record that Ann Fils admitted to making the telemarketing calls at issue in this case through Celerity's inbound call records. (Dkt. 43). Plaintiff relies on these allegations to assert a theory of vicarious liability against the Defendants. Significantly, none of the requests to the third parties concern the alleged "agents" of Defendants necessary to establish vicarious liability.

Rather, Plaintiff has set forth requests that are not proportional to the needs of the case, plainly with the hope of finding new "agents" to support a claim against Defendants because the deposition testimony of Enrollment Center of America's alleged agent, Sean Duffie, does not support Plaintiff's theory for liability. Plaintiff's numerous and overbroad Third-Party Subpoenas demonstrate that Plaintiff's SAC contains legal claims in search of facts, even after three iterations of a complaint.

Plaintiff further claims to have millions of telemarketing calls, thousands of which, Plaintiff alleged, demonstrate that Defendants do make telemarketing calls or were responsible for the contacts with Plaintiff. Notwithstanding Plaintiff's continued accusations that NCE and its counsel have been acting in bad faith or not being truthful in this litigation, there is no evidence that the thousands of calls that Plaintiff has, which counsel for Plaintiff has previously

4840-4201-3103.1

9

stated that he himself has not reviewed in their entirety, demonstrate that Defendants made the telemarketing calls at issue or was "responsible" for the calls allegedly made to Plaintiff. Instead, Plaintiff continuously references the same one "example" telephone call from March 16, 2018, which allegedly references NCE Premier Platinum Plus. Since the inception of this litigation, despite requests, Plaintiff has not pointed to one other call of these alleged thousands that references NCE.

Plaintiff's discovery requests to dozens of third parties generally seeking any and all information they might have concerning the Defendants, and in particular NCE, including any and all communications, information on business relationships, dealings, member data, and financials is irrelevant and not proportional to the needs of this case.

Plaintiff cannot show that the responses to her requests are likely to yield relevant information about the calls to Mary Bilek or that Rising Eagle, Enrollment Center of America and HII are agents of Defendants sufficient to subject them to vicarious liability.

"[D]iscovery is not a means for a party to test every conceivable theory of a claim or defense without limitation. *Eternity Mart, Inc. v. Nature's Sources, LLC*, 2019 WL 6052366, at *3 (N.D. Ill. Nov. 15, 2019). Under Federal Rule of Civil Procedure 26(b)(1), the Court must consider both relevancy and proportionality concerns in evaluating the request for discovery.

Whereas here, the discovery sought is not targeted toward facts and evidence that support the allegations made by Plaintiff and evidence before this Court, the requests violate the relevancy and proportionality requirements of Federal Rule of Civil Procedure 26 and must be limited or quashed in their entirety.

## CONCLUSION

The nature of Plaintiff's requests is evidence of a fishing expedition and abuse of the discovery process. Not only does Plaintiff fail to appropriately tailor and target her requests, but she also seeks information from individuals and entities who have no apparent connection to the calls placed to Plaintiff. "Unless the requesting party can demonstrate the relevancy of the materials sought, judges 'should not hesitate to exercise appropriate control over the discovery process … "fishing expeditions" in discovery are prohibited because the information being sought is ultimately not "relevant."" *Eternity Mart, Inc. v. Nature's Sources, LLC*, 2019 WL 6052366 (N.D. Ill. Nov. 15, 2019) (quoting *BankDirect Capital Fin., LLC v. Capital Premium Fin., Inc.*, 2018 WL 946396, at *4 (N.D. Ill. Feb. 20, 2018).

Broad discovery requests that have no relation to the operative allegations cannot outweigh Defendants privacy interest in their private business dealings. Plaintiff has not provided sufficient facts to support showing how the information sought in the instant subpoenas would either be relevant to this litigation or proportional to prosecuting this case.

Plaintiff cannot be permitted to continue to abuse the discovery process in an effort to try and find new defendants and facts to support a claim. Accordingly, the breadth of the current subpoenas are too broad to be enforced in their current state and must be quashed, along with Plaintiff being placed on notice that her on-going fishing expedition must cease.

Date: December 24, 2019

Respectfully submitted,

*s/ Josh M. Kantrow*

Josh M. Kantrow

Josh M. Kantrow (ARDC No. 6231027)
LEWIS BRISBOIS BISGAARD & SMITH LLP
550 West Adams Street, Suite 300
Chicago, Illinois 60661
Tel: (312) 345-1718

4840-4201-3103.1

11

Fax: (312) 345-1778
Josh.Kantrow@lewisbrisbois.com


Josef M. Mysorewala, Esq.
LAW OFFICE OF JOSEF MYSOREWALA, PLLC
2000 S. Dixie Hwy., Ste. 112
Miami, Florida 33133
(305) 356-1031
josefm@lawjmm.com


Charles J. Messina, Esq.
GENOVA BURNS LLC
494 Broad Street
Newark, New Jersey 07102
(973) 533-0777
Cmessina@genovaburns.com