**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

MARY BILEK, individually and on behalf of
others similarly situated,

                Plaintiff

v.

NATIONAL CONGRESS OF EMPLOYERS,
INC., NATIONAL BENEFIT BUILDERS, INC.,
ACCESSONE CONSUMER HEALTH, INC.,
HEALTH ADVISORS OF AMERICA, INC.
d/b/a ENROLLMENT CENTER OF AMERICA
and HAPPYHEALTHPLANS.COM, MICHAEL
SMITH, ZACHARY COX, SEAN DUFFIE,
BENEFITS MATTER INC., ANN FILS and
DOES 1-10,

              Defendants.

Civil Action No. 1:18-cv-03083

Hon. Judge Charles R. Norgle, Sr.
Hon. Mag. Judge Jeffrey T. Gilbert

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS
MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT
<u>FOR LACK OF SUBJECT MATTER JURISDICTION</u>**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................ iii

PRELIMINARY STATEMENT ........................................................................................1

FACTUAL BACKGROUND..............................................................................................3

     I.     THE INSTANT MATTER ..................................................................................3

     II.     SUPREME COURT DECISION IN AAPC ..........................................................3

LEGAL ARGUMENT.......................................................................................................6

     A.     Standard of Review..........................................................................................6

     B.     The Court Lacks Subject Matter Jurisdiction Over Defendants ..................8

CONCLUSION.................................................................................................................17

## **TABLE OF AUTHORITIES**

### **CASES**

*Auto Owners Ins. Co. v. Mabra*,
No. CIV. 10-300-GPM, 2010 WL 3302967 (S.D. Ill. June 22, 2010) ..................................... 6

*Barr v. Am. Ass'n of Political Consultants*,
140 S. Ct. 2335 (July 6, 2020) ............................................................................................ 1

*Belleville v. Cottrell, Inc. Auto Handling Corp.*,
No. 09–cv–962–JPG–CJP, 2009 WL 5030757 (S.D.Ill.Dec. 16, 2009).................................. 6

*Berg v. BCS Fin. Corp.*,
372 F. Supp. 2d 1080 (N.D. Ill. 2005) .................................................................................. 6

*Bradley v. Sch. Bd. of City of Richmond*,
416 U.S. 696 (1974)............................................................................................................ 13

*Chicago, Indianapolis & Louisville Ry. Co. v. Hackett*,
228 U.S. 559 L. Ed. 966 S. Ct. 581 (1913)............................................................................ 7

*Creasy v. Charter Communications, Inc*.,
2020 WL 5761117 (E.D. La. Sept. 28, 2020) ................................................................. passim

*Crook v. WMC Mortgage Corp*.,
No. 06–cv–535–JPG, 2006 WL 2873439  (S.D.Ill. Oct. 5, 2006)........................................... 6

*Doe v. Smith*,
2001 U.S. Dist. LEXIS 24974 (E.D.N.Y. 2001)....................................................................... 7

*Ex parte Siebold*,
100 U.S. 371 (1879)........................................................................................................... 7, 9

*Grayned v. City of Rockford*,
408 U.S. 104 (1972)......................................................................................................... 8, 10

*Gunn v. Minton*,
568 U.S. 251 (2013)............................................................................................................. 8

*Hussain v. Sullivan Buick-Cadillac-GMC Truck, Inc., et al*.,
Case No. 5:20-cv-00038 (Mid. Dist. Florida, Dec. 11, 2020) ......................................... passim

*Kokkonen v. Guardian Life Ins. Co. of America*,
511 U.S. 375 S. Ct. 1673 (1994)........................................................................................... 8

*Lindenbaum v. Realgy,*
   *LLC*, 2020 WL 6361915 (N.D. Ohio Oct. 29, 2020) ....................................................... passim

*Marbury v. Madison,*
   5 U.S. 137 (1803) ................................................................................................... 7, 10

*Montgomery v. Louisiana,*
   136 S. Ct. 718 (2016) .................................................................................................... 8

*Nix v. Fulton Lodge No. 2 of Int'l Ass'n of Machinists & Aerospace Workers,*
   452 F.2d 794 (5th Cir. 1971) ......................................................................................... 6

*Norton v. Shelby County, State of Tenn.,*
   118 U.S. 425 S. Ct. 1121 (1886) .................................................................................... 7

*Reynoldsville Casket Co. v. Hyde,*
   514 U.S. 749 (1995) .................................................................................................. 7, 9

*Seila Law LLC v. Consumer Fin. Prot. Bureau,*
   140 S. Ct. 2183 (2020) ......................................................................................... 4, 13, 14

*U.S. v. Baucum,*
   80 F.3d 539 (D.C. Cir. 1996) ................................................................................... passim

*United States v. Cotton,*
   535 U.S. 625 (2002) ....................................................................................................... 6

*University of S. Ala. v. American Tobacco Co.,*
   168 F.3d 405 (11th Cir. 1999) ........................................................................................ 6

## **OTHER AUTHORITIES**

28 U.S.C §1331 .................................................................................................................. 8

## **RULES**

Fed. R. Civ. P. 12(h)(3) ....................................................................................................... 6

Fed. R. Civ. P. 5.1 .............................................................................................................. 1

Rule 12(b)(1) .......................................................................................................... 1, 3, 6, 16

## PRELIMINARY STATEMENT

Plaintiff, Mary Bilek ("Plaintiff"), filed her Second Amended Complaint ("SAC"), alleging that she received telephone calls in violation of the Telephone Consumer Protection Act ("TCPA") and the Illinois Automatic Telephone Dialers Act ("IATDA"). The remaining defendants in this matter, National Congress of Employers, Inc. ("NCE"), National Benefits Builders, Inc. ("NBBI") and AccessOne Consumer Health, Inc. ("AOH") and Health Insurance Innovations, Inc. ("HII"), (collectively, "Defendants"), bring this motion to dismiss Plaintiff's SAC, pursuant to Rule 12(b)(1), for lack of subject matter jurisdiction.

This Motion to Dismiss raises a new issue not available to Defendants as of the date of filing of their prior motion, based exclusively on the absence of this court's subject matter jurisdiction over this case, in light of the United States Supreme Court's decision in *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335 (July 6, 2020) (hereinafter "*AAPC*"),[1] and persuasive district court opinions analyzing *AAPC*.

The original TCPA statute restricted all robocall speech. However, the 2015 amendment, adding the government-debt exception, changed an otherwise valid statute to an unconstitutional content-based restriction statute. Here, Plaintiff complains of calls occurring solely in 2018. As argued more fully below, the alleged calls all occurred prior to the Supreme Court's July 6, 2020 *AAPC* decision, and the District Court opinions which followed (*see* **Exhibits A**, **B** and **C**). Thus, at the time Defendants engaged in the speech at issue in this case, Defendants were subject to an unconstitutional content-based restriction.

---

[1] Because the Supreme Court decided the constitutional challenge to the automated-call ban in *AAPC*, Federal Rule of Civil Procedure 5.1 does not apply to the instant filing and a notice of constitutional challenge is not required. *See* Fed. R. Civ. P. 5.1. If the Court determines otherwise, Defendants will promptly file such a notice.

Because the Court is without authority to enforce an unconstitutional statute, the Court lacks subject matter jurisdiction over this action. *See U.S. v. Baucum*, 80 F.3d 539, 540 41 (D.C. Cir. 1996) ("once a statute has been declared unconstitutional, the federal courts thereafter have no jurisdiction over alleged violations (since there is no valid 'law of the United States' to enforce)").

Since *AAPC* was decided, three federal district courts have ruled that the Supreme Court's preservation of the TCPA statute – by severing its unconstitutional provisions – can only operate prospectively, i.e., that the statute cannot be enforced against a defendant alleged to have violated the TCPA between the date that the unconstitutional provision was enacted on November 2, 2015 to July 6, 2020 (the date of the *AAPC* decision), because a defendant's violation would have occurred when the statute was unconstitutional and, thus, void. These opinions have all consistently concluded that the severance was not given retroactive effect. *See Creasy v. Charter Communications, Inc*., 2020 WL 5761117 (E.D. La. Sept. 28, 2020), attached hereto as **Exhibit A**; *Lindenbaum v. Realgy, LLC*, 2020 WL 6361915 (N.D. Ohio Oct. 29, 2020), attached hereto as **Exhibit B**; *Hussain v. Sullivan Buick-Cadillac-GMC Truck, Inc., et al*., Case No. 5:20-cv-00038 (Mid. Dist. Florida, Dec. 11, 2020), attached hereto as **Exhibit C**.

As the TCPA only passed constitutional muster after July 6, 2020, this Court lacks subject matter jurisdiction over the calls at issue here. Each call – a form of speech – occurred during a time where the TCPA was effectively void. *See Lidenbaum*, pp. 13-14 ("The Court cannot wave a magic wand and make that constitutional violation disappear. Because the statute at issue was unconstitutional at the time of the alleged violations, this Court lacks jurisdiction over this matter."); *Creasy*, 2020 U.S. Dist. LEXIS 177798, at *14-15 ("the unconstitutional amended version of § 227(b)(1)(A)(iii) is what applied to [defendant] at the time the challenged

2

communications at issue, and that fact deprives the Court of subject matter jurisdiction to adjudicate [defendant]'s liability with regard to such communications."); *Baucum*, 80 F.3d at 541-42 (holding that federal courts are without jurisdiction to enforce violations of an unconstitutional statute "since there is no valid 'law of the United States' to enforce."). Plaintiff's SAC should therefore be dismissed under Federal Rules of Civil Procedure 12(b)(1).

For this reason, set forth more fully below, the SAC should be dismissed as to Defendants with prejudice.

## FACTUAL BACKGROUND

### I. THE INSTANT MATTER

While Plaintiff's factual allegations regarding the alleged calls placed in this matter, as well as Defendants' and others' connections to those calls, have changed dramatically and materially from Plaintiff's initial Complaint to the operative SAC, for purposes of this motion, Plaintiff's factual allegations that are not conclusory are taken as true. Here, all of the calls allegedly placed to Plaintiff occurred in 2018, namely on the following dates: March 13, 2018; March 16, 2018, March 22, 2018; April 18, 2018; April 19, 2018; July 25, 2018; July 26, 2018 (Plaintiff's SAC *Dkt*. 116, ¶¶ 67–79).

### II. SUPREME COURT DECISION IN AAPC

In 1991 Congress enacted the TCPA aimed at protecting Americans from unsolicited and intrusive phone calls. The TCPA prohibits phone calls generated by automated messages or automated dialing systems to cell phones. As originally enacted, this ban did not apply when the call was generated for emergency purposes or with the recipient's prior explicit permission.

In 2015, Congress amended the TCPA's ban on autodialed calls, carving out an exception for calls made to collect a debt owed to or guaranteed by the federal government. *AAPC* at 2343. In *AAPC*, the Supreme Court held that this "unconstitutionally favors debt-collection speech over

political and other speech," and severed the exception from the remainder of the statute. *Id.*
Consequently, the entirety of the autodialer ban "was unconstitutional from the moment Congress
enacted the offending government-debt exception to the moment the [Supreme] Court severed that
exception [in July 2020] to preserve the rest of the law in *AAPC*." *Creasy* at *1 (E.D. La. Sept. 28,
2020); *see* *65; *also Lindenbaum* at *3-7 (N.D. Ohio Oct. 29, 2020) (*citing Seila Law LLC v.
Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183 (2020)).

In May 2016, the American Association of Political Consultants, Inc., and others filed a
declaratory judgment suit against United States Attorney General Loretta Lynch and the Federal
Communication Commission before the District Court for the Eastern District of North Carolina.
The plaintiffs alleged that the government-debt exemption constituted a content-based restriction
on speech, thus violating their right to free speech guaranteed by the First Amendment. *AAPC*, 140
S. Ct. 2335 (July 6, 2020)

The district court granted summary judgment in favor of the defendants. *Id.* On April 24,
2019, the Court of Appeals for the Fourth Circuit vacated the district court's summary judgment,
held that the statute as amended with the government-debt exemption unconstitutionally violated
the First Amendment under a strict scrutiny analysis, and ordered that the government-debt
exemption be severed from the remainder of the TCPA. *Id.* United States Attorney General
William Barr and the FCC petitioned to the Supreme Court, which granted certiorari on January
10, 2020. *Id.*

In *AAPC*, the Supreme Court held that the TCPA violates the First Amendment, because it
discriminates on speech based on its content. *AAPC*, 140 S. Ct. 2346 ("The initial First Amendment
question is whether the robocall restriction, with the government-debt exception, is content-based.
The answer is yes."). Specifically, the Court held that the government-backed debt exception –

added in 2015 – treated speech to collect a debt issued or guaranteed by the federal government more favorably than other forms of speech. *Id*. at 2347. As a remedy, however, the Court severed the government-backed debt exemption on a prospective basis. *See id*. at 2343 ("seven members of the Court conclude that the entire 1991 robocall restriction should not be invalidated, but rather that the 2015 government-debt exception must be invalidated and severed from the remainder of the statute."). What the Supreme Court did not resolve, however, is whether non-debt collection callers may be held liable under the TCPA for conduct during the period that the statute was unconstitutional (from November 2, 2015 through July 6, 2020). *Ibid.*

The Court's Opinion was a deeply fractured plurality, but a majority of Justices agreed that the automated-call ban was an unconstitutional content-based restriction when combined with the government-debt exception. *AAPC* at 2346 ("The initial First Amendment question is whether the robocall restriction, with the government-debt exception, is content-based. The answer is yes."). Specifically, the automated-call ban combined with the government-debt exception "impermissibly favored debt-collection speech over political and other speech, in violation of the First Amendment." *Id.* at 2343. Because the restriction was content based, it was subject to strict scrutiny, which it failed to pass. *Id.* at 2347. Six justices agreed with this conclusion. *Ibid.* Rather than scrapping the entire statute, however, the Supreme Court opted to save the TCPA by severing the government-debt exception, though only three Justices (Kavanaugh, Roberts, and Alito) joined in the plurality's rationale for doing so. *Id.* at 2352–54.

The lingering and unresolved issue is whether the Supreme Court's "fixing" on July 6, 2020 of an unconstitutional statute, by severing its unconstitutional content-based restriction on speech, can be applied retroactively. The *AAPC* decision did not resolve this issue because the effect of severance on alleged liability of defendants in pending TCPA cases was not before the

Court. *Id.* To date, the only three courts that have substantively addressed this issue following *AAPC* have held that such lawsuits must be dismissed for lack of subject matter jurisdiction. *See Creasy v. Charter Communications, Inc.*, supra at *2 (E.D. La. September 28, 2020); *Lindenbaum v. Realgy, LLC*, 2020 WL 6361915 (N.D. Ohio Oct. 29, 2020); *Hussain v. Sullivan Buick-Cadillac-GMC Truck, Inc., et al*., Case No. 5:20-cv-00038 (Mid. Dist. Florida, Dec. 11, 2020).

## LEGAL ARGUMENT

### A. Standard of Review

Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction can be asserted on either facial or factual grounds." *Berg v. BCS Fin. Corp.*, 372 F. Supp. 2d 1080 (N.D. Ill. 2005). Facial challenges are based solely on the allegations in the complaint and the court must accept the complaint's allegations as true. *Id*. Where there is a factual attack on subject matter jurisdiction, the court may consider extrinsic evidence such as deposition testimony and affidavits. *Id*.

Pursuant to Fed. R. Civ. P. 12(h)(3), "[if] the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action." Federal courts have an obligation to examine *sua sponte* their own jurisdiction over a case, notwithstanding the contentions of the parties. *Auto Owners Ins. Co. v. Mabra*, No. CIV. 10-300-GPM, 2010 WL 3302967 (S.D. Ill. June 22, 2010); *see Belleville v. Cottrell, Inc. Auto Handling Corp*., No. 09–cv–962–JPG–CJP, 2009 WL 5030757, at *1 (S.D.Ill.Dec. 16, 2009); *Crook v. WMC Mortgage Corp*., No. 06–cv–535–JPG, 2006 WL 2873439, at *1 (S.D.Ill. Oct. 5, 2006); *accord University of S. Ala. v. American Tobacco Co.*, 168 F.3d 405, 409 (11th Cir. 1999) (*citing Nix v. Fulton Lodge No. 2 of Int'l Ass'n of Machinists & Aerospace Workers*, 452 F.2d 794, 797–98 (5th Cir. 1971)). That is so because subject matter jurisdiction underlies a court's power to hear a case. *United States v. Cotton*, 535

U.S. 625, 630 (2002). For that same reason, subject matter jurisdiction can never be forfeited or waived. *Id.*

A federal court has no jurisdiction to enforce an unconstitutional statutory provision. Federal courts lack subject matter jurisdiction over unconstitutional statutes because "a law repugnant to the constitution is void[.]" *Marbury v. Madison*, 5 U.S. 137, 180 (1803); *see also Ex parte Siebold*, 100 U.S. 371, 377 (1879) (an unconstitutional law is "void, and is as no law"); *Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 760 (1995) (Scalia, J., concurring) ("[W]hat a court does with regard to an unconstitutional law is simply to ignore it. It decides the case 'disregarding the [unconstitutional] law,' because a law repugnant to the Constitution 'is void, and is as no law.'" (internal citations omitted)); *United States v. Baucum*, 80 F.3d 539, 540-41 (D.C. Cir. 1996) ("It is true that once a statute has been declared unconstitutional, the federal courts thereafter have no jurisdiction over alleged violations (since there is no valid 'law of the United States' to enforce.") *accord, Doe v. Smith*, 2001 U.S. Dist. LEXIS 24974 (E.D.N.Y. 2001)(" . . .this conclusion flows from the historical view that unconstitutional laws are void ab initio, 'not a law,' and unenforceable"; *see, e.g., Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 759, 131 L. Ed. 2d 820, 115 S. Ct. 1745 (1995) (*citing Marbury v. Madison*, 5 U.S. 137, (1803)) (Scalia and Thomas, JJ., concurring) ("[W]hat a court does with regard to an unconstitutional law is simply to ignore it. It decides the case 'disregarding the [unconstitutional]law,' because a law repugnant to the Constitution 'is void, and is as no law.'" (citations omitted)); *Chicago, Indianapolis & Louisville Ry. Co. v. Hackett*, 228 U.S. 559, 566, 57 L. Ed. 966, 33 S. Ct. 581 (1913); *Ex Parte Siebold,* supra; *Norton v. Shelby County, State of Tenn*., 118 U.S. 425, 442, 6 S. Ct. 1121 (1886); *see also*; *Creasy*, 2020 WL 5761117, at *6, 8 (dismissing plaintiff's pre-AAPC

TCPA claims for lack of subject matter jurisdiction); *Lindenbaum*, 2020 WL 6361915, at *7-8 (same).[2]

## B. The Court Lacks Subject Matter Jurisdiction Over Defendants

The SAC asserts that this court has federal question subject matter jurisdiction over this action pursuant to 28 U.S.C §1331 based on the TCPA, a federal statute. A claim based on an invalid or inapplicable federal statute does not confer subject matter jurisdiction because a federal court only has federal-question jurisdiction when an action arises under the Constitution, laws, or treaties of the United States. U.S. Const. art. 3, §2; 28 U.S.C. §1331. "Federal courts are courts of limited jurisdiction," possessing "only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377, 114 S. Ct. 1673 (1994); *Gunn v. Minton*, 568 U.S. 251, 257 (2013).

As stated above, Plaintiff's allegations of violative telephone calls placed to her occurred solely in 2018,[3] and fall within the span of time that the TCPA was a facially unconstitutional content-based restriction on speech. *AAPC* at 2346.

As relevant here, a speaker should not be punished for engaging in speech that was restricted in an unconstitutional fashion at the time of the speech. *See Grayned v. City of Rockford*, 408 U.S. 104, 107 n.2, (1972) (holding, also, with regard to an invalid time-place-manner restriction, that determining the speaker's fate required assessing "the facial constitutionality of

---

[2] *See also Grayned v. City of Rockford*, 408 U.S. 104, 107 n.2 (1972) (noting in a constitutional challenge to a content-based speech restriction that courts "must consider the facial constitutionality of the ordinance in effect when [the defendant] was arrested and convicted"); *Montgomery v. Louisiana*, 136 S. Ct. 718, 724 (2016) (sentence under unconstitutional law is void because state was deprived of authority to impose it).

[3] Plaintiff complains of calls occurring on the following dates: March 13, 2018; March 16, 2018; March 22, 2018; April 18, 2018; April 19, 2018; July 25, 2018; July 26, 2018 (Plaintiff's Second Amended Complaint, Dkt. 116, ¶¶ 67–79).

the [restriction] in effect" at the time of the speech at issue). It also supports the general rule that "once a statute has been declared unconstitutional, the federal courts thereafter have no jurisdiction over alleged violations (since there is no valid 'law of the United States' to enforce)." *United States v. Baucum*, 80 F.3d 539, 541-42, 317 U.S. App. D.C. 63 (D.C. Cir. 1996) (per curiam).

As neither the Seventh Circuit Court of Appeals nor other courts in this district have addressed this issue, Defendants rely on the opinions of district courts in the *Lindenbaum* and *Creasy* matters, and more recently in *Hussain*, which persuasively have found that the Supreme Court never held in *AAPC* that the TCPA statute was constitutional as to non-government debt collector robocallers, when it found the statute as amended in 2015 was unconstitutional thereafter, and an impermissible restriction on free speech by all robocallers subject to the TCPA. *See Hussain v. Sullivan Buick-Cadillac-GMC Truck, Inc., et al.*, Case No. 5:20-cv-00038 (Mid. Dist. Florida, Dec. 11, 2020).

As the district court analyzed this issue in *Creasy v. Charter Communications, Inc.*, supra at *2 (E.D. La. September 28, 2020),

> . . . In the years preceding Congress's addition of the exception, §227(b)(1)(A)(iii) did not discriminate on the content of robocalls, and was, as the Supreme Court has observed, a constitutional time-place-manner restriction on speech. Likewise, now that AAPC has done away with the offending exception, § 227(b)(1)(A)(iii) figures to remain good law to come. However, in the years in which §227(b)(1)(A)(iii) permitted robocalls of one category of content (government-debt collection) while prohibiting robocalls of all other categories of content, the entirety of the provision was, indeed, unconstitutional.

The district court in *Creasy* went on to reason:

> Of particular significance here is the timeless principle that "[a]n unconstitutional law is void, and is as no law." *Ex Parte Siebold*, 100 U.S. 371, 376 (1879); *id.* ("An offence created by [an unconstitutional law] is not a crime."); *see also Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 760 (1995) (Scalia, J., concurring) ("[W]hat a court does with regard to an unconstitutional law is simply to ignore it. It decides the case disregarding the [unconstitutional] law,' because a law repugnant to the Constitution 'is void, and is as no law.'" (second alteration in original) (citation

9

omitted) (first *quoting Marbury. Madison*, 5 U.S. (1 Cranch) 137, 178 (1803); then *quoting Siebold*, 100 U.S. at 376)). That principle colors many doctrines, but as relevant here, it suggests that – in the vast run of scenarios – a speaker should not be punished for engaging in speech that was restricted in an unconstitutional fashion. *Cf. Grayned v. City of Rockford*, 408 U.S. 104, 107 n.2 (1972) (holding, also with regard to an invalid time-place-manner restriction, that determining the speaker's fate required assessing "the facial constitutionality of the [restriction] in effect" at the time of the speech at issue). It also supports the general rule that "once a statute has been declared unconstitutional, the federal courts thereafter have no jurisdiction over alleged violations (since there is no valid 'law of the United States' to enforce)." *United States v. Baucum*, 80 F.3d 539, 541–42 (D.C. Cir. 1996) (*per curiam*).

*Id.* at *3.

The *Creasy* court's analysis makes evident sense. In the absence of a contrary express ruling in *AAPC*, the only logical conclusion to be reached is that the Supreme Court found the TCPA statute as amended in 2015 to be unconstitutional as a whole until the Court determined that it could render the statute constitutional by severing the unconstitutional First Amendment content-based restriction. Thus, the TCPA statute remained unconstitutional as to any defendant alleged to have violated the statute from November 2, 2015 through July 6, 2020 because a TCPA defendant was subject to an unconstitutional content-based restriction on free speech that voided the entire statute.

Chief Judge Gaughan of the Northern District of Ohio recently reached the same conclusion in another TCPA case, *Lindenbaum v. Realgy, LLC*, *supra* at *7:

. . . the Court agrees with defendant that the provision at issue is unlike provisions severed in other cases. Here, the original statute contained a valid time, place, and manner restriction, i.e., it limited all robocall speech. Creasy v. Charter Communications, Inc., 2020 WL 5761117 at *2 (noting that the Supreme Court observed that pre-2015, the TCPA provision constituted a valid, time-place-manner restriction on speech). The insertion of the government-debt exception restriction transformed this valid time, place, and manner restriction into an unconstitutional content-based restriction. This is unlike cases in which Congress adds an exception, the entirety of which results solely in unequal treatment, to an otherwise valid statute. Although the plurality opinion characterizes the case as involving "equal treatment," the fact remains that at the time defendants engaged in the speech at

issue, defendant was subject to an unconstitutional content-based restriction. The Court cannot wave a magic wand and make that constitutional violation disappear. Because the statute at issue was unconstitutional at the time of the alleged violations, this Court lacks jurisdiction over this matter.

Judge Gaughan concisely explained why the Supreme Court severing the unconstitutional provision of the TCPA in *AAPC* did not provide a remedy during the period of time that the law was unconstitutional:

> The plaintiffs in *AAPC* sought the right to speak going forward on the grounds that the statute, as written, is an unconstitutional content-based restriction. The Supreme Court denied that relief, but offered a remedy in the form of eliminating the content-based restriction. But, in our case, severance of the content-based restriction does not offer a "remedy" to correct past harm. Here, defendants do not seek the right to speak, having already done so. They seek the right to be free from punishment for speaking during a time when an unconstitutional content-based restriction existed. A forward-looking fix offers no remedy for this past wrong.

*Id.* at *5-6 (emphasis in original). Judge Gaughan further reasoned:

> But, if the statute is not considered *void ab initio*, it contains an unconstitutional content-based restriction that improperly favors speech over other speech. And, to treat it as *void ab initio* only as to certain parties would likely raise its own set of equal treatment concerns-the very concerns raised by the AAPC dissent. The fact remains that at the time the robocalls at issue in this lawsuit were made, the statute could not be enforced as written. And a later amendment to a statute cannot be retroactively applied [Citation omitted]. It would be an odd result to say the least if the judiciary could accomplish by severance that which Congress could not accomplish by way of amendment.

*Id.* at *12-13.

Most recently, in the December 11, 2020 opinion out of the District Court for the Middle District of Florida, the court analyzed the issues present in the Supreme Court's *AAPC* opinion and took into consideration the persuasive analysis of sister District Courts in *Creasy* and *Lindenbaum*. In *Hussain*, the plaintiff allegedly received approximately fifteen calls and voicemails with pre-recorded messages to her cellular phone from January 2019 to October 2019 and claimed violations under the TCPA. *Hussain v. Sullivan Buick-Cadillac-GMC Truck, Inc., et*

11

*al.*, Case No. 5:20-cv-00038 (Mid. Dist. Florida, Dec. 11, 2020). Plaintiff alleged that she did not provide Defendants with her consent to be contacted via pre-recorded calls and, in fact, had been registered with the national Do-Not-Call registry since 2009. *Id*. Defendants filed a motion to dismiss plaintiff's claims for lack of subject matter jurisdiction, relying on the authority found in *AACP*, *Creasy* and *Lindenbaum*. *Id*. After reviewing the *AACP*, *Creasy* and *Lindenbaum* opinions, the Hussain court concluded that the 2015 amendment to the TCPA statute changed an otherwise valid statute to an unconstitutional content-based restriction, which left the court without the authority to enforce the unconstitutional statute against the defendants. *Id.* at *6. The court also agreed with conclusion that federal courts lack subject matter jurisdiction over alleged violations from the enactment of the 2015 amendment to the July 6, 2020 decision in *AAPC* and dismissed the action.

Succinctly stated, from November 2, 2015, when the government-debt exception was added as an amendment to the TCPA statute, through the Supreme Court's severance of the amendment (on July 6, 2020), the Defendants before this Court were subject to an unconstitutional content-based restriction that voided the statute. No "magic wand" can make that unconstitutional infirmity retroactively disappear.

Defendants acknowledge that, in *AAPC,* Justice Kavanaugh wrote in his opinion joined by only two other justices in a footnote, a suggestion that there could be retrospective liability for those not covered by the government-debt exception (referred to as the "Kavanaugh footnote"). *AAPC*, 140 S. Ct. at 2355, n.12. However, the footnote is clearly obiter dictum and was correctly characterized by Justices Gorsuch and Thomas in their concurring and dissenting opinions, as only a non-binding "suggestion." *See id.* at 2363 ("And a holding that shields only government-debt

collection callers from past liability under an admittedly unconstitutional law would wind up endorsing the very same kind of content discrimination we say we are seeking to eliminate").

The district court judges in *Creasy*, *Lindenbaum,* and *Hussain* also found the Kavanaugh footnote to be non-binding and non-persuasive on the ultimate issue of subject matter jurisdiction in their TCPA cases. Further, given that the Kavanaugh footnote is ambiguous, based on prior Supreme Court precedent, a reasonable interpretation is that it applies to past judgments of liability, i.e., the plurality did not intend to undo liability against defendants that had already been adjudicated. This interpretation is consistent with prior Supreme Court precedent that recognizes "a distinction between the application of a change in the law that takes place while a case is on direct review on the one hand, and its effect on a final judgment under collateral attack, on the other hand." *See Bradley v. Sch. Bd. of City of Richmond*, 416 U.S. 696, 710-711 (1974). Further, this reading of the Kavanaugh footnote is consistent with *Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2208-09 (2020), in which the same three Justices who joined the plurality in *AAPC* – and just one week before the *AAPC* decision – cast doubt on the viability of actions taken by the Consumer Financial Protection Bureau (the "CFPB") during the time its leadership structure was unconstitutional. *See Seila Law LLC v. CFPB*, supra at 2208-09.

In *Seila Law*, a three-justice plurality comprised of Justices Roberts, Alito, and Kavanaugh (the same plurality as the severance portion of the *AAPC* decision) recognized the long-standing principle that unconstitutional laws are unenforceable during the time they are unconstitutional, even if later cured prospectively through severance. *Ibid.* A majority of the Justices further concluded that the CFPB's leadership structure, consisting of a single director removable only for cause, was unconstitutional because it violates the separation of powers. *Id.* at 2204. To cure this constitutional infirmity, the three-justice plurality (Roberts, Alito, and Kavanaugh), in Part IV of

13

the opinion, opted to sever the director's removal protection from the President. *Id.* at 2207-08. The logic underlying the Supreme Court's application of the severance doctrine in *Seila Law* applies with equal force to the automated-call ban.

In other words, the Supreme Court's severance of the government debt exception cured the ban's infirmity on a prospective basis, but it did not (and could not) cure the infirmity with respect to calls made during the time the law was unconstitutional. But for robocalls made from 2015 through entry of final judgment in *AAPC*, the statute remains unconstitutional on its face and cannot be enforced against any robocaller, including Defendants. *See Lindenbaum*, at *2 (N.D. Ohio Oct. 29, 2020).

Plaintiff alleges that she received calls from Defendants in 2018. (Plaintiff's SAC *Dkt*. 116, ¶¶ 67–79). She does not allege that she received any calls in 2020 or before 2015. Accordingly, all of the calls occurred during a time the Supreme Court held the TCPA was an unconstitutional, content-based restriction on speech. *See AAPC*, 140 S. Ct. at 2346 (plurality opinion); *id*. at 2356-57 (Sotomayor, J., concurring in the judgment) ("Even under intermediate scrutiny, the Government has not explained how a debt-collection robocall about a government-backed debt is any less intrusive or could be any less harassing than a debt-collection robocall about a privately backed debt."); *id*. at 2364 (Gorsuch, J., concurring in the judgment in part and dissenting in part) ("The statute is content-based because it allows speech on a subject the government favors (collecting its debts) while banning speech on other disfavored subjects (including political matters)."). During the time of the alleged calls, it was Defendants who were the victim of unconstitutional restrictions. *See Lindenbaum* at *7 ("[A]t the time defendants engaged in the speech at issue, defendant was subject to an unconstitutional content-based restriction . . . Because the statute at issue was unconstitutional at the time of the alleged violations, this Court lacks

14

jurisdiction over this matter."); *Creasy v. Charter Commc'ns., Inc.*, No. 20-cv-1199, 2020 WL 5761117, at *6 (E.D. La. Sept. 28, 2020) ("[T]he unconstitutional amended version of § 227(b)(1)(A)(iii) is what applied to [the defendant] at the time of the challenged communications at issue, and that fact deprives the Court of subject matter jurisdiction to adjudicate [the defendant's] liability with regard to such communications."). In this context, that wrong was experienced by Defendants and all other robocallers (or would-be robocallers) whose constitutionally protected speech was outlawed while Congress affirmatively blessed robocalls of other content in violation of the First Amendment. Thus, at the time Defendants engaged in the speech at issue in this case, Defendants were subject to an unconstitutional content-based restriction.

While Defendants recognize that the *Creasy*, *Lindenbaum* and *Hussain* opinions do not offer binding precedent, Defendants seek to have this Court conduct its own analysis of the application of the unconstitutional TCPA statute, and the violations alleged by Plaintiff, and assess its subject matter jurisdiction. In doing so, the Court should give significant weight to the persuasive conclusions of the three separate district courts which all similarly found, in similar circumstances, that the 2015 amendment, adding the government-debt exception, changed an otherwise valid statute to an unconstitutional content-based restriction. *AAPC*, 140 S. Ct at 2347-48. And, that the fact remains that, at the time the robocalls at issue in this lawsuit were made, the statute could not be enforced as written – and a later amendment to a statute cannot be retroactively applied. *Id*.; *see also*, *Creasy*, 2020 WL 5761117, at *6, 8; *Lindenbaum*, 2020 WL 6361915, at *7-8; *Hussain*, Case No. 5:20-cv-00038 (Mid. Dist. Florida, Dec. 11, 2020).

As the TCPA only passed constitutional muster after July 6, 2020, this Court lacks subject matter jurisdiction over the calls at issue here. Each call – a form of speech – occurred during a

time where the TCPA was effectively void. *See Lindenbaum* at *13-14 ("The Court cannot wave a magic wand and make that constitutional violation disappear. Because the statute at issue was unconstitutional at the time of the alleged violations, this Court lacks jurisdiction over this matter."); *Creasy*, 2020 U.S. Dist. LEXIS 177798, at *14-15 ("the unconstitutional amended version of § 227(b)(1)(A)(iii) is what applied to [defendant] at the time of the challenged communications at issue, and that fact deprives the Court of subject matter jurisdiction to adjudicate [defendant]'s liability with regard to such communications."); *Baucum*, 80 F.3d at 541-42 (holding that federal courts are without jurisdiction to enforce violations of an unconstitutional statute "since there is no valid 'law of the United States' to enforce."). Plaintiff's SAC should therefore be dismissed under Federal Rules of Civil Procedure 12(b)(1).

## CONCLUSION

Plaintiff has invoked this court's federal question jurisdiction based solely on a statute that was unconstitutional as re-drafted in November 2015 until the United States Supreme Court rendered the statute constitutional on July 6, 2020. Accordingly, this court has no subject matter jurisdiction over this action based on TCPA violations that allegedly occurred in 2018 during the period that the statute was unconstitutional.

As such, Defendants, respectfully request that this Court enter an order dismissing the Second Amended Complaint with prejudice – and this action – for lack of subject matter jurisdiction.

Date:   December 22, 2020

Respectfully submitted,

*/s/ Josh M. Kantrow*
Josh M. Kantrow

**National Benefit Builders Inc., and
Access One Consumer Health, Inc.**

Josh M. Kantrow (ARDC No. 6231027)
LEWIS BRISBOIS BISGAARD & SMITH LLP
550 West Adams Street, Suite 300
Chicago, Illinois 60661
Tel: (312) 345-1718
Fax: (312) 345-1778
Josh.Kantrow@lewisbrisbois.com
On behalf of NCE

Charles J. Messina, Esq.
GENOVA BURNS LLC
494 Broad Street
Newark, New Jersey 07102
(973) 533-0777

Cmessina@genovaburns.com


**National Congress of Employers, Inc.**

Josef M. Mysorewala, Esq.
LAW OFFICE OF JOSEF MYSOREWALA, PLLC
2000 S. Dixie Hwy., Ste. 112
Miami, Florida 33133
(305) 356-1031
Josefm@lawjmm.com


**Health Insurance Innovations, Inc.**

Garry William O'Donnell
GREENSPOON MARDER LLP
2255 Glades Road
Suite 400-E
Boca Raton, FL 33431
(561) 994-2212
Garry.odonnell@gmlaw.com

Timothy A. Hudson
TABET DIVITO ROTHSTEIN
209 South LaSalle Street
7th Floor
Chicago, IL 60604
(312)762-9450
Thudson@tdrlawfirm.com