IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARY BILEK, individually and on behalf of others similarly situated, ) ) ) Plaintiff, ) ) v. ) ) NATIONAL CONGRESS OF EMPLOYERS, ) INC., NATIONAL BENEFIT BUILDERS, ) INC., ACCESSONE CONSUMER HEALTH, ) INC., UNIFIED LIFE INSURANCE ) COMPANY, HEALTH INSURANCE ) INNOVATIONS, INC., and DOES 1-10, ) ) Defendants. ) | Case No. 18 C 3083<br><br>Jeffrey T. Gilbert<br>Magistrate Judge |

**MEMORANDUM ORDER**

Plaintiff's Motion to Compel Written Discovery and Testimony from Defendant Health Insurance Innovations, Inc. ("HII") [ECF No. 273] ("Motion") is granted in part and denied in part. The Court's rulings on individual interrogatories, requests for production, and Rule 30(b)(6) topics are outlined below.

Preliminarily, the Court recognizes that Plaintiff has filed a Second Motion to Compel [ECF No. 291] ("Second Motion") in which she seeks to compel HII to answer interrogatories and produce documents requested in the same batch of written discovery that is the subject of this Order. Plaintiff says her Second Motion addresses discovery requests that HII had committed to respond to or supplement before she filed her first Motion [ECF No. 273]. Plaintiff's Second Motion is being briefed. The Court is entering this Order on Plaintiff's first Motion because the Motion has been fully briefed for some time, and it appears the Court can resolve the issues raised in it separately from the issues addressed in Plaintiff's Second Motion.

Secondly, later the same day that Plaintiff filed her Motion and then again a week after that, HII supplemented its answers to the interrogatories and requests for production that were at issue in Plaintiff's Motion. HII also reformulated a number of its responses and objections, probably in response to arguments Plaintiff had made in meet and confer sessions before she filed her Motion or in the Motion itself.[1] In response to what HII had done, Plaintiff then filed written supplements to her Motion in which she addressed HII's supplemental responses to her discovery requests. Supplement [ECF No. 276]; Second Supplement [ECF No. 279].

The Court agrees with Plaintiff that many of HII's original responses to her interrogatories and requests for production were improper under the Federal Rules of Civil Procedure, raised legal procedural and substantive objections that had been addressed earlier in the case, and were more improper than some of HII's supplemental responses. The Court also agrees that HII's supplemental responses were tendered late in the discovery process and after Plaintiff's Motion was filed. For its part, HII would say that Plaintiff jumped the gun by filing her first Motion, that the parties were still meeting and conferring about some of Plaintiff's discovery requests or HII at least had agreed to produce some documents that could narrow the parties' disagreements. HII also says the parties continued to meet and confer after Plaintiff's Motion was filed. *See, e.g.,* HII's Opposition to Second Motion [ECF No. 304] at 1-3.

Under the circumstances, the Court will address the propriety of Plaintiff's written discovery and HII's responses to it on the merits and not rely on Plaintiff's argument that HII waived its ability to contest Plaintiff's discovery either because it originally asserted improper objections or that it was late in doing so. *Cf. Zambrano v. Sparkplug Capital, LLC,* 2020 WL

---

[1] Plaintiff certified in her Motion that she had complied with Local Rule 37.2 before filing her Motion and that the parties had been unable to resolve the discovery disputes raised in the Motion.

2

1847396 (N.D. Ill. April 13, 2020) (Gilbert, M.J.). That is not to say, though, that the Court will continue to overlook such discovery defaults in the future in this or other cases.

**Plaintiff's Interrogatories ("ROGs")**

**ROG No. 1.** Motion granted. HII's objections are overruled. ROG No. 1 specifically describes the type of information HII is being asked to provide. It is not as vague and ambiguous as HII argues it is by parsing words that have commonly understood meanings. It also does not, as HII argues, ask that "HII describe and explain its entire business model." HII's Opposition [ECF No. 282] at 7. ROG No. 1 seeks relevant information, and it is proportional to the needs of the case. Further, even if HII is right that ROG No. 1 requires it to provide a long, narrative answer that could run for many paragraphs or pages, HII should do the best it can to answer the interrogatory as concisely as possible.

The Court disagrees with HII that ROG No. 1 is improper because it purportedly seeks irrelevant information, that it is vague and ambiguous, or that HII cannot answer the interrogatory without incurring undue burden an expense that would not be proportional to the needs of this case. The Court recognizes that an interrogatory like this may not be the most effective discovery vehicle to obtain the information Plaintiff is seeking. It also may be that a Rule 30(b)(6) deposition, and particularly with reference to some of Plaintiff's Rule 30(b)(6) topics discussed below, will be a better vehicle for discovering the information Plaintiff is seeking with ROG No. 1. But that does not necessarily make ROG No. 1 unanswerable in its current form. So, HII should do its best to answer it.

**ROG No. 5.** Motion denied. In ROG No. 5, Plaintiff asks HII to "[i]dentify all third parties that develop business for you or your codefendants in this case, through placement of outbound telephone calls." HII objects that this interrogatory is overbroad, unduly burdensome, seeks

irrelevant information, and is not proportional to the needs of the case essentially because it seeks more information about people with whom HII does business than can be supported by the allegations in Plaintiff's operative complaint. Those allegations focus on calls that Plaintiff received that relate to the offer of specific insurance products or services that Plaintiff alleges were made under the auspices of HII, its co-defendants in this case, and non-parties Health Advisors of America, Inc. ("HAA") or affiliated persons or entities (or entities using assumed names such as Enrollment Center of America), and Rising Eagle Capital Group, LLC ("Rising Eagle"). Plaintiff's Second Amended Complaint [ECF No. 116].

HII's consistent position in this case is and has been that it "does not have a contract with" HAA or Rising Eagle, and those entities "are not permitted to make calls or sell insurance on behalf of HII, offer quotes on behalf of HII, or sell any product through the HII portal." Declaration of Bryan Krul [ECF No. 168-2] at ¶ 5. Plaintiff characterizes HII's position as being carefully constructed to avoid the full import of Plaintiff's claims which seek to impose liability on the Defendants in this case based on vicarious liability and agency theories. *See* Order dated July 1, 2020 denying HII's Motion to Dismiss [ECF No. 248] ("The Court finds that Plaintiff has sufficiently pleaded a plausible claim of vicarious liability through a chain of agent and subagent relationships based on a theory of implied actual authority."). In the Court's view, Plaintiff's written discovery addressed in this Order is all, in one way or another, directed at determining, within the confines of the Federal Rules of Civil Procedure, whether Plaintiff's claims hold water against HII's denials. That is permissible discovery.

Against this background, however, the Court agrees with HII that ROG No. 5 as written is overly broad and requests a broad swath of information that is not relevant to a claim or defense in this case. Although all discovery is a fishing expedition to some extent, Plaintiff has cast her net

4

too broadly with this interrogatory asking for the identities of *all* third parties that develop business for HII or its co-defendants. *Cf. Bank Direct Capital Finance LLC v. Capital Premium Financing LLC*, 2018 WL 946396, at *4 (N.D. Ill. Feb. 20, 2018) (recognizing that "the courts are unanimous in prohibiting discovery from being used as a 'fishing expedition'"). Plaintiff herself seems to acknowledge that the intent behind this interrogatory is at least in part to identify potential new defendants. Plaintiff's Reply [ECF No. 284] at 10-11 ("The purpose of this request is to figure out how many other 'HAAs' there are out there making telemarketing calls."). While that is not in and of itself a complete disqualifier, Plaintiff would have to show how the identities of these other third parties are relevant to the claims made in her Second Amended Complaint, including her class action allegations, or defenses that have been raised by HII and its co-defendants.[2]

The one case Plaintiff cites in support of her proposition that this is a proper discovery request was decided under a different relevance standard than applies to this case which was filed after the 2015 amendments to the Federal Rules of Civil Procedure took effect. *See Henderson v. United Student Aid Funds, Inc.*, 2015 WL 4742346, at *5 (S.D. Cal. July 28, 2015) (holding that "[r]elevant information for discovery purposes includes any information 'reasonably calculated to lead to the discovery of admissible evidence'"). The other justifications for the broad scope of this interrogatory that Plaintiff proffers in her reply brief also are a bit of a stretch at this stage of the case. Plaintiff's Reply [ECF No. 284] at 11 (information being sought is relevant to Plaintiff's internal do-not-call count and to injunctive relief). Although there may be a proper interrogatory that is circumscribed by the claims and defenses in this case hiding within ROG No. 5 as written, the Court is not inclined to attempt to draft such an interrogatory now from scratch or to carve out the relevant core of the interrogatory as written. Therefore, HII's objections based on relevance,

---

[2] *Compare* Plaintiff's Rule 30(b)(6) topic 6 ("Identify any and all third parties or vendors involved in the process of obtaining new customers or leads *that derived through HAA* . . . .") (emphasis added).

5

overbreadth, and proportionality are sustained for now because the universe of information Plaintiff is asking for in ROG No. 5 is not properly calibrated to a claim or defense in this case.

**ROG No. 6.** Motion granted. This interrogatory is properly calibrated to matters that are relevant to the claims or defenses in this case including with respect to class discovery for the reasons explained by Plaintiff in her written submissions. Plaintiff's Motion [ECF No. 273] at 9-10; Plaintiff's Reply [ECF No. 284] at 11. In ROG No. 6, Plaintiff is attempting to discover the system or vendor(s) that HII uses to communicate with existing or potential customers in addition to the systems or vendors that Plaintiff already knows about. To the extent Plaintiff was an actual or potential customer of HII, depending upon how those terms are used or defined, and HII communicated with her or putative class members, this interrogatory seeks information relevant to a claim or defense in this case. Plaintiff is not seeking information about all of HII's existing or potential customers. She is seeking information about the systems or vendors HII used to keep track of or communicate with existing or potential customers.

HII narrowly interprets the interrogatory as asking only about its communications with customers, not potential customers or the system(s) HII uses in either case, and whether a third-party maintains data for HII or HII maintains that data itself, and it then answers the interrogatory as narrowed. That is not acceptable. This may be a tempest in a teapot, but HII needs to answer ROG No. 6 as written fully to the extent it can do so. Its objections are overruled.

**ROG No. 8.** Motion granted but only to the extent that HII is required to "[i]dentify the entities whose [Life Insurance; Short Term Medical; Sickness & Hospital Plans][3] products are

---

[3] The bracketed language is taken from ROG No. 8. It appears to the Court that the other types of insurance products or services referenced in the interrogatory are not relevant to the claims or defenses in this case or proportional to the needs of the case, at least based on the Second Amended Complaint, and the other documents and information referenced in the parties' briefs and attachments to them submitted on Plaintiff's Motion. As Plaintiff argued in a different but related context: "it matters not whether Plaintiff was solicited NCE Premier or some other NCE-branded product; the point is that Defendants, including

6

available through HII, and [to] describe any groups or bundles of [such] products or services that are sold together [with other products or services]." Otherwise, the Motion is denied.

Plaintiff alleges she was offered or received solicitations for insurance products and services over the telephone. *See generally* Second Amended Complaint [ECF No. 116]. The transcripts of two telephone calls that Plaintiff received in March and September 2018 reference multi-plan PPO insurance policies bundled with life insurance. Plaintiff submitted a transcript of a March 18, 2018, telephone call she received ostensibly on behalf of HII, according to her agency and vicarious liability theory of the case, in which a bundled package that included health and life insurance was discussed. Transcript of March 18, 2018 Call [ECF No, 273-4]. *See also* Transcript of September 20, 2018 Call [ECF No, 273-5]. The life insurer was not disclosed in either call. The health insurance was described as the MultiPlan PPO Network underwritten by NCE Premier Platinum according to the transcript of the March 18 call. Transcript of March 18, 2018 Call [ECF No, 273-4] at 4.

HII has submitted a sworn statement that it does not sell the NCE Premier Product or allow others to use its portal to sell or quote that product. Declaration of Bryan Krul [ECF No. 168-2] at ¶ 5. But Plaintiff has submitted a litany of other evidence that reasonably calls into question, at least at this stage of the case, whether HII had any relationship with HAA or Rising Eagle, or their affiliates or people or entities that work with them including, as Plaintiff has alleged, Defendant National Congress of Employers ("NCE"). *See* Transcript of Sean Duffie Deposition [ECF No. 273-7] at 18 ("Q: Have you ever heard of Health Insurance Innovation or HII? A: Yes. Q: What is

---

HII, are using unsolicited robocalling to solicit NCE-branded products." Plaintiff's Opposition to HII's Motion to Stay [ECF No. 178] at 12. The discovery the Court is authorizing by limiting the scope of ROG No. 5, therefore, appears to be relevant to Plaintiff's claims and proportional to the needs of the case. Defendants say they had nothing to do with the telephone calls or insurance products or services Plaintiff alleges in the Second Amended Complaint. This discovery is directed at testing those defenses.

HII? A: They're a third party administrator that has different insurance companies on their platform. Q: Did you work with HII when you were at HAA? A: That was one of the companies that we sold -- … products for."); Declaration of Michael Smith [ECF No. 273-6] at ¶ 4 ("One of the companies whose products/services HAA sold during these calls was National Congress of Employers ("NCE"); E-mail correspondence between HII and NCE in May 2018 [ECF No. 178-2]; *In re Spiller,* 2020 WL 3091143, at *24, n.63 and n.109 (FCC June 10, 2020) ("Rising Eagle's largest client, Health Advisors, . . . sold health insurance through Health Insurance Innovations, Inc. [HII] . . . . HII admits in filings with the Securities and Exchange Commission that its third-party distributors engage in telemarketing to sell HII products;" "Health Advisors of America paid Rising Eagle Capital Group $3,219,153 between May 2018 and August 2019." ).

Admittedly, these are just data points on an incomplete legal proof chart at this time. But in this context, it is reasonable to believe that the information sought by ROG No. 8, as narrowed by the Court above, is relevant to a claim or defense in this case and is proportional to the needs of the case. HII's attempt, again, to narrowly construe the interrogatory and then say it has no responsive documents in light of its narrow construction does not work. Similarly, HII's position that it does not have a "contract" with HAA or Rising Eagle, does not allow those third parties to do things "on behalf of HII," and does not allow them "to sell any products through the HII portal" does not fully meet Plaintiff's agency theory of liability in this case, a theory that the assigned District Judge found was sufficient to overcome HII's motion to dismiss at least at the pleading stage. *See* Order dated July 1, 2020 [ECF No. 248] at 3-4. Accordingly, HII's objections are overruled in part as set forth above, and it must answer ROG No. 8 as limited by this ruling.

**Requests for Production ("RFPs")**

**RFP Nos. 1 and 2.** Motion denied as to RFP No. 1. HII says it "has located no responsive documents [relating to Plaintiff] following a reasonable and diligent search conducted in accordance with its obligations under the Federal Rules of Civil Procedure." The Court cannot order HII to produce documents it says it does not have. *See Lowe v. CVS Pharmacy, Inc.,* 2015 WL 13427768, at *4 (N.D. Ill. Feb. 6, 2015). Plaintiff does not believe HII conducted "a reasonable and diligent search" for documents or other material "relating to Plaintiff" (RFP No. 1). Without more, though, the Court does not know what else it can do in the context of written discovery given HII's representation that it conducted such a search and it has no documents that it can identify as relating to Plaintiff. It may be that HII has cast its net too narrowly in looking for such documents. If that is the case, then as discovery develops, and possibly after she takes a Rule 30(b)(6) deposition of an HII representative, Plaintiff will have a better idea of where such documents might be located and she can revisit this issue with HII and/or the Court. As of now, though, Plaintiff's Motion as to RFP No. 1 is denied.

RFP No. 2 is a more roundabout way of discovering whether HII has any documents that relate to the claims asserted by Plaintiff. Plaintiff's Motion is granted as to RFP No. 2 as modified by Plaintiff. Plaintiff is seeking "documents concerning any products or services that fit the descriptions given to Plaintiff during the two calls she received that resulted in a quote." Plaintiff's Reply [ECF No. 284] at 3. HII did not address Plaintiff's modification of RFP No. 2 in its Opposition brief [ECF No. 282]. It stuck to its position that it has no documents relating to Plaintiff without addressing whether it can locate or produce documents that fit the description of the products or services offered to Plaintiff on the recorded telephone calls in March and September 2018. If those documents exist, then Plaintiff may be able to use them to determine or investigate

9

further whether HII's position that it has no documents or information relating to Plaintiff is sustainable.

Given HII's position that it has no documents responsive to RFP No. 1, Plaintiff's proposal that HII search for and produce documents that fit the descriptions of the products and services described in the recorded telephone calls in March and September 2018 is reasonable if it can be done without undue burden. The Court agrees with Plaintiff that this "outside-the-box way[] of determining what quote information was related to Plaintiff" is a reasonable and proportional response to HII's position that it has no documents relating to Plaintiff. Plaintiff's Supplement to Motion to Compel [ECF No. 276] at 2. Plaintiff has reason to believe that HII was involved in some way in the process by which calls were made to Plaintiff and insurance products and services were offered to her. For the reasons discussed above, the Court is not as of now convinced that HII's denial of any involvement covers the entire board or fully meets Plaintiff's contentions. If HII can suggest a different, potentially less burdensome, approach to determining whether it has any documents that relate to the matters discussed during the March and September 2018 telephone calls that Plaintiff received, the Court assumes Plaintiff's counsel will listen to such a suggestion. But Plaintiff's Motion is granted as of now with respect to RFP No. 2.

**RFP No. 3.** Motion granted, and HII's objections are overruled. HII says this request is no longer in issue so it does not respond to Plaintiff's argument as to this request in her Motion. But Plaintiff clearly moved to compel a response to RFP No. 3. Plaintiff's Motion [ECF No. 273] at 11. RFP No. 3 seeks production of documents, manuals, and other materials that describe the system that salespeople use to sell products and services when they log into HII's portal. This information is relevant, or at least potentially relevant, to Plaintiff's claims. The discovery is proportional or can be made so if the parties meet and confer about acceptable parameters.

10

The Court, again, appreciates that HII says it had nothing to do with the alleged conduct from which Plaintiff's claims arise involving Rising Eagles, HAA, or assumed names under which Plaintiff claims HAA did business such as Health Enrollment Center, Enrollment Center of America. *See* Plaintiff's Supplement [ECF No. 276] at 3, n.4. But HII's motion to dismiss was denied, Plaintiff's claims are proceeding, and she has brought forth at least some evidence and made arguments that at the very least challenge HII's position that it had nothing to do with anything at issue in this case. *See, e.g.,* Transcript of Sean Duffie Deposition [ECF No. 273-7]; E-mail correspondence between HII and NCE [ECF No. 178-2]; *In re Spiller,* 2020 WL 3091143, at *24, n.63 and n.109 (FCC June 10, 2020).

Rather than, figuratively speaking, forcing Plaintiff to continue to throw darts to try and discover where relevant information might be located, HII might be able to make the process easier and less expensive by engaging more with the arguments Plaintiff is making as to how HII might have been involved in the activity from which Plaintiff's claims here arise given her theory of the case. Indeed, if HII truly is the uninvolved innocent that it portrays itself as being, it may be possible for it to convince Plaintiff of that fact in a way that is far less expensive and contentious than what has unfolded in this case to date. Failing that, however, Plaintiff is entitled to attempt to discover her case consistent with the Federal Rules of Civil Procedure.

**RFP No. 4.** Motion granted. HII's objections are overruled. Plaintiff characterizes this as a key discovery request in this case, and the Court agrees. HII re-characterizes RFP No. 4 as a request for contracts that exist between HII and Health Enrollment Center or identified related individuals. HII's characterization of RFP No. 4 is too narrow and does not fairly meet the substance of what Plaintiff is trying to discover. Consistent with its recharacterization of RFP No. 4, HII offers to produce any contracts that exist between itself and the identified people and entities.

11

But HII already has said it does not have a contract with HAA, Declaration of Bryan Krul [ECF No. 168-2] at ¶ 5, and the people and entities identified in RFP No. 4 appear to be associated with HAA. So, this appears to be nothing more than a circle game. RFP No. 4 seeks information that is relevant to Plaintiff's claims. If HII has no responsive documents, then it should say so. If responsive documents exist, then HII needs to produce them without the apparent qualification or limitation that it has inserted in its response to this request for production.[4]

**RFP No. 8.** Motion is granted, and HII's objections are overruled if what Plaintiff is seeking is keys, data dictionaries, or other like materials necessary for her or her attorneys or consultants to interpret or understand "document data that includes information concerning communications or indicia of consent (or lack of consent)" that HII produces in response to Plaintiff's other requests. There is extra verbiage in RFP No. 8 that HII challenges, but that language does not seem to be crucial to this request. So, HII's objection based on vagueness and ambiguity is overruled assuming the Court's interpretation of RFP No. 8 is correct. In addition, HII's objections citing undue burden, relevance, and proportionality are made only generally, and they do not seem to have merit based upon the rather limited thrust of RFP No. 8. This is a legitimate and appropriate request for production. *See* Advisory Committee Notes to 2015 Amendments to Rule 26 ("Framing intelligent requests for electronically stored information . . . may require detailed information about another party's information systems and other information resources."). If the Court's interpretation of RFP No. 8 is correct, then HII must produce the information requested.

---

[4] HII also offers to produce "any log-in credentials associated therewith" which, in context, appears to refer to log-in credentials associated with any contracts that HII has with the identified persons or entity that HII has offered to produce. Even if the Court is misreading HII's offer to produce some documents in response to RFP No. 4 as circular, the subset of materials that HII has offered to produce – contracts and log-in credentials associated with those contracts – is not fully responsive to this request for production which also seeks data and documents concerning marketing activity by the named people and entity.

**RFP No. 9.** Motion granted. HII's objections are overruled. HII says it "will produce its policies regarding telemarketing sales responsive to this request" but "[w]ithout waiving the foregoing objections." Neither the Court nor Plaintiff understand what that means. If it means that HII's production will not respond in full to the substance of RFP No. 9, then HII's response is improper. The practice of objecting to a request for production but then stating that documents will be produced 'subject to and without waiving the objection' is no longer acceptable after the 2015 amendments to the Federal Rules of Civil Procedure, and Rule 34(b)(2)(C) makes that explicit. The documents sought by RFP No. 9 are relevant to Plaintiff's claims and HII's defenses. If HII has such documents, it should produce them.

For the avoidance of doubt, HII must produce the documents it said it was going to produce and anything else it planned to withhold based on its objection that fairly are within the reach of RFP No. 9, if there are documents in either category. In other words, if what HII is doing is simply registering its objection "for the record" but it will produce all responsive documents it has in its possession, custody, or control despite that objection, and no documents are being withheld because of the objection, then it needs to say so. If, on the other hand, HII is planning to withhold any documents based on its objection, the objection is overruled because the requested documents are relevant to a claim or defense in this case, and their production appears to be proportional to the needs of the case at this juncture.

Finally, although HII says in a conclusory fashion that RFP No. 9 is "unduly burdensome" it provides no detail to support that objection. In the same breath, HII also says "it is not a telemarketer [and] it does not make any outbound sales calls." HII's Opposition [ECF No. 282] at 5. So, it is not clear just what documents HII might have that are responsive to this request in any event. Would producing only a few or even no actual documents be unduly burdensome? If HII

13

has no responsive documents to produce, then it should say so. On the other hand, if HII has responsive documents, then it should produce them. On the record now before the Court, RFP No. 9 appears to be proportional to the needs of the case.

**RFP No. 12.** Motion granted. RFP No. 12 seeks production of HII's do not call policies, practices, and procedures. This clearly is relevant and proportional discovery in this case. HII says it will produce "its policies regarding telemarketing sales responsive to this request" without waiving its objection. That is what HII said in response to RFP No. 9 above, but the Court, again, does not know what that means in this context. Plaintiff is looking for particular documents here. If HII's policies regarding telemarketing sales are responsive to RFP No. 12, and no other responsive documents exist, then HII's response is not improper. But if other responsive documents exist, they also must be produced. Therefore, HII's improper boilerplate objections are overruled, and it must produce the documents called for by RFP No. 12 to the extent they exist.

**RFP Nos. 18 and 26.** Motion granted. HII's objections are overruled. Plaintiff apparently offered during the meet and confer process to limit one or both requests to matters involving HAA, but HII rejected that proposal because it says it has no relationship with HAA. HII's Opposition [ECF No. 282] at 7; Plaintiff's Reply [ECF No. 284] at 8. Regardless, the information Plaintiff is requesting is relevant for the reasons Plaintiff says it is, including with respect to Plaintiff's allegations that HII has or had a relationship with HAA, her allegations of willfulness, and her class action allegations, and other courts have ordered such documents produced in similar cases both before and after the 2015 amendments to the Federal Rules of Civil Procedure. *See, e.g., Medina v. Enhanced Recovery Co.,* 2017 WL 5196093 (S.D. Fla. Nov. 9, 2017); *Brodsky v. Human Dental Ins. Co.,* 2012 WL 12973195, at *3 (N.D. Ill. May 18, 2012) (a case in which the named defendant also denied sending the fax in issue).

**RFP No. 19.** Motion denied. HII's objections based on overbreadth, burden, relevance, and proportionality are sustained. This request for "all communications and other documents concerning marketing goods or services by telephone" is too broad if, in fact, HII is in the business of marketing goods and services by telephone in one way or the other as Plaintiff suspects and alleges. If Plaintiff is correct, then this request potentially encompasses all documents used in HII's business. In addition, several of Plaintiff's other requests for production addressed in this Order, which the Court has allowed, probably cover relevant and responsive documents that would be encompassed within this catch-all category as well. For example, the "policies regarding telemarketing sales" that HII says it will produce in response to RFP Nos. 9 and 12 also would seem to be responsive to ROG No. 19 which asks for documents and communications "concerning marketing goods or services by telephone."

**RFP No. 25.** Motion granted. HII appears to have withdrawn its original objection to producing its document destruction and/or retention policies. If not, then those objections are overruled, and it must these policies.

### Rule 30(b)(6) Topics

Plaintiff's Motion is granted in part to the extent that HII must produce a corporate designee to testify about the matters identified in Plaintiff's Rule 30(b)(6) notice. In addition, HII's objections to Plaintiff's Rule 30(b)(6) topics are overruled. For the reasons discussed below, the Court cannot determine whether HII's commitment to produce a witness to testify about a particular topic "notwithstanding and without waiving [its stated] objections and clarifications" means that Plaintiff will be able to obtain testimony from that witness that is responsive to her Rule 30(b)(6) topics, or not. The bottom line is that HII must produce a corporate designee on the noticed Rule 30(b)(6) topics, and Plaintiff should take that deposition. That is the only way

Plaintiff will know what information HII can provide in its corporate capacity. If disputes remain after that deposition, then the Court can address them with more context than it is presented with today.

Plaintiff's Rule 30(b)(6) topics are appropriate within the context of the claims and defenses being raised in this case. HII's overriding objection -- that it cannot provide a corporate designee for the noticed topics because it does not have a contract with HAA or Rising Eagle, and neither corporate entity is allowed to engage in identified acts on behalf of HII -- is noted. But Plaintiff is entitled to test those assertions for the reasons discussed above. For the overwhelming majority of Plaintiff's Rule 30(b)(6) topics, HII says it will produce a corporate designee to provide testimony "notwithstanding and without waiving [its stated] objections and clarifications." The Court is not sure what that means in practice. Plaintiff, therefore, should depose HII's corporate designee. If HII's corporate representative cannot "testify about information known or reasonably available to the organization" as required by Federal Rule Civil Procedure 30(b)(6), in response to a particular deposition topic as identified by Plaintiff, then he or she can so state and explain why that is so. If HII's corporate designee can provide testimony about matters that are known or reasonably known to HII that are responsive to Plaintiff's notice topics, then he or she must do so. As noted above, the Court can address further issues or disputes after that deposition has been taken if necessary. But the Court cannot now, on the record developed on Plaintiff's Motion, ascertain what it and what is not reasonably within the corporate knowledge of HII. Simply stated, that is what a deposition is designed to accomplish.

With respect to the handful of noticed topics as to which HII does not say it will produce a corporate designee even "notwithstanding and without waiving [its] objections," HII also must produce a corporate representative to testify about those topics. HII says it cannot produce a

16

witness for Rule 30(b)(6) topics 1(k), 1(l), and 6, all of which are limited to HII's interactions with HAA, because it does not have a contract with HAA and does not allow HAA to engage in certain actions on its behalf. But Plaintiff's topics are not limited to situations governed by a contract between HII and HAA or the particular things HII says it does not allow HAA to do. HII also objects to topic 6 on the broad grounds that it is vague and ambiguous, overbroad, unduly burdensome, and that it seeks irrelevant information and is not proportional to the needs of the case. No details are provided, and the Court does not agree that topic 6 is as defective as HII says it is. If necessary, Plaintiff can help clarify any ambiguity for HII. Plaintiff says it "anticipates that there will only be a small number of additional third parties that had anything to do with HAA-related lead generation, but because these entities are highly likely to have relevant, discoverable information, they should be identified." Plaintiff's Motion [ECF No. 273] at 33. If that is the case, then the burden on HII in preparing a corporate designee on this topic, if HII has any responsive information, would not seem to be undue.

With respect to topic 5, which asks what steps HII "or any third party of which you are aware" took to prevent Plaintiff from receiving additional telephone calls from HAA or anyone else, HII must produce a corporate designee to testify about any information HII has about the topic. The topic is not vague, ambiguous, or overbroad, as HII says it is, nor does it seek irrelevant information that is not proportional to the needs of the case. Among other things, Plaintiff alleges she received a call in September 2018 that she attributes vicariously to HII, four months after she filed this case. If HII's corporate testimony on this topic is that it took no steps to prevent Plaintiff from receiving telephone calls because it had no knowledge that Plaintiff received any of the calls alleged in the Second Amended Complaint, then that is the corporation's answer. If the corporation has other responsive information, it needs to provide it. The Court is not prepared to prevent

17

Plaintiff from asking HII this question or any others because its lawyers say it has no responsive information after a reasonable and diligent search. Plaintiff is entitled to an answer from the corporation under oath.

With respect to topics 7 and 8, the Court overrules HII's objection for the same reasons it overruled its objections to Plaintiff's RFP No. 2 as modified. It is not clear whether Plaintiff has limited these topics further to the matters described in the last paragraph of her reply brief. Plaintiff's Reply [ECF No. 284] at 14. If she has done so, the Court is not disturbing that further concession. But if she has not done so, then she can inquire about the topics as written, and HII needs to respond consistent with its obligations under Rule 30(b)(6).

The Court recognizes that HII says it does not maintain certain of the information encompassed by these topics. HII's Opposition [ECF No. 282] at 10. If HII's corporate representative cannot provide information responsive to these topics after being prepared to testify about facts "known or reasonably available to [HII]" within the meaning of Rule 30(b)(6), then HII will have fulfilled its obligation. Plaintiff, of course, is entitled to inquire to some extent about what HII or its corporate designee did to prepare to respond to these topics as well. Or counsel can forthrightly discuss what information HII can provide concerning topics 7 and 8 before the deposition so that it might be a productive exercise for both parties and to avoid the necessity of bringing back a corporate representative for another deposition after more motion practice. *See again* Advisory Committee Notes to 2015 Amendments to Rule 26 ("Framing intelligent requests for electronically stored information, for example, may require detailed information about another party's information systems and other information resources.").

With respect to the temporal scope of Plaintiff Rule 30(b)(b) deposition of HII, Plaintiff proposes a default time period of four years before the date this case was filed, which would allow

18

her to ask questions going back to April 30, 2014, consistent with the statute of limitations for TCPA claims, in absence of an express limitation within a particular topic (*see, e.g.,* topics 5, 7 and 8). Plaintiff's Motion [ECF No. 273] at 18, n.11. Defendant seems to assume that the applicable time period will be 2018 (presumably the calendar year) because Plaintiff says that she received telephone calls in 2018. Defendant provides no other explanation as to why the temporal boundaries for Plaintiff's Rule 30(b)(6) inquiry should be limited to 2018. Plaintiff does not address HII's proposed one-year time frame for the deposition in her reply brief. There is no additional information in the record that the Court can rely on to resolve this apparent dispute if, in fact, a dispute exists. The Court also does not know whether HII's burden in preparing a deponent to respond to Plaintiff's Rule 30(b)(6) topics is materially different for a one-year or four-year time period.

It would seem to fall to HII to establish why Plaintiff's proposed default time period linked to the applicable statute of limitations should not control here, and it has not done so. Because the Court does not have enough information to resolve a dispute about the relevant time period for a Rule 30(b)(6) deposition of HII, to the extent that issue is disputed, it is inclined to defer to Plaintiff's proposed time frame because she is the noticing party for the deposition. Therefore, unless otherwise specified, the time period covered by Plaintiff's Rule 30(b)(6) notice is from April 30, 2014 through and including the date Plaintiff filed this lawsuit on April 30, 2018.[5]

---

[5] Plaintiff's original Rule 30(b)(6) deposition notice does not appear to be in the record on Plaintiff's Motion. So, the Court does not know whether Plaintiff specified a different end date than April 30, 2018 for the Rule 30(b)(6) deposition of HII's corporate designee. The Court recognizes that Plaintiff references a telephone call that occurred on September 20, 2018, in her Rule 30(b)(6) deposition topic 8 and the Court does not mean to foreclose inquiry into that topic.

Accordingly, for the reasons set forth in this Memorandum Order, Plaintiff's Motion to Compel Written Discovery and Testimony from Defendant Health Insurance Innovations, Inc. [ECF No. 273] is granted in part and denied in part.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: January 4, 2021