IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARY BILEK, individually and on behalf of others similarly situated,<br>　　　　　　Plaintiff,<br><br>UNITED STATES OF AMERICA,<br>　　　　　　Intervenor,<br><br>　　v.<br><br>NATIONAL CONGRESS OF EMPLOYERS, INC., et al.　　Defendants. | Case No. 1:18-cv-03083<br><br>Hon. Judge Charles R. Norgle, Sr.<br>Hon. Mag. Judge Jeffrey T. Gilbert |

**DEFENDANTS' RESPONSE IN OPPOSITION TO THE UNITED STATES' INTERVENOR BRIEF IN SUPPORT OF THE CONSTITUTIONALITY OF THE TELEPHONE CONSUMER PROTECTION ACT**

Defendants, NATIONAL CONGRESS OF EMPLOYERS, INC. ("NCE"), NATIONAL BENEFIT BUILDERS, INC. ("NBBI"), ACCESS ONE CONSUMER HEALTH, INC. ("AOH"), and HEALTH INSURANCE INNOVATIONS, INC. ("HII"), hereby submit their Response in Opposition to the United States' Intervenor Brief in Support of the Constitutionality of the Telephone Consumer Protection Act and state as follows:

The United States has intervened in this matter to have this Court impose liability upon disfavored speakers (anyone who is not a government debt collector), while exempting from liability government debt collectors. If the United States' position were recognized then it would restore the very same content-based discrimination that the Supreme Court found unconstitutional in *Barr v. American Association of Political Consultants* (*"AAPC"*), 140 S. Ct. 2235 (2020). According to the United States, parties like Defendants in this matter could be subject to liability for robocalls while the government debt exception was in effect, but robocallers seeking to collect debt on behalf of the United States could not be liable. The unequal treatment between

favored (government debt collectors) and non-favored (everyone else) speakers sought by the United States in this matter is identical to the unequal treatment created by Congress in passing the government debt-exception that the Supreme Court struck in *AAPC*. *See AAPC*, 140 S. Ct. at 2354 ("The First Amendment is a kind of Equal Protection Clause for ideas … Congress violated that First Amendment equal-treatment principle in this case by favoring debt-collection robocalls and discriminating against political and other robocalls." (internal citation omitted)). Defendants are not asking this Court to find the TCPA to be unconstitutional. The United States Supreme Court has already made that determination (for the period of time from the institution of the government debt exception to the *AAPC* decision). Instead, Defendants are asking the Court to reject the United States' attempt to reinstate—in effect—the same unequal treatment of favored/non-favored speakers that the Supreme Court has already deemed unconstitutional. The only practical solution that would be faithful to and consistent with the Supreme Court's decision is for this Court to decline to enforce the TCPA as alleged against Defendants in this case for the period of time that the government debt-exception was in effect.

## ARGUMENT

### A. *AAPC*

The Supreme Court held that the government-debt exception to the TCPA's automated-call restriction violated the First Amendment. *Id.* at 2347. When Congress added the government-debt exception to the TCPA's statutory language, § 227(b)(1)(A)(iii) in its entirety became a content-based restriction on speech that violated the First Amendment. *Id.* at 2346; *see Turner Broad. Sys., Inc. v. FCC,* 512 U.S. 622, 685 (1994) ("[L]aws favoring some speakers over others demand strict scrutiny when the legislature's speaker preference reflects a content preference.").

Upon finding the First Amendment violation in § 227(b)(1)(A)(iii), the Supreme Court

determined that the proper remedy for this constitutional violation was to sever the exception from the rest of the statute. *AAPC*, 140 S. Ct. at 2353-54. Essentially, the Supreme Court removed the statute's unconstitutional element and restored it to its original content-neutral regulation of speech.[1] *Id*. at 2355.

Critically, the Supreme Court was **not** presented with a question regarding the retroactive effect of statutory severance, and, therefore, did not expound upon that issue. As the decision's language evidences, the *AAPC* Court only explicitly determined how § 227(b)(1)(A)(iii) would operate *prospectively*. *See e.g.*, *Id*. at 2344 ("As a result, plaintiffs still may not make political robocalls to cells phones, but their speech is now treated equally with debt-collection speech."); *Id*. at 2354 ("When the constitutional violation is unequal treatment, as it is here, a court theoretically can cure the unequal treatment either by extending the benefits or burdens to the exempted class, or by nullifying the benefits or burdens for all."); *Id*. at 2355 ("[T]he correct result in this case is to sever the 2015 government-debt exception and leave in place the longstanding robocall restriction."). While statutory interpretation jurisprudence dictates only one clear answer to this question, the lack of explicit direction from the *AAPC* plurality has provided the United States (and other TCPA litigants) an opportunity to try to enlarge the scope of the decision's effect.

**B. Application of Severance**

The *AAPC* Court found the government-debt exception severable from the pre-2015 version of § 227(b)(1)(A)(iii). *Id*. at 2343. The parties before the Court, including the United States, disagree how this statutory severance impacts the immediate litigation. Defendants contend that

---

[1] As summarized in the plurality opinion, six Justices found the government-debt exception of § 227(b)(1)(A)(iii) violative of the First Amendment as a content-based speech restriction, and seven Justices concluded that the pre-2015 version of § 227(b)(1)(A)(iii)—without the government-debt exception—should remain operative following invalidation and severance of the exception. *AAPC*, 140 S. Ct. at 2343-44.

the *AAPC* Court's severance applies only prospectively, meaning that the calls upon which Bilek's alleged § 227(b)(1)(A)(iii) violations rest are nonjusticiable. Plaintiff and the United States disagree, arguing that because the government-debt exception was an unconstitutional statutory amendment, it is a nullity and void when enacted, and therefore, has no effect on the original statute. (Dkt. 351 at p. 8.)

The Constitution does not vest Article III tribunals with the authority or tools to alter a statute and then give it retroactive effect. *See Levin v. Com. Energy, Inc.,* 560 U.S. 413, 427 (2010) ("[C]ourts may attempt, within the bounds of their institutional competence, to implement what the legislature would have willed had it been apprised of the constitutional infirmity"). In situations such as the one currently before this Court, federal courts are precluded from adjudicating severability matters with retrospective effect. *See Standard Oil Co. of N.J. v. United States*, 221 U.S. 1, 102 (1911) (Harlan, J., concurring in part and dissenting in part) ("[Courts] will not judicially legislate, since [their] function is to declare the law, while it belongs to the legislative department to make the law.")

The retroactive application the United States argues for, moreover, would violate basic precepts of law.[2]

---

[2] The United States contends that Defendants were required to file a Federal Rule of Civil Procedure 5.1 notice of constitutional challenge. However, Defendants are not challenging the constitutionality of the statute. *AAPC* already determined that issue, finding that 47 U.S.C. § 227(b)(1)(A)(iii) inclusion of the government-debt exception rendered the statute unconstitutional. Defendants, in their motions to dismiss, simply seek to apply binding Supreme Court precedent to the claims in the instant case. Moreover, if Defendants were required to file a Federal Rule of Civil Procedure 5.1 notice, the failure to do so is an excusable error as the Government has notice of the matter and has had a full and fair opportunity to intervene. That much is evidenced by the United States' intervenor application that Defendants consented to. Accordingly, there is no prejudice to the United States for failure to file a Fed. R. Civ. P. 5.1 notice, if one was required in this matter.

1. <u>The *AAPC* Decision Cannot Be Applied Retroactively Because It Would Trample Upon the Due Process Rights of Government-Debt Collectors</u>

The United States urges this Court to deem the 2015 amendment a nullity and to completely disregard it, preserving TCPA liability even when the unconstitutional exception was in effect. (Dkt. 351 at p.8.) However, to hold government-debt collectors liable would likely violate principles of due process and fair notice. *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012).

During the time period that the government-debt exception was in place, government-debt collectors enjoyed the protection of the law. "To retroactively hold them liable now would penalize them for relying on a statute that was, at the time, in full force and effect. 'Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to confirm their conduct accordingly; settled expectations should not be lightly disrupted.'" *See* Brief for the ACLU as Amicus Curiae supporting Appellee, at p. 9, *Lindenbaum v. Realgy, LLC*, No. 20-4252, (6th Cir. Mar. 18, 2021) (<u>Ex. A</u>) (citing *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994)).

If the Court were to apply broad retroactivity, government-debt collectors cannot be found to have had fair notice of their potential liability. "Speakers cannot fairly be subjected to enforcement retroactively on the basis that they should have anticipated a judicial decision striking an exception that inarguably encompassed them." *See* Brief for the ACLU as Amicus Curiae supporting Appellee, at p. 9, *Lindenbaum v. Realgy, LLC*, No. 20-4252, (6th Cir. Mar. 18, 2021) (<u>Ex. A</u>) (citing *Cf. Bouie v. City of Columbia*, 378 U.S. 347, 353-354 (1964) (barring *ex post facto* criminal prohibitions created by judicial determinations)). Only after *AAPC* does a government-debt collector have notice that the government-debt exception is invalid.

Notably, the United States expressly recognizes that retroactively imposing liability on collectors of government debt would be untenable. *See* U.S. Intervenor Br. p.13 (Dkt. 351) ("Holding debt collectors liable for calls made after the passage of the amendment but prior to the Court's decision in *AAPC* would implicate the 'fundamental principle . . . that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required.'") (quoting *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012)).

Accordingly, holding that the government-debt exception was a nullity and effectively void *ab initio* would lead to an absurd result that does not align with legal precedent and would violate the principles of due process and fair notice.

2. <u>The *AAPC* Decision Cannot Be Given Limited Retroactive Application Because It Would Result In The Restoration Of The Unequal Treatment Deemed Unconstitutional In *AAPC*</u>

Alternatively, the United States appears to support a finding of limited retroactive application. To support its position, the United States relies on footnote twelve of the *AAPC* plurality opinion to mean that the now-severed exception applies retroactively, but in a limited fashion. (Dkt. 351 at p.4, 7.) However, such application results in unequal treatment, and enforcement of the same unconstitutional and inequitable treatment that was struck in *AAPC*. Footnote twelve reads, in relevant part:

> [A]lthough our decision means the end of the government-debt exception, no one should be penalized or held liable for making robocalls to collect government debt after the effective date of the 2015 government-debt exception and before the entry of final judgment by the District Court on remand in this case, or such date that the lower courts determine appropriate. On the other side of the ledger, our decision today does not negate the liability of parties who made robocalls covered by the robocall restriction.

*AAPC*, 140 S. Ct. at 2355 n.12 (plurality opinion) (citation omitted). The United States interprets

this footnote to mean that parties like the Defendants should be subject to liability for robocalls while the government debt-exception was in effect, but that robocallers seeking to collect the government's own debt should not.

The United States' interpretation of footnote 12 would result in unconstitutional unequal treatment based on the content of speech. As succinctly set forth by the American Civil Liberties Union ("ACLU") in its Brief for the ACLU as Amicus Curiae supporting Appellee, at p. 9, *Lindenbaum v. Realgy, LLC*, No. 20-4252, (6th Cir. Mar. 18, 2021) (Ex. A):

> During the operative period from the government-debt exception's enactment until *AAPC*, only speech by the amended TCPA's disfavored speakers – Defendants – would be treated as unlawful, while the favored class – government debt collectors – would be uninhibited. Such a result would enforce precisely the discrimination that was struck in *AAPC*. *See AAPC*, 140 S. Ct. at 2354 ("The First Amendment is a kind of Equal Protection Clause for ideas … Congress violated that First Amendment equal-treatment principle in this case by favoring debt-collection robocalls and discriminating against political and other robocalls." (internal citation omitted)).

Accepting the Government's argument would produce a result entirely predicated on whether a TCPA defendant called an individual to collect government debt, which would eviscerate the six-Justice holding that Congress "impermissibly favored debt-collection speech over political and other speech[] in violation of the First Amendment." *AAPC*, 140 S. Ct. at 2343; *see also AAPC*, 140 S. Ct. at 2366 (Gorsuch, J., concurring in the judgment in part and dissenting in part) ("[A] holding that shields only government-debt collection callers from past liability under an admittedly unconstitutional law would wind up endorsing the very same kind of content discrimination we say we are seeking to eliminate.")

The infirmity of the United States' position becomes starker when considering the following example set forth by Facebook in its Brief for Facebook as Amicus Curiae supporting Appellee, *Lindenbaum v. Realgy, LLC*, No. 20-4252, (6th Cir. Mar. 24, 2021) (Ex. B):

> [I]magine that in 2015 Congress instead created a content-based exception for ATDS calls soliciting campaign donations for, say, Republicans, while leaving the ATDS restriction for call soliciting donation for Democrats. If both Republican and Democratic campaigns made ATDS call under that regime – before the exception was challenged – surely no court would (1) invalidate the exception for Republican calls going forward, yet nonetheless (2) impose liability *only* for Democratic calls that had already been made.

Accepting the United States' interpretation of footnote 12 of *AAPC* would require a blatantly discriminatory remedy. Holding that the government-debt exception was severed prospectively, but that the remainder of the statute is enforceable retrospectively, promotes a similarly untenable result, does not align with legal precedent, and results in the very same equal treatment issue that *AAPC* deemed unconstitutional.

    3.   Prospective Severance Is The Only Means Of Avoiding The Constitutionality Issues Arising From Retroactive Application of *AAPC*'s Holding

The only acceptable solution is for this Court to apply *AAPC*'s holding prospectively and decline to enforce an unconstitutionally discriminatory statute against the disfavored speaker. As discussed above, even if it were permissible to apply a severability holding retroactively in certain circumstances, that approach is inappropriate here. The entire autodialer restriction is unenforceable for the period of time between the enactment of the government-debt exception and the Court's determination in *AAPC* that the exception was severable. This is the only view that can be squared with the *AAPC* opinion and basic fundamental precepts of law.

*AAPC* held that the government-debt exemption violated the First Amendment during the time it was in existence, and a party cannot be held liable for violating a statutory provision that was unconstitutional at the time of the alleged violation. *See Grayned v. City of Rockford*, 408 U.S. 104, 107 (1972). The Court must "consider the facial constitutionality of the [robocall restriction] in effect when" a TCPA defendant made calls between 2015 and 2020. *See Grayned*, 408 U.S. at

107 n.2. *AAPC* made it clear that the restriction was unconstitutional during the relevant time period because it subjected callers to unequal treatment based on the content of their speech.

Additionally, the Court must enforce the equal-treatment requirement retrospectively by exempting the defendant from liability for allegedly violating an unconstitutional statute. In order to implement *AAPC*'s equal-treatment mandate, the Court cannot impose liability for any robocalls made while the government-debt exception was in effect.

As succinctly stated by Facebook in its Brief for Facebook as Amicus Curiae supporting Appellee, *Lindenbaum v. Realgy*, LLC, No. 20-4252, (6th Cir. Mar. 24, 2021) (Ex. B):

> When, as here, "the 'right invoked is that of equal treatment,' the appropriate remedy is a mandate of equal treatment." *Heckler v. Mathews,* 465 U.S. 728, 740 (1984). *AAPC* implemented the equal-treatment remedy prospectively by severing the government-debt exception and imposing liability on all future ATDS calls equally.

The purpose of severance is to fix constitutional violations, not to perpetuate the same violations. The presumption is that Congress intends to avoid results that "raise[] serious constitutional doubts." *Clark v Martinez*, 543 U.S. 371. 381 (2005). Accordingly, even if retroactive severability were theoretically an option, it would be inappropriate here because of the nature of the equal-treatment violation at issue.

Constitutional and legal precedent thus align with the best policy outcome, imposing prospective severance only and thereby stripping federal courts of subject matter jurisdiction over alleged violations of § 227(b)(1)(A)(iii) that occurred from the time Congress enacted the government-debt exception to the Supreme Court's invalidation of the exception in *AAPC*.

### C. The United States' Arguments Are Unavailing

The United States primarily relies on *Frost v. Corp. Commission of Oklahoma,* 278 U.S. 515 (1929) and *Eberle v. Michigan*, 232 U.S. 700 (1914). However, in those cases neither court

imposed retroactive liability for conduct expressly authorized by a statute that was later invalidated and severed. *Frost* and *Eberle* simply "support severing" the 2015 amendment. *See AAPC*, 140 S. Ct. at 2353, 2355.

The United States also relies on the fact that a "vast majority of district courts that have addressed the issue rejected the argument that robocallers can avoid liability for autodialed calls and texts made before the Supreme Court confirmed that the government-debt exception was invalid but severable." [Dkt. 351, p. 5, 6]. However, such an analysis fails to adequately consider controlling legal and constitutional precepts of law and the consequences of the requested application. No court in the Seventh Circuit has yet weighed in on the scope of *AAPC*'s severability. This Court, therefore, must come to its own independent conclusion.

When analyzing the possible outcomes of *AAPC*'s holding, which severed the government-debt exception from the TCPA, it becomes abundantly clear that any application of severance other than prospective application will violate established principles of constitutional law and severability doctrine. Accordingly, prospective application of the severed exception is the only acceptable solution, and importantly, prospective application withstands scrutiny under applicable constitutional and legal precedent. Because the automated call restriction was unconstitutional between 2015 and 2020, calls made during that period cannot trigger liability.

Therefore, this Court lacks subject matter jurisdiction over the alleged violations of 47 U.S.C. § 227(b)(1)(A)(iii) that occurred while the government-debt exception was in place. As such, Defendants request that this Court decline to enforce the TCPA as alleged against Defendants for the period of time that the government debt-exception was in effect.

Dated: June 14, 2021                                     Respectfully Submitted,

                                                          NCE, NBBI, Access One, and HII

NATIONAL CONGRESS OF EMPLOYERS, INC.

By:   /s/ Josef M. Mysorewala
      Josef M. Mysorewala
      LAW OFFICE OF
      JOSEF M. MYSOREWALA, PLLC
      2000 S. Dixie Hwy., Suite 112
      Miami, FL 33133
      Telephone: (305) 356-1031
      josefm@lawjmm.com
      Counsel for NCE

      Josh M. Kantrow
      Steven P. Slayden
      LEWIS BRISBOIS BISGAARD & SMITH LLP
      550 W. Adams St., Suite 300
      Chicago, IL 60661
      Telephone: (312) 345-1718
      josh.kantrow@lewisbrisbois.com
      steven.slayden@lewisbrisbois.com

NATIONAL BENEFIT BUILDERS, INC., ACCESSONE CONSUMER HEALTH, INC.

By:   /s/ Charles J. Messina
      Charles J. Messina
      Peter F. Berk
      GENOVA BURNS LLC
      494 Broad St., 6th Floor
      Newark, NJ 07102
      Telephone: (973) 533-0777
      cmessina@genovaburns.com
      pberk@genovaburns.com
      Counsel for NBBI and AccessOne

      Josh M. Kantrow
      Steven P. Slayden
      LEWIS BRISBOIS BISGAARD & SMITH LLP
      550 W. Adams St., Suite 300
      Chicago, IL 60661
      Telephone: (312) 345-1718
      josh.kantrow@lewisbrisbois.com
      steven.slayden@lewisbrisbois.com

HEALTH INSURANCE INNOVATIONS, INC.

By: /s/ Zachary A. McEntyre
    Zachary A. McEntyre
    Danielle Chattin
    King & Spalding LLP
    1180 Peachtree St., N.E., Ste. 1600
    Atlanta, GA 30309
    Telephone: (404) 572-4600
    zmcentyre@kslaw.com
    dchattin@kslaw.com
    Counsel for HII

    Rachael M. Trummel
    King & Spalding LLP
    110 N. Wacker Dr., 38th Fl.
    Chicago, IL 60606
    Telephone: (312) 764-6922
    rtrummel@kslaw.com

## CERTIFICATE OF SERVICE

I hereby certify that, on June 14, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

                                                                /s/ Steven P. Slayden