# Exhibit B

No. 20-4252

# United States Court of Appeals
# for the Sixth Circuit

ROBERTA LINDENBAUM, individually and on behalf of
all others similarly situated,

*Plaintiff-Appellant*,

UNITED STATES OF AMERICA,

*Intervenor-Appellant*,

v.

REALGY LLC, a Connecticut limited liability company,
dba Realgy Energy Services; JOHN DOE CORPORATION;
JOHN DOE CORPORATIONS 1-10,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Ohio
(No. 1:19-cv-2862—Hon. Patricia A. Gaughan)

## BRIEF OF AMICUS CURIAE FACEBOOK, INC.,
## IN SUPPORT OF APPELLEES

Roman Martinez
*Counsel of Record*
Andrew B. Clubok
Susan E. Engel
Michael Clemente
Gregory B. in den Berken
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004
Telephone: (202) 637-2200
roman.martinez@lw.com

March 24, 2021

*Counsel for Amicus Curiae Facebook, Inc.*

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 20-4252          Case Name: Lindenbaum v. Realgy LLC

Name of counsel: Roman Martinez

Pursuant to 6th Cir. R. 26.1, Facebook, Inc.
                             *Name of Party*
makes the following disclosure:

1.  Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

No.

2.  Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

No.

CERTIFICATE OF SERVICE

I certify that on _____ March 24, 2021 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Roman Martinez
Latham & Watkins LLP
555 11th St. NW, Suite 1000
Washington, DC  20004

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ........................................................i

TABLE OF AUTHORITIES ................................................................... iii

INTEREST OF AMICUS CURIAE ...............................................................1

INTRODUCTION .............................................................................3

ARGUMENT .................................................................................5

    THE ATDS PROVISION CANNOT BE ENFORCED AGAINST CALLS MADE WHEN THAT PROVISION WAS UNCONSTITUTIONAL ...............5

        A.    *AAPC* Held That The ATDS Restriction Violated The First Amendment Between 2015 And 2020 ...................................5

        B.    Callers Cannot Be Held Liable For Violating The Unconstitutional ATDS Provision ........................................7

        C.    *AAPC*'s Severability Holding Cannot Retroactively Cure The First Amendment Violation....................................9

        D.    Justice Kavanaugh's Non-Binding Footnote 12 Is Irreconcilable With *AAPC*'s Equal-Treatment Holding............................19

        E.    None Of The Rationales Lindenbaum And The Government Offer For Applying The Severability Holding Retroactively Withstands Scrutiny ........................................22

CONCLUSION ..............................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

*Arthrex, Inc. v. Smith & Nephew, Inc.*,
  941 F.3d 1320 (Fed. Cir. 2019), *cert. granted*, 141 S. Ct. 551
  (2020) ........................................................................................................16

*Arthrex, Inc. v. Smith & Nephew, Inc.*,
  953 F.3d 760 (Fed. Cir. 2020) .................................................................16, 17

*Barr v. American Association of Political Consultants, Inc.* (*AAPC*),
  140 S. Ct. 2335 (2020) .................................................................*passim*

*Bates v. State Bar of Arizona*,
  433 U.S. 350 (1977) ...........................................................................9

*Bouie v. City of Columbia*,
  378 U.S. 347 (1964) ...........................................................................21

*Chicot County Drainage District v. Baxter State Bank*,
  308 U.S. 371 (1940) ...........................................................................28

*Clark v. Martinez*,
  543 U.S. 371 (2005) ...........................................................................29

*Creasy v. Charter Communications, Inc.*,
  2020 WL 5761117 (E.D. La. Sept. 28, 2020) ...............................13, 20

*Duguid v. Facebook, Inc.*,
  926 F.3d 1146 (9th Cir. 2019), *cert. granted on statutory question*,
  141 S. Ct. 193 (2020) ......................................................................1, 26

*Eberle v. Michigan*,
  232 U.S. 700 (1914) ...........................................................................28

*Free Enterprise Fund v. Public Company Accounting Oversight
  Board* (*PCAOB*),
  561 U.S. 477 (2010) ...........................................................................8, 10

*Frost v. Corporation Commission of Oklahoma*,
  278 U.S. 515 (1929) ...........................................................................27, 28

**Page(s)**

*Gallion v. Charter Communications, Inc.*,
    772 F. App'x 604 (9th Cir. 2019), *cert. denied*, 141 S. Ct. 194
    (2020) ............................................................................................27

*Grayned v. City of Rockford*,
    408 U.S. 104 (1972) ..................................................................*passim*

*Harper v. Virginia Department of Taxation*,
    509 U.S. 86 (1993) .......................................................................10

*Heckler v. Mathews*,
    465 U.S. 728 (1984) ....................................................................17

*Hussain v. Sullivan Buick-Cadillac-GMC Truck, Inc.*,
    2020 WL 7346536 (M.D. Fla. Dec. 11, 2020) ..................................20

*Intercollegiate Broadcasting System, Inc. v. Copyright Royalty Board*,
    684 F.3d 1332 (D.C. Cir. 2012) .....................................................17

*Landgraf v. USI Film Products*,
    511 U.S. 244 (1994) .................................................................9, 18

*McIntyre v. Ohio Elections Commission*,
    514 U.S. 334 (1995) .....................................................................9

*PHH Corp. v. Consumer Financial Protection Bureau*,
    839 F.3d 1 (D.C. Cir. 2016), *reinstating panel decision on due
    process point en banc*, 881 F.3d 75 (D.C. Cir. 2018).........................18

*Reynoldsville Casket Co. v. Hyde*,
    514 U.S. 749 (1995) ....................................................................17

*Rivers v. Roadway Express, Inc.*,
    511 U.S. 298 (1994) ...............................................................10, 11

*Robinson v. United States*,
    394 F.2d 823 (6th Cir. 1968) .........................................................23

*Rogers v. Tennessee*,
    532 U.S. 451 (2001)......................................................................18

**Page(s)**

*Seila Law LLC v. Consumer Financial Protection Bureau*,
  140 S. Ct. 2183 (2020).................................................................8, 15

*Sessions v. Morales-Santana*,
  137 S. Ct. 1678 (2017)...................................................................13, 14

*Shen v. Tricolor California Auto Group, LLC*,
  2020 WL 7705888 (C.D. Cal. Dec. 17, 2020)...................................20

*Smith v. Cahoon*,
  283 U.S. 553 (1931)..........................................................11, 13, 18, 29

*Stoutt v. Travis Credit Union*,
  2021 WL 99636 (E.D. Cal. Jan. 12, 2021) .......................................25

*Trujillo v. Free Energy Savings Co.*,
  2020 WL 8184336 (C.D. Cal. Dec. 21, 2020).............................24, 25

*United States v. Booker*,
  543 U.S. 220 (2005)......................................................................14, 15

*United States v. Ford*,
  184 F.3d 566 (6th Cir. 1999) ...........................................................24

*United States v. Miselis*,
  972 F.3d 518 (4th Cir. 2020) ......................................................23, 24

**STATUTES**

47 U.S.C. § 227(b)(1)(A)(iii) ..........................................................1, 3, 21

47 U.S.C. § 227(b)(3).............................................................................20

47 U.S.C. § 608 ...................................................................................6, 26

**OTHER AUTHORITIES**

David H. Gans, *Severability As Judicial Lawmaking*, 76 Geo. Wash.
  L. Rev. 639 (2008) .............................................................................10

Ruth Bader Ginsburg, *Some Thoughts on Judicial Authority to Repair
  Unconstitutional Legislation*, 28 Clev. St. L. Rev. 301 (1979).........18

**Page(s)**

Brian Charles Lea, *Situational Severability*, 103 Va. L. Rev. 735 (2017) ...................................................................................................................23

# INTEREST OF AMICUS CURIAE[1]

Facebook, Inc., is a technology company with a direct and substantial interest in this case.  Facebook's mission is to give people the power to build community and bring the world closer together.  To that end, Facebook operates services used by more than 3.2 billion people around the world every month, including more than 255 million in the United States and Canada.  People use Facebook's apps and technologies to connect with friends and family, find communities, and grow businesses.

Facebook has a particular interest in ensuring that the Telephone Consumer Protection Act (TCPA) is applied in a manner consistent with the First Amendment.  In recent years, Facebook has been sued for allegedly violating the TCPA's prohibition on making calls to cellphones using an automatic telephone dialing system (ATDS), 47 U.S.C. § 227(b)(1)(A)(iii).  *See, e.g.*, *Duguid v. Facebook, Inc.*, 926 F.3d 1146 (9th Cir. 2019), *cert. granted on statutory question*, 141 S. Ct. 193 (2020) (Mem.).

In *Barr v. American Association of Political Consultants, Inc.* (*AAPC*), the Supreme Court held that a 2015 amendment to the ATDS restriction rendered that provision unconstitutional by creating a content-based distinction between ATDS

---

[1]    The parties consent to the filing of this amicus brief, and no one—except for Facebook and its counsel—authored this brief in whole or in part or contributed money for its preparation or submission.

calls made to collect government-backed debt (which were exempted from TCPA liability) and most other ATDS calls (which remained subject to liability). 140 S. Ct. 2335, 2356 (2020) (Kavanaugh, J., plurality opinion). To cure that unequal treatment, the Court severed the exemption from the statute.

Here, the District Court concluded that *AAPC*'s holding that the ATDS restriction violated the First Amendment means that liability cannot be imposed on any call made using an ATDS device between November 2, 2015 (when the exemption became law) and July 6, 2020 (when *AAPC* was decided). Facebook submits this amicus brief in support of the District Court's holding.

## INTRODUCTION

In *AAPC*, a splintered Supreme Court majority held that the TCPA's differential treatment of government-debt-collection speech and other categories of speech was unconstitutional. To fix that problem going forward, the Court invalidated and severed the debt-collection exception to the ATDS restriction, 47 U.S.C. § 227(b)(1)(A)(iii). *AAPC* made clear that the post-severance ATDS restriction would now apply equally to all callers, including those making ATDS calls to collect government-backed debt. Crucially, however, *AAPC* was a pre-enforcement facial challenge seeking only *prospective* relief. So the Court did not have to resolve—and did not resolve—the effect of its constitutional analysis on calls made when the content-based exception was in effect.

Here, the District Court correctly concluded that the ATDS restriction cannot impose liability on calls made during that period. *AAPC* held that the restriction violated the First Amendment during that time, and a party cannot be held liable for violating a statutory provision that was unconstitutional at the time of the alleged violation. *See Grayned v. City of Rockford*, 408 U.S. 104, 107 (1972).

*AAPC*'s prospective severability holding does not change that bedrock principle. Nor does it change the historical fact that calls made between 2015 and 2020 were subjected to unconstitutional unequal treatment under the then-operative statute. Moreover, even if it were permissible to apply a severability holding

3

retroactively in certain circumstances, that approach is inappropriate here. If *AAPC*'s severability holding were made retroactive—as if the government-debt exception had never been enacted—that would violate due process by imposing liability on government-debt collectors who made calls that (when made) were expressly authorized by the exception. Five Justices rejected that result in *AAPC*. And although Justice Kavanaugh's plurality opinion contains non-binding dicta suggesting that the ATDS restriction could be enforced *only* against post-2015 callers who were *not* collecting government debt, that dicta was joined only by two Justices and is inconsistent with the majority's holding that unequal treatment of calls based on content violates the First Amendment.

The only way to implement *AAPC*'s equal-treatment mandate is to hold that the ATDS provision cannot impose liability for *any* ATDS calls made while the government-debt exception was in effect. This Court should thus hold that callers cannot be subject to liability for ATDS calls made between November 2, 2015 and July 6, 2020.

## ARGUMENT

## THE ATDS PROVISION CANNOT BE ENFORCED AGAINST CALLS MADE WHEN THAT PROVISION WAS UNCONSTITUTIONAL

### A. *AAPC* Held That The ATDS Restriction Violated The First Amendment Between 2015 And 2020

*AAPC* was a First Amendment lawsuit brought by political groups that wanted to use ATDS calls to promote their views and those of their clients. The plaintiffs argued that the combination of the exemption for government-debt-collection calls with the broader ATDS restriction rendered the provision unconstitutional by favoring government-debt-collection speech over other speech. They filed a pre-enforcement challenge seeking declaratory and injunctive relief. *AAPC* was thus only about *prospective* relief. Unlike this case, it did not implicate liability for ATDS calls that had already been made.

In July 2020, a splintered Supreme Court agreed that the ATDS provision violated the First Amendment. Justice Kavanaugh wrote the lead opinion, which held that discriminating between calls made to collect government-backed debt and calls made for other purposes violated the "First Amendment['s] equal-treatment principle." 140 S. Ct. at 2354-55. His analysis was joined by the Chief Justice and Justices Thomas and Alito. Justices Sotomayor and Gorsuch separately concurred with the plurality's conclusion that the ATDS restriction was unconstitutional. *Id.* at 2356-57 (Sotomayor, J.); *id.* at 2363-67 (Gorsuch, J.).

Next, Justice Kavanaugh addressed the remedy for this unequal-treatment problem—and, in particular, whether the ATDS provision could remain operative going forward. According to his plurality opinion, the problem could be fixed either "by extending the benefits or burdens to the exempted class, or by nullifying the benefits or burdens for all." *Id.* at 2354. Applying severability principles, including the severability clause in the Communications Act of 1934, 47 U.S.C. § 608, his opinion concluded that the government-debt exception should be severed from the remainder of the statute. 140 S. Ct. at 2352-56. Although severance did not allow the plaintiffs to make ATDS calls going forward, it nonetheless "fully addresse[d]" the "unequal treatment" injury that was "at the heart of their suit." *Id.* at 2355.

Because *AAPC* involved only prospective relief, the Court had no need to resolve how its decision applied to calls made when the ATDS restriction was unconstitutional (between 2015 and 2020). Justice Kavanaugh nonetheless offered dicta on that issue in a two-sentence footnote. *Id.* at 2355 n.12. The footnote stated that although ATDS calls to collect government debt would be subject to liability going forward, "no one should be penalized or held liable" for making ATDS calls to collect government debt while the exception was in effect. *Id.* At the same time, however, the footnote seemed to assert that all other ATDS calls made during that same period *should* be subject to liability. *Id.* (stating that the decision "does not negate the liability of parties who made robocalls covered by the robocall

6

restriction"). Only two Justices—the Chief Justice and Justice Alito—joined Justice Kavanaugh's severability analysis. Justices Ginsburg, Breyer, Sotomayor, and Kagan agreed with Justice Kavanaugh that the government-debt exception should be severed from the rest of the statute, but did not adopt his opinion's analysis. *Id.* at 2357 (Sotomayor, J.); *id.* at 2363 (Breyer, J.).

Justice Gorsuch's opinion (joined in part by Justice Thomas) focused almost entirely on the severability issue. *Id.* at 2363, 2365-68. He noted that Justice Kavanaugh's "suggest[ion]" that "the ban on government-debt collection calls announced today might be applied only prospectively" was difficult "to square with the judicial power." *Id.* at 2366. And he further explained that "a holding that shields *only* government-debt collection callers from past liability under an admittedly unconstitutional law would wind up endorsing the very same kind of content discrimination we say we are seeking to eliminate." *Id.*

## B. Callers Cannot Be Held Liable For Violating The Unconstitutional ATDS Provision

According to Appellant Roberta Lindenbaum, the ATDS restriction is enforceable against calls made between 2015 and 2020 because *AAPC* addressed only the debt-collection exception, "not the speech restriction itself." Lindenbaum Br. 20. That stunted reading of *AAPC* misses the point. The unequal treatment that *AAPC* held unconstitutional was caused by the *combination* of the ATDS restriction and the debt-collection exception.

*AAPC* made clear that the ATDS restriction was unconstitutional because it subjected callers to *unequal treatment* based on the content of their calls.  *See, e.g.*, 140 S. Ct. at 2343 (Kavanaugh, J., plurality opinion); *id.* at 2356-57 (Sotomayor, J.) *id.* at 2364 (Gorsuch, J.).  *AAPC* was "an *equal-treatment* case," and "Congress violated th[e] First Amendment['s] *equal-treatment* principle in [*AAPC*] by favoring debt-collection robocalls and discriminating against political and other robocalls." *Id.* at 2354 (Kavanaugh, J.) (emphases added).

That unconstitutional unequal treatment was produced by the convergence of the generally applicable ATDS restriction (enacted in 1991) and the content-based exception for calls collecting government-backed debt (enacted in 2015).  In other words, neither the ATDS restriction nor the government-debt exception, on their own, violated the First Amendment.  Rather, the violation arose from the unequal treatment that resulted when they were combined.  *See, e.g.*, *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.* (*PCAOB*), 561 U.S. 477, 509 (2010) (recognizing the convergence of "a number of statutory provisions that, working together, produce a constitutional violation"); *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 2222 (2020) (Thomas, J., concurring in part and dissenting in part) ("In some instances, a constitutional injury arises as a result of two or more statutory provisions operating together.").

8

Courts cannot now enforce that same unequal-treatment regime against calls made between 2015 and 2020. As the Supreme Court has explained, "the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994); *see also Grayned*, 408 U.S. at 107 n.2 (assessing validity of a conviction by "consider[ing] the facial constitutionality of the ordinance *in effect when [the defendant] was arrested and convicted*" (emphasis added)).

Here, the ATDS restriction in effect between 2015 and 2020 violated the First Amendment. And courts cannot hold defendants liable for violating unconstitutional laws. *See, e.g.*, *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995); *Bates v. State Bar of Ariz.*, 433 U.S. 350, 384 (1977). Because the ATDS restriction was unconstitutional between 2015 and 2020, calls made during that period cannot trigger liability.

**C.**      ***AAPC*'s Severability Holding Cannot Retroactively Cure The First Amendment Violation**

1. Although *AAPC* avoided wholesale invalidation of the ATDS restriction by severing the government-debt exception, that statutory "fix" does not change the historical fact that the provision *was* unconstitutional between 2015 and 2020. During that time, the ATDS provision distinguished between nominally "legal" and "illegal" calls based on the content of the caller's speech. That speech discrimination was unconstitutional. Severing the exception eliminates the constitutional problem

going forward, but does not change the fact that the law in effect at the time the calls were made was unconstitutional and unenforceable.

In arguing that *AAPC*'s severability holding applies retroactively, Lindenbaum and the Government fail to recognize the distinctive nature of a severability holding. To be sure, judicial decisions that declare the *meaning* of a statute—exercises in statutory interpretation—are typically retroactive and govern conduct predating the decision. *Harper v. Va. Dep't of Tax'n*, 509 U.S. 86, 97 (1993). But that is because "[a] judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction." *Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 312-13 (1994).

A severability holding is fundamentally different. It does not purport to state what the provision always meant. Instead, the severance inquiry arises only *after* a court has interpreted the statute and concluded that it is unconstitutional. At that point, severance principles reflect the court's view of how Congress would have wanted to modify the statute to eliminate the constitutional defect going forward. *PCAOB*, 561 U.S. at 508-10. In that sense, severance is unlike statutory interpretation and more akin to legislation, because it *changes* the statutory law in force. *See* David H. Gans, *Severability As Judicial Lawmaking*, 76 Geo. Wash. L. Rev. 639, 643 (2008) (noting that severance "asks a remedial question about the

10

scope of the relief a court should order, not an interpretative question about the statute's meaning").  And as the Supreme Court has made clear, this type of legislative *change* operates only *prospectively*.  *Rivers*, 511 U.S. at 311-12 ("[S]tatutes operate only prospectively, while judicial decisions operate retrospectively.").

2.  Settled precedent confirms that using severance to restore a statute to constitutional health does not somehow erase what already occurred under the unconstitutional regime.  Prospectively curing a constitutional problem cannot create liability for conduct that was made unlawful by a statute that was invalid at the time the conduct took place.  After all, "until such separation [of the constitutional flaw] has been accomplished by judicial decision, the statute remains with its inclusive purport, and those concerned in its application have no means of knowing definitely what eventually will be eliminated and what will be left." *Smith v. Cahoon*, 283 U.S. 553, 563-64 (1931).

Consider *Grayned*, which involved a municipal ordinance that banned picketing near schools but exempted picketing related to labor disputes.  408 U.S. at 107.  A criminal defendant convicted for non-labor picketing challenged the speech restriction as a defense to retrospective liability. *Id.* at 105.  The Supreme Court agreed with the defendant, holding that the ordinance violated equal protection by

11

impermissibly distinguishing between labor picketing and other picketing. *Id.* at 107.

Notably, the municipality in *Grayned* had *already* amended the ordinance to remove the labor-picketing exception before the case reached the Supreme Court but after the conduct at issue. *Id.* at 107 n.2. The municipality had thus enacted the functional equivalent of judicial severance—it had *changed* the ordinance by eliminating the content-based exception for certain speech and thus restored equal treatment going forward. The posture of the case before the Supreme Court would have been the same if, for example, a state court had already invalidated and severed the exception on state-law grounds. But even though the equal-treatment problem in the unconstitutional ordinance had already been cured by legislative amendment, the Supreme Court could not apply that prospective fix (or any hypothetical severability analysis) to Grayned's case. "Necessarily," the Court explained, "we must consider the facial constitutionality of the ordinance *in effect when [Grayned] was arrested and convicted*." *Id.* (emphasis added). The municipality's "amendment and deletion ha[d], of course, *no effect* on [Grayned's] personal situation." *Id.* (emphasis added).

*Grayned* shows that prospectively eliminating the equal-treatment problem in an unconstitutional statute does not change the historical fact that certain parties were treated unequally under the unconstitutional regime. It also confirms the

bedrock rule that liability cannot be imposed for conduct that was made unlawful by an unconstitutional statute. *See supra* at 7-11; *Smith*, 283 U.S. at 584 (recognizing that applying severability to retroactively impose liability under an unconstitutional statute "would be to make the statute, until such severance was determined by competent authority, void for uncertainty").

Those principles squarely apply here. Even though *AAPC* implemented its equal-treatment holding prospectively by severing the government-debt exception, that "deletion has, of course, no effect on [the] personal situation" of anyone who made an ATDS call when the statute still unlawfully discriminated based on content. *Grayned*, 408 U.S. at 107 n.2. As in *Grayned*, this Court must still "consider the facial constitutionality of the [ATDS restriction] in effect when" a TCPA defendant made calls between 2015 and 2020. *Id.* And for that period, *AAPC* has already answered the constitutional question: The restriction was unconstitutional during that time because it subjected callers to unequal treatment based on the content of their speech. Thus, here, as in *Grayned*, the Court should enforce the equal-treatment requirement retrospectively by exempting the defendant from liability for violating an "invalid" statute. *Id.* at 107; *see also Creasy v. Charter Commc'ns, Inc.*, 2020 WL 5761117, at *3-6 (E.D. La. Sept. 28, 2020).

The Supreme Court recently reaffirmed *Grayned*'s holding on these points. In *Sessions v. Morales-Santana*, the Court explained that "a defendant convicted

13

under a law classifying on an impermissible basis may assail his conviction without regard to the manner in which the legislature might subsequently cure the infirmity." 137 S. Ct. 1678, 1699 n.24 (2017). It emphasized that liability for past conduct must be assessed based on the constitutionality of the law on the books *at the time of the violation*, not on how a legislature might respond to a subsequent finding of unconstitutionality. As the Court explained, it is "irrelevant . . . whether the legislature likely would . . . cure[] the constitutional infirmity by excising" the exemption or invalidating the prohibition. *Id.* Either way, the Court "must consider the facial constitutionality of the [law] in effect when [the defendant] was arrested and convicted." *Id.* (quoting *Grayned*, 408 U.S. at 107 n.2).

In other contexts, the Supreme Court has repeatedly confirmed that severing an unconstitutional statutory provision does not retroactively cure a constitutional violation that occurred in the past. Rather, the Court has recognized the need to craft a retrospective remedy for that violation. In *United States v. Booker*, for example, the Court held that a statute making the Sentencing Guidelines mandatory for sentencing judges violated the Sixth Amendment's requirement that juries find certain sentencing facts. 543 U.S. 220, 243-44 (2005) (Stevens, J., delivering opinion of the Court in part). After severing the provision that made the Sentencing Guidelines mandatory, the Court rejected the notion that its prospective severance "fix" somehow cured the sentences that had been handed down under the

14

unconstitutional regime. Instead, it held that defendants who were sentenced under the pre-severance regime, and whose cases were not yet final, were entitled to be resentenced. *Id.* at 268 (Breyer, J., delivering opinion of the Court in part).

The Supreme Court took a similar approach last Term in *Seila Law*. There, a law firm challenged a subpoena issued by the CFPB, arguing that the subpoena was unlawful because the CFPB statute insulated the agency's Director from removal without cause. 140 S. Ct. at 2194. The Court agreed and held that the CFPB's leadership structure violated the separation of powers. *Id.* at 2197. The Court then addressed whether the CFPB could continue to operate in light of that constitutional flaw, ultimately concluding that the Director's for-cause removal protections could be severed without striking down the rest of the statute. *Id.* at 2211.

Crucially, however, neither the Court nor the parties believed that the severance would somehow retroactively cure the unconstitutional subpoena, which the CFPB had issued *before* the Court's decision. Recognizing that a severability decision would not be retroactive, the CFPB itself accepted that the subpoena would be valid only if it were ratified by a Director properly "accountable to the President." *Id.* at 2208; *see* CFPB Reply Br. 22-23, *Seila Law*, 140 S. Ct. 2183 (No. 19-7), 2020 WL 774433. And the Court agreed, remanding the case for consideration of whether such ratification had already occurred. *Seila Law*, 140 S. Ct. at 2208. That remand

decision would make no sense if the Court's severability ruling—remedying the unconstitutionality of the CFPB's leadership structure—had retroactive effect.

The Federal Circuit recently took the same course in *Arthrex, Inc. v. Smith & Nephew, Inc.*, 941 F.3d 1320 (Fed. Cir. 2019), *cert. granted*, 141 S. Ct. 551 (2020) (Mem.). There, the court held that the statute addressing the appointment of administrative patent judges violated the Appointments Clause. *Id.* at 1335. As a remedy, it severed the removal protections for those judges, thereby rendering the statute constitutional going forward. *Id*. at 1338. But like in *Seila Law*, the court did *not* presume that severance provided retrospective relief for litigants who had been subject to the unconstitutional regime. Instead, the court vacated and remanded "[b]ecause the Board's decision in this case was made by a panel of [administrative judges] that were not constitutionally appointed at the time the decision was rendered." *Id.* at 1338-39.

Three judges later addressed whether severability can be retroactive when concurring in the denial of rehearing en banc. They noted that the "curative severance of the statute, does not 'remedy' the harm to Arthrex, whose patent rights were adjudicated under an unconstitutional scheme." *Arthrex, Inc. v. Smith & Nephew, Inc.*, 953 F.3d 760, 767 (Fed. Cir. 2020) (O'Malley, J., concurring in the denial of rehearing en banc). Rather, the court's "decision that the statute can be *rendered* constitutional by severance does not remedy any past harm—it only avoids

continuing harm in the future. It is only meaningful prospectively, once severance has occurred." *Id.* Notably, the Government *agreed* with that position and "expressly rejected" the argument that the "severance order applies retroactively." *Id.* at 767-68; *see also* Gov't Br. 39, *United States v. Arthrex, Inc.*, Nos. 19-1434 et al. (U.S. Nov. 25, 2020), 2020 WL 7024946 (explaining that the Federal Circuit "remedied the perceived constitutional flaw on a *prospective basis*" by severance (emphasis added)); *Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*, 684 F.3d 1332 (D.C. Cir. 2012) (similarly refusing to give retroactive effect to severance of unconstitutional removal restrictions governing Copyright Royalty Judges).

3. Established principles of constitutional law and severability doctrine thus confirm that severance cannot retroactively erase a constitutional violation that occurred in the past or trigger liability for violating unconstitutional laws. But even if retroactive severability were theoretically an option in some circumstances, it would be inappropriate here because of the nature of the equal-treatment violation at issue. *See Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 758-59 (1995) (recognizing the "unsurprising fact" that an independent "principle of law" may "limit[] the principle of retroactivity").

When, as here, "the 'right invoked is that of equal treatment,' the appropriate remedy is a mandate of *equal* treatment." *Heckler v. Mathews*, 465 U.S. 728, 740 (1984). *AAPC* implemented the equal-treatment remedy prospectively by severing

the government-debt exception and imposing liability on all future ATDS calls equally. But that same equal-treatment remedy cannot be applied retroactively—by imposing liability on all calls made during the period that the government-debt exception was in effect—because it would violate core principles of due process and fair notice. Most problematically, it would penalize government-debt collectors who reasonably relied on the exception while it was in effect. Such callers would rightly protest if threatened with penalties based on a later judicial decision that invalidated the exception. After all, "individuals should have an opportunity to know what the law is and to conform their conduct accordingly." *PHH Corp. v. Consumer Fin. Prot. Bureau*, 839 F.3d 1, 46 (D.C. Cir. 2016) (Kavanaugh, J.) (quoting *Landgraf*, 511 U.S. at 265), *reinstating panel decision on due process point en banc*, 881 F.3d 75, 83 (D.C. Cir. 2018).[2]

Notably, both the *AAPC* plaintiffs *and* the Government expressly recognized that retroactively imposing liability on collectors of government-backed debt would

---

[2] *See also Smith*, 283 U.S. at 564 (recognizing that applying severability to retroactively impose liability under an unconstitutional statute "would be to make the statute, until such severance was determined by competent authority, void for uncertainty"); *Rogers v. Tennessee*, 532 U.S. 451, 457 (2001) (noting that "[d]eprivation of the right to fair warning" can result from "an unforeseeable and retroactive judicial expansion of statutory language"); Ruth Bader Ginsburg, *Some Thoughts on Judicial Authority to Repair Unconstitutional Legislation*, 28 Clev. St. L. Rev. 301, 307-08 (1979) (discussing "due process related concepts of reliance and fair notice" that limit the retroactive effect of invalidating a statutory benefit).

be untenable. *See* AAPC Br. 39, *AAPC*, 140 S. Ct. 2335 (No. 19-631), 2020 WL 1478621 (stating that this approach would "create[] significant due process problems" and "violate principles of fair notice"); Gov't Reply Br. 24, *AAPC*, 140 S. Ct. 2335 (No. 19-631), 2020 WL 2041669 ("It is doubtful that a person who made automated calls to collect government-backed debts before the exception was held invalid could be said to have violated the TCPA."). And the five Justices who addressed the issue all agreed that severance of the government-debt exception should not be retroactive as to all callers. *See AAPC*, 140 S. Ct. at 2355 & n.12 (Kavanaugh, J., joined by Roberts, C.J., and Alito, J.); *id.* at 2366 (Gorsuch, J., joined by Thomas, J.). No one endorsed retroactive application of *AAPC*'s severability holding—and rightly so.

## D. Justice Kavanaugh's Non-Binding Footnote 12 Is Irreconcilable With *AAPC*'s Equal-Treatment Holding

Footnote 12 of Justice Kavanaugh's opinion suggests that the ATDS restriction should *not* impose liability on ATDS calls collecting government debt during the period the restriction was unconstitutional, but *should* impose liability on ATDS calls made to convey other messages. *Id.* at 2355 n.12. Under that approach, courts would continue enforcing the unconstitutional version of the ATDS restriction for calls made between 2015 and 2020. Justice Kavanaugh offered no reasoning for this conclusion, which—as the District Court in this case recognized—is dicta

endorsed by only three Justices. *Supra* at 6-7.[3] Whatever the rationale, that approach is foreclosed by the *majority* holding in *AAPC*.

Justice Kavanaugh's footnote directly contradicts *AAPC*'s core First Amendment holding. Under the footnote's approach, the dividing line for liability remains the *content* of the call. A 2017 ATDS call that said "Please pay your government debt" would be exempt from liability, but a 2017 ATDS call that said "Please donate to our political campaign" would be punishable by up to $1,500 per call. *AAPC*, 140 S. Ct. at 2345-46 (Kavanaugh, J., plurality opinion); *see* 47 U.S.C. § 227(b)(3). "That is about as content-based as it gets." 140 S. Ct. at 2346. As Justice Gorsuch explained, "a holding that shields *only* government-debt collection callers from past liability under an admittedly unconstitutional law would wind up endorsing the very same kind of content discrimination we say we are seeking to eliminate." *Id.* at 2366.

Two hypotheticals help illustrate the problem with the approach suggested in Justice Kavanaugh's footnote. First, imagine that when Congress added the government-debt exception in 2015, it also added this severability clause:

---

[3] Other courts have likewise concluded that the footnote is dicta. *See, e.g.*, *Shen v. Tricolor Cal. Auto Grp., LLC*, 2020 WL 7705888, at *4 (C.D. Cal. Dec. 17, 2020); *Hussain v. Sullivan Buick-Cadillac-GMC Truck, Inc.*, 2020 WL 7346536, at *3 (M.D. Fla. Dec. 11, 2020); *Creasy*, 2020 WL 5761117, at *2, 4 n.4.

> If this government-debt exception is held unconstitutional, it shall be severed from the remainder of the statute, and ATDS calls shall be subject to liability for the entire period during which the unconstitutional version of the statute was in effect, except for calls *made solely to collect a debt owed to or guaranteed by the United States*.

The italicized portion of that clause replicates—word for word—the exact equal-treatment violation that *AAPC* rejected. *See id.* at 2346-47; 47 U.S.C. § 227(b)(1)(A)(iii). It would undoubtedly be unconstitutional. But if the First Amendment bars Congress from including such an amendment, surely a court cannot do the same through severance.[4] The whole purpose of severance is to *fix* constitutional violations—not to generate a basis for perpetuating those same violations.

Second, imagine that in 2015 Congress instead created a content-based exception for ATDS calls soliciting campaign donations for, say, Republicans, while leaving the ATDS restriction for calls soliciting donations for Democrats. If both Republican and Democratic campaigns made ATDS calls under that regime—before the exception was challenged—surely no court would (1) invalidate the exception for Republican calls going forward, yet nonetheless (2) impose liability *only* for

---

[4] *Cf. Bouie v. City of Columbia*, 378 U.S. 347, 353-54 (1964) ("If a state legislature is barred by the Ex Post Facto Clause from passing a [retroactive criminal] law, it must follow that a State Supreme Court is barred by the Due Process Clause from achieving precisely the same result by judicial construction.").

Democratic calls that had already been made. Yet footnote 12 would require blatantly discriminatory remedy.

For all these reasons, Lindenbaum's assertion (at 38) that the footnote is "persuasive authority" is mistaken. Justice Kavanaugh offered no explanation for footnote 12, and—under the constitutional holding endorsed by six Justices—the content-based discrimination he proposes violates the First Amendment. *See AAPC*, 140 S. Ct. at 2347 (Kavanaugh, J.); *id.* at 2356-57 (Sotomayor, J.); *id.* at 2363-67 (Gorsuch, J.). The footnote is neither binding nor persuasive.

### E. None Of The Rationales Lindenbaum And The Government Offer For Applying The Severability Holding Retroactively Withstands Scrutiny

1. According to Lindenbaum (at 21), *AAPC* determined that the restriction on ATDS calls "was *not* unconstitutional" and is thus enforceable for calls made between 2015 and 2020. Lindenbaum's premise is mistaken: During that period, the restriction was subject to a content-discriminatory exception for calls collecting government debt. Examined together in combination, the restriction/exception *was* unconstitutional. As the *AAPC* Court explained, the law on the books discriminated against different speakers based on their message. 140 S. Ct. at 2346-47 (Kavanaugh, J., plurality opinion). And *AAPC* addressed only prospective relief, so it could not have decided that retroactively severing the exception would be constitutional. Moreover, the nature of the First Amendment violation means

retroactively severing the exception to impose liability is not an option here. *See, e.g.*, Brian Charles Lea, *Situational Severability*, 103 Va. L. Rev. 735, 784 n.240 (2017) ("To effectuate the offended antidiscrimination norm in that scenario, a court has no choice but to extend to the litigant the favorable treatment previously accorded to others during the relevant time period.").

None of the severability cases Lindenbaum cites (at 21) supports a different conclusion. In *Robinson v. United States*, upholding the defendant's conviction under the as-severed version of the Federal Kidnapping Act was unproblematic because the unconstitutional portion of the Act—the death-penalty clause—had not actually harmed the defendant. 394 F.2d 823, 824 (6th Cir. 1968) (per curiam). Nor did applying the as-severed statute perpetuate or revive any unconstitutional unequal treatment. Here, by contrast, the unconstitutional restriction/exception in effect between 2015 and 2020 harmed ATDS callers by subjecting them to unequal treatment based on the content of their calls. And applying the as-severed ATDS restriction to permit liability would perpetuate "the very same kind" of constitutional harm. *AAPC*, 140 S. Ct. at 2366 (Gorsuch, J.).

*United States v. Miselis* is inapposite for the same reasons. 972 F.3d 518 (4th Cir. 2020). There, two defendants leveled a First Amendment overbreadth challenge to their convictions under the Anti-Riot Act. The court agreed that certain provisions of the Act were "substantially overbroad" and thus invalid, but it upheld the

convictions under the now-severed statute. *Id.* at 546-48. Like *Robinson*, that result was unproblematic because the unconstitutional provisions had not harmed the defendants. Indeed, the defendants' conduct "involve[d] *no* First Amendment activity," *id.* at 526, and they "conceded . . . that the Anti-Riot Act poses no constitutional concern as applied to their own conduct," *id.* at 548.

*United States v. Ford* likewise has no bearing here. 184 F.3d 566 (6th Cir. 1999). In *Ford*, two defendants challenged their convictions for operating an illegal gambling business. They argued that their convictions were invalid because Kentucky law contained a "charitable gaming defense" that was not allowed by Kentucky's Constitution. "Despite receiving the benefit of the charitable gaming defense, [they] argued that the defense . . . rendered the entire Kentucky gambling statute invalid." *Id.* at 582. The court disagreed and upheld their convictions. Like *Robinson* and *Miselis*, *Ford* did not involve any actual constitutional injury, nor did severance trigger any constitutional problem.

The TCPA cases Lindenbaum cites (at 22-23) are equally unpersuasive. None of them squarely addresses the arguments detailed above or explains how applying *AAPC*'s severability holding retroactively avoids due process and equal-treatment problems. In *Trujillo v. Free Energy Savings Co.*, for example, the court all but conceded the due process problem that would arise from imposing liability on government-debt collectors, but declined to address it because the defendant there

was "not a government-debt collector." 2020 WL 8184336, at *4 (C.D. Cal. Dec. 21, 2020); *see also Stoutt v. Travis Credit Union*, 2021 WL 99636, at *4 n.2 (E.D. Cal. Jan. 12, 2021) ("acknowledg[ing] the potential due process implications" but declining to address them). That sort of punt is inadequate. It is impossible to know whether a retroactive severability holding solves the equal-treatment problem identified in *AAPC* without considering whether that holding validly treats all calls the same way.

Nor do these cases explain how imposing liability under an unconstitutional statutory provision squares with Supreme Court precedent. *Supra* at 11-16. In *Trujillo*, for example, the court dismissed *Grayned* and *Seila Law* as "unpersuasive" because they did not involve statutes with "a finite period of constitutional infirmity bookended by periods of validity." 2020 WL 8184336, at *4 & n.3. But *Trujillo* never explained why that distinction should matter, and there is no reason it should. In *Grayned*, it had "no effect" on the Court's analysis that the ordinance's unconstitutionality had since been cured by an amendment, 408 U.S. at 107 n.2, nor would it have made any difference if the ordinance had been constitutional at some earlier time. The Court granted retrospective relief in *Grayned* because "the

ordinance in effect *when* [the defendant] was arrested and convicted" was unconstitutional *at that time*. *Id.* (emphasis added).[5]

The Ninth Circuit's decision in *Duguid v. Facebook, Inc.* says nothing about retroactive severability either. 926 F.3d 1146 (9th Cir. 2019), *cert. granted on statutory question*, 141 S. Ct. 193 (2020) (Mem.). That case involves text messages that "predate the debt-collection exception"—though the plaintiff also seeks to represent a class for alleged violations that occurred after the 2015 TCPA amendment. *Id.* at 1153. Like the Supreme Court in *AAPC*, the *Duguid* court concluded that the ATDS provision violated the First Amendment, severed the debt-collection exception, and remanded for further proceedings. *Id.* at 1153-57. But *Duguid* does not mention the retroactivity issue, which it had no need to decide because no class had yet been certified. The court thus likely wanted the district

---

[5]   The Government asserts (at 18-19) that *Grayned* is distinguishable because the "provision [at issue there] contained no severability clause" like in *AAPC* "and nothing in the provision's history indicated that the legislature would have enacted the general prohibition on picketing without the offending exception." That is mistaken. There *was* a severability clause in *Grayned* (which the respondent affirmatively relied on, Appellee Br. 21, *Police Dep't of Chi. v. Mosley*, 408 U.S. 92 (1972), 1972 WL 135518), and it was even more comprehensive than the one in *AAPC*. *Compare* 47 U.S.C. § 608, *with Mosley* Appellee Br. 21, 1972 WL 135518 (quoting Section 1.5 of Rockford Code of Ordinances). Moreover, the Supreme Court *absolutely knew* that the legislature in *Grayned* would have enacted the general picketing prohibition without the exception—because *it did so* by repealing the exception.

court to address, in the first instance, the retroactive effect of its constitutional and severability holdings on the alleged post-2015 ATDS calls.

That conclusion squares with the exact same panel's treatment of the retroactive severability issue in *Gallion v. Charter Communications, Inc.*, 772 F. App'x 604 (9th Cir. 2019), *cert. denied*, 141 S. Ct. 194 (2020), a companion TCPA case argued the same day as *Duguid*. While the panel resolved Charter's First Amendment claim in *Gallion* based on its *Duguid* opinion, it refused to address Charter's retroactivity argument, asserting that it had been waived. *See id.* at 606. The panel plainly did not believe it had already resolved the retroactivity issue in *Duguid*.

2.  Lindenbaum and the Government also argue that, because the debt-collection exception was unconstitutional, that exception was "*void ab initio*," such that the pre-amendment TCPA remained operative and permits liability here. Lindenbaum Br. 25-28; Gov't Br. 10-12. As discussed above, that approach runs headlong into a due process violation because it would hold government-debt collectors liable for calls they made while expressly exempt from liability. Five Justices rejected that outcome. *See supra* at 19.

The cases Lindenbaum and the Government cite do not support a different conclusion. In *Frost v. Corp. Commission of Oklahoma*, the Court invalidated a provision exempting certain corporations from a general "public necessity" licensing

requirement for operating a cotton gin, and canceled a license issued pursuant to the exemption. 278 U.S. 515, 517, 528 (1929). In *Eberle v. Michigan*, a state court had held that certain amendments introducing exemptions to a statute prohibiting the manufacturing of liquor were unconstitutional and affirmed the defendants' conviction. 232 U.S. 700, 707 (1914). The Supreme Court affirmed, but said nothing about permitting liability on the exempted manufacturers. *See id.* at 704-07. Neither case imposed retroactive liability for conduct expressly authorized by a statute that was later invalidated and severed. Indeed, although Justice Kavanaugh's *AAPC* opinion relied on *Frost* and *Eberle* in other respects, it made clear that the government-debt exception would still protect government-debt collectors from liability for calls made between 2015 and 2020. *See* 140 S. Ct. at 2355 n.12. The opinion concluded that *Frost* and *Eberle* "*support* severing" the 2015 amendment, not that the amendment was inoperative from the get-go. *Id.* at 2353 & 2355 n.12 (emphasis added); *see also Chicot Cnty. Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 374 (1940) ("The actual existence of a statute, prior to . . . a determination [of unconstitutionality], is an operative fact [that] may have consequences which cannot justly be ignored.").

3. Lindenbaum and the Government also argue that a severability holding is an interpretation of federal law that—by its very nature—applies retroactively. Lindenbaum Br. 24-35; Gov't Br. 13-15. But as explained above, that elides the

distinction between statutory interpretation and severance. *Supra* at 10-11. Indeed, the Supreme Court has recognized that a severability holding does *not* say what the law always meant. "[U]ntil such separation [of a constitutional flaw] has been accomplished by judicial decision, the statute remains with its inclusive purport, and those concerned in its application have no means of knowing definitely what *eventually will be eliminated* and what will be left." *Smith*, 283 U.S. at 563-64 (emphasis added).

Lindenbaum further argues that remedial principles supporting imposing retroactive liability here because "Congress would have preferred to extend the longstanding robocall ban retroactively, rather than to eliminate it for five years." Lindenbaum Br. 40. But legislative intent is no license for imposing an unconstitutional remedy. Indeed, it is unsound to presume that Congress would have wanted courts to fix the 2015 statute's constitutional flaw through a retroactive severability holding that creates a due process problem. After all, the usual presumption is that Congress intends to *avoid* results that "raise[] serious constitutional doubts." *Clark v. Martinez*, 543 U.S. 371, 381 (2005).

## CONCLUSION

Implementing *AAPC*'s equal-treatment mandate requires treating all calls the same.  That means exempting all ATDS calls made between November 2, 2015 and July 6, 2020 from TCPA liability.

Dated:  March 24, 2021                        Respectfully submitted,

                                              */s/ Roman Martinez*_____
                                              Roman Martinez
                                                  *Counsel of Record*
                                              Andrew B. Clubok
                                              Susan E. Engel
                                              Michael Clemente
                                              Gregory B. in den Berken
                                              LATHAM & WATKINS LLP
                                              555 Eleventh Street, NW
                                              Suite 1000
                                              Washington, DC 20004
                                              Telephone:  (202) 637-2200
                                              roman.martinez@lw.com

        *Counsel for Amicus Curiae Facebook, Inc.*

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

This brief complies with the type-volume limitation of Federal Rules of Appellate Procedure 29(a)(5) and 32(a)(7)(B) because this brief contains 6,500 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Sixth Circuit Rule 32(b)(1).

This brief complies with the typeface requirements of Federal Rule Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 with 14-point Times New Roman font.

Dated:  March 24, 2021                                        */s/ Roman Martinez*
                                                                              Roman Martinez