IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARY BILEK, individually and on behalf of others similarly situated,<br>    Plaintiff,<br><br>  v.<br><br>NATIONAL CONGRESS OF EMPLOYERS, INC. et al.,<br>    Defendants. | Case No. 1:18-cv-03083<br><br><br><br>Hon. Judge Charles R. Norgle, Sr.<br>Hon. Mag. Judge Jeffrey T. Gilbert |

**PLAINTIFF'S THIRD MOTION TO COMPEL HII**

This motion concerns HII's failure to comply with the Court's discovery orders as to two categories of materials: (1) consumer complaints, which the Court compelled on January 4, 2021 [Dkt. 307 at 14-15, RFP Nos. 18 and 26 (1st Set)], and (2) customer information for customers tied to phone numbers called by Rising Eagle and "warm transferred" to HII telemarketer HAA, which the Court compelled on February 8, 2021 [Dkt. 324 at 1-3, RFP 17 (1st Set)].

Plaintiff also seeks to compel documents concerning the type of telemarketing at issue in this case – in connection with HII's purchaser Madison Dearborn Partner's ("MDP") diligence or otherwise – that were shared with MDP or its affiliates or agents. These documents are relevant to Plaintiff's claims for injunctive relief for ongoing violations, and to ensuring that HII has not altered its business model so as to intentionally bleed the company dry and, thus, irrevocably prevent payment of any judgment in this case.

**I.  Meet-and-Confer**

The first and second portion of this motion concern materials the Court has already compelled HII to produce with respect to Plaintiff's first set of discovery requests her counsel propounded on September 24, 2019. Even though there are Court orders directing those

materials' production, Dkt. 307, 324, Plaintiff has worked in good faith to secure complete production of those materials without a motion – both by phone and in writing – to no avail. Most recently, Plaintiff's counsel held a telephone conferral with defense counsel on January 13, 2022, concerning consumer complaint-related materials, but was unable to secure agreement.

Plaintiff issued her third set of discovery requests to HII on October 15, 2020, to which HII provided a written response and objections on December 23, 2020. <u>Exhibit A</u>. Since then, HII has produced some documents responsive to other requests, and the case has most recently been stayed pending a mediation that was subsequently cancelled, *see* Dkt. 372. The parties held formal meet-and-confers concerning outstanding discovery on November 18, 2021, and November 22, 2021. However, while HII did make a large supplemental production on December 14, 2021, followed by smaller productions at the end of the month, it omitted the materials at issue here. Despite multiple subsequent emails and another telephonic conferral on January 13, 2022, Plaintiff still does not have this discovery—defense counsel even rejected major concessions Plaintiff offered in order to get the discovery on a faster timeline.

Fact discovery ends on January 30, 2022 [Dkt. 375], and Plaintiff thus cannot wait any longer for HII to produce these relevant materials. As set forth herein, the Court should grant this motion and order HII to produce this discovery, most of which it already compelled.

    **II.**    **HII should produce the consumer complaint-related discovery this Court previously compelled it to produce.**

Consumer complaints are the documentary cornerstone for demonstrating that a defendant knew about misconduct. The Court recognized this in ordering HII to produce responses to RFPs 18 and 26 (1st Set), at Dkt. 307 pp. 14-15.[1] Those requests ask for:

---

[1] *Bilek v. Nat'l Cong. of Emps., Inc.*, 2021 WL 25543, at *7 (N.D. Ill. Jan. 4, 2021) ("[T]he information Plaintiff is requesting is relevant for the reasons Plaintiff says it is, including with respect to Plaintiff's allegations that HII has or had a relationship with HAA, her allegations of willfulness, and her

**Request for Production No. 18.** Produce all documents concerning or relating to investigations, audits or testing that relate to telephone-based lead generation or telemarketing.

**Request for Production No. 26.** Produce all complaints and related documents that concern telemarketing or unwanted calling, received from any source (including internally), including but not limited to:
   a. Lawsuits, counterclaims and arbitrations;
   b. The FCC, FTC, CFPB, Department of Justice, FBI, Postmaster General or any other federal authority;
   c. Any state's attorney general, Department of Insurance or other state-level authority;
   d. The Better Business Bureau or similar consumer-oriented entity;
   e. Consumers or their representatives or attorneys.

As of its most recent production at the end of December 2021, HII has produced documents showing approximately twenty-one consumer complaints it received concerning Rising Eagle robocalls that were transferred to HAA like Plaintiff received, between May 2018 and December 2018. Exhibit B is an excerpt of such complaints.

However, Plaintiff's requests for production also ask for *investigatory* materials concerning those complaints. Such materials are important to show that the top-brass at HII knew all about the illegal telemarketing at issue, to learn what they thought about such a large number of credible complaints in such a short period, and what they did – if anything – about the complaints. Indeed, another document produced by HII says ███████████████████████████████████████████████████████████████████████████████████████████████████████████████. Exhibit C. ██████████████████████████████████████, it would be natural for them to have received them by email … particularly given HII's TCPA complaint investigation policy.

HII's formal policy for handling and investigating TCPA complaints, Exhibit D,

---

class action allegations, and other courts have ordered such documents produced in similar cases both before and after the 2015 amendments to the Federal Rules of Civil Procedure.") (citing cases).

3

demonstrates that HII has not produced all responsive documents. <u>Exhibit D</u> specifies that ▋



. Plaintiff does not believe any such materials have been produced.

. No such documents have been produced.²

▋ HII produced emails that show Amy Brady reaching out to Marsha Griffin (an employee at telemarketer HAA) and its affiliated Sean Duffie insurance agency to investigate some complaints, but did not produce a single document showing any substantive response back.

For its part, HII's counsel says they have produced everything they have found. However, the lack of documents that were required to be generated by HII's policy, and that must have existed given <u>Exhibits B-D</u> does not make sense. Even if Amy Brady never received any documentation back from her inquiries to agents and HAA (she testified that she did not remember whether she did or not from HAA, but claimed that she usually did receive responses), where is the rest of the paper trail this policy must have created?  When Plaintiff asked during meet-and-confer discussions for an explanation, defense counsel would not provide any explanation at all. And when Plaintiff's counsel tried to explain why there *must be* documents missing from the production given the paper trail that HII's policy requires, defense counsel

---

²     HII has repeatedly repudiated the existence of any responsive privileged materials at all.

4

terminated the discussion.³

Plaintiff requests that the Court again direct that HII produce a complete response to RFPs 18 and 26 (1st Set), and that it explain in detail what happened to any materials that must have been created as part of its TCPA investigatory policy, but that it has not produced. If the truth is that HII failed to follow its own TCPA compliance policy and never forwarded any complaints internally as proscribed, it should say so.

### III. HII should produce the class data the Court compelled it to produce.

HII agreed in 2019 to produce documents responsive to RFP 17 (1st Set) concerning customer data corresponding with Rising Eagle call transfers to HII telemarketer HAA, it was compelled to produce them in 2020 [Dkt. 324 at 1-3], and it agreed to produce the data again as recently as December 29, 2021, but it still has not done so. This, despite months of frustrating and circular conferrals with its new counsel, including Plaintiff's proposals to narrow the scope of the production to reduce any burden, which HII rejected. RFP 17 (1st Set) asks for:

> **Request for Production No. 17.** Produce all data and documents associated with any telephone number or consumer associated with phone numbers or other data in the Fextel SQL Database, as to calls that were warm transferred from any of the following DIDs: a. 321-261-0979; b. 979-201-5297; c. 331-208-5719; d. 954-204-0610; e. 954-234-2726 or f. 240-204-8264. [See Exhibit D, at ¶ 4.]

Plaintiff requests that the Court – again – direct HII to produce all data responsive to RFP 17 (1st Set) in its entirety in usable CSV or similar format, immediately, without redactions.

---

³ There is some question as to whether some responsive materials may have been deleted during the pendency of this case. HII was placed on notice of this litigation in around May 2018. Exhibit B at 1. Sales Agent Amy Brady – who was in charge of HII's relationship with the insurance agents at issue and regularly corresponded with HAA and the compliance department about TCPA issues – testified on January 12, 2022, that she had never received a litigation hold notice and did not even know what a litigation hold was. She also had the mistaken belief that HII automatically maintains all email correspondence forever, regardless of whether she deleted them or not—which she said she regularly did. During meet-and-confer discussions, defense counsel was unable to say whether there was a litigation hold placed in connection with this – or any other – TCPA case.

## IV. Purchase and Diligence Materials

In around August 2020, during the pendency of this action, Defendant Health Insurance Innovations, Inc. n/k/a Benefytt Technologies, Inc. ("HII") went from a publicly-traded company with over $380 million in annual revenue[4] to a private entity acquired by private equity firm Madison Dearborn Partners, LLC ("MDP"). Key HII personnel have left or been laid off, including key custodians under the parties' ESI protocol. And to finance the leveraged buyout, MDP had HII take on enormous debt, which included a $207.5 million credit agreement.[5]

Plaintiff issued two discovery requests aimed at discovering what MDP and its affiliates knew about the violations at issue at the time of the transaction, and the financial status of the defendant: (1) RFP 27 (3d Set), which seeks HII's disclosures to MDP as a prospective buyer, and (2) RFP 30 (3d Set), which seeks direct financial documents. HII produced zero documents responsive to these two requests, and its objections that RFP 27 and 30 are irrelevant or premature are meritless.

These requests, and HII's responses, are as follows:

**Request for Production No. 27.** Produce all disclosures as to litigation and liabilities made by HII in connection with its acquisition by Madison Dearborn Partners, including but not limited to the Company Disclosure Letter referenced in HII's Agreement and Plan of Merger filing with the SEC dated July 12, 2020.
   **RESPONSE:** HII objects to this Request on the grounds that it seeks information that is not relevant to any party's claim or defense, and is not proportional to the needs of the case. In no way are disclosures made to a third party relevant to the claims or defenses presented here that address Plaintiffs instant TCPA claim. This request is irrelevant and harassing.

**Request for Production No. 30.** To the extent you claim, believe, or assert that you will be unable to withstand a class judgment based on TCPA violations to hundreds of thousands of individuals or more, produce all financial documents for the past five years, including but not limited to state and federal tax filings and

---

[4]  *See* Form 10-K (Mar. 4, 2020) https://www.sec.gov/Archives/edgar/data/1561387/000156138720000002/hiiq-2019x12x31x10k.htm.
[5]  *See* Form 8-K (Aug. 21, 2020) https://sec.report/Document/0001193125-20-226484/d926665d8k.htm.

6

returns, corporate balance sheets, statements of cash flows, banking and financial account records, audited and unaudited profit and loss statements, credit application or inquiry materials, records relating to loans and lines of credit, and financial summaries.

**RESPONSE:** HII objects to this Request on the grounds that it is financial discovery that is wholly improper prior to the entry of a judgment. No judgment has been entered here and accordingly such financial discovery is premature and improper.

Exhibit A.

These materials are relevant and discoverable. Most importantly, these materials will shed light upon the degree of HII's and MDP's knowledge that existing customers were obtained through deceptive and illegal means. Although HII has not produced class data responsive to RFP 17 (1st Set), discussed supra, at least some – likely many thousands – of the persons whose business was gained through Rising Eagle calls are still current customers. If so, HII and its parent company MDP continue to benefit from that business, which was developed through the illegal calls issue, by accepting monthly payments from class members. Plaintiff intends to file a motion for class-wide injunctive relief in this case to prevent future violations, which places the Defendant's ability to pay squarely at issue. *Snyder v. Ocwen Loan Servicing, LLC*, 258 F.Supp.3d 893, 913 (N.D.Ill. 2017) (certifying TCPA injunctive class, finding defendant's ability to pay class judgment relevant to whether adequate remedy at law exists).

Moreover, continuing to accept the benefit of these obviously illegal calls without repudiating the improper conduct constitutes a ratification of the original deceptive[6] and illegal

---

[6] The Second Amended Complaint alleges that the calls at issue were deceptive because the caller IDs were spoofed, the prerecorded portion of the calls did not mention HII and instead mentioned other insurance companies that HII did not work with. Spoofing caller ID not only violates the Illinois Automatic Telephone Dialer Act as outlined in Count IV, it is also a crime. 47 U.S.C. § 227(e)(5)(B); *also In re John C. Spiller*, 2021 WL 1056077, at *1 (FCC Mar. 18, 2021) (levying a $225,000,000 fine against Rising Eagle for spoofing approximately one billion robocalls with the "intent to defraud, cause harm, and wrongfully obtain something of value" in violation of the TCPA, section 227(e)). The calls at issue here were made by Rising Eagle as part of those billion calls.

7

acts that implicates vicarious liability. After all, "[r]atification occurs when the principal accepts the benefit of the agent's act either with actual knowledge of the material facts or with "knowledge of facts that would have led a reasonable person to investigate further"—also known as "willful ignorance." *Brown v. DirecTV, LLC*, 2021 WL 5755044, at *12 (C.D.Cal. 2021) (quoting *Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1073, 1075 (9th Cir. 2019)). Plaintiff's claims for injunctive relief bring into focus how much the then-current and new ownership knew about the misconduct both when HII was acquired, and today.

For example, Count II of the Second Amended Complaint, Dkt. 116, alleges that HII failed to keep an adequate internal do-not-call list. *Id.* at ¶¶ 125-128. "[O]nce a consumer makes a company specific do-not-call request, whether to [the seller] or any of its agents telemarketing on behalf of [the seller], [the seller] and all of its agents must honor that request and not call the consumer again to make a telephone solicitation." *In re TCPA*, 20 FCC Rcd. 13664, 13664-65 ¶ 1 (2005). Later in its ruling, the FCC again explained:

> Once the consumer makes a company specific do-not-call request, whether to the company or third party, the company and its third party telemarketer may not call the consumer again on behalf of that company to make a telephone solicitation regardless of whether the consumer continues to do business with the company.

*Id.* at 13667-68, ¶ 7.2. The Seventh Circuit reached a similar conclusion when considering internal do-not-call compliance in the context of both the TCPA and the FTC's Telemarketing Sales Rule, 12 C.F.R. § 310 *et seq.*, which generally mirror one another. The Court found that "order-entry retailers were the sort of agents required to coordinate lists with DISH [because the] order-entry retailers were acting on behalf of DISH for this purpose." *United States v. Dish Network L.L.C.*, 954 F.3d 970, 976 (7th Cir. 2020).

The upshot is that if Plaintiff is correct that HII failed – and continues to fail – to maintain an adequate internal do-not-call list, calls made by HII or on its behalf today, yesterday,

and any time in the future also violate the TCPA. And without a do-not-call list, HII has no way of knowing who it is allowed to call, and who it is not allowed to call. Judge Kennelly recognized a similar conundrum in *Snyder v. Ocwen Loan Servicing, LLC*, 258 F.Supp.3d 893, 914 (N.D.Ill. 2017), because that defendant failed to keep adequate track of what phone numbers it had consent to call. The parties settled that case for approximately $23,500,000 before a ruling was issued on whether Ocwen's failure to properly record consent was sufficient to enjoin it from making any dialer calls at all, but the underlying principle holds true here: If HII – today – does not have an accurate list – or *any* list – of who asked not to receive telemarketing calls on its behalf, how can it possibly comply with the TCPA's internal do-not-call requirements in 47 C.F.R. § 64.1200(d)? The answer is that it cannot. And because Subsection 64.1200(d) prohibits all telemarketing calls unless an adequate list is maintained, *all calls* made by or on behalf of HII today – and going forward – violate the TCPA.[7] Given these widespread violations, HII's disclosures about its knowledge about them to a prospective purchaser like MDP, and its financial status, are thus directly relevant to its willfulness and whether an adequate remedy at law exists to pay a class judgment such that injunctive relief is appropriate.

Moreover, HII has refused to repudiate the argument that the extent of statutory damages imposed by the Telephone Consumer Protection Act is unconstitutional as applied here. While Plaintiff does not believe the argument will carry the day here, grossly excessive damages can violate Due Process under the Fifth Amendment. *Johnson v. Howard*, 24 F. App'x 480, 486 (6th Cir. 2001) (citing *BMW of North Alabama v. Gore*, 517 U.S. 559 (1996)). The TCPA and Illinois

---

[7] This is not to say that each person called by or on behalf of HII today has a private right of action: the TCPA requires two illegal calls in a 12 month period for such to accrue. 47 U.S.C. §227(c)(5). But HII's failure to keep a valid internal do not call list means that all calls by or for HII in the past, present and future (until it shores up its policies and list) violate the TCPA. This will be the subject of Plaintiff's injunction motion.

analog statute under which Plaintiff also brings claims both generally provide for statutory damages of $500 (or, in the case of the TCPA, up to $1,500) per violation, and so a defendant's exposure in high-volume robocall cases such as this can easily surpass a hundred million dollars or more. 47 U.S.C. § 227(b)(3), (c)(5); 815 ILCS 305/30(c-5). The financial documents Plaintiff seeks will allow her to test and rebut any assertions HII might make at summary judgment, or thereafter, as to this anticipated constitutionality argument.

Indeed, while "constitutional limits are best applied after a class has been certified," *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 954 (7th Cir. 2006), this has not stopped defendants from arguing that certification should be denied for lack of superiority. To certify a Fed.R.Civ.P. 23(b)(3) class, a plaintiff must establish that it is "superior to other available methods for fairly and efficiently adjudicating the controversy." Some distressed companies thus argue that that the "annihilating" damages in large-volume TCPA cases such as this preclude a finding of superiority, since a bankruptcy will likely leave the class with nothing. Although Plaintiff, again, does not believe these arguments, which HII has refused to repudiate, will prevail, she needs the requested information to allow her to test and address them.

HII's objections to these requests are without merit. As for RFP 27, HII fails to identify any burden in providing a few documents it produced to an interested buyer, like the Company Disclosure Letter it specifically references in a public SEC filing.[8] HII prepared these materials to identify and explain its exposure and potential liabilities to a third party, including necessarily for the TCPA claims at issue. The Letter and similar disclosures are thus plainly relevant to the

---

[8] *See* http://www.sec.gov/Archives/edgar/data/1561387/000114036120015855/ex2_1.htm (Art. 5.1(g), discussing "Litigation and Liabilities" and that "[t]here are no Proceedings pending or, to the Knowledge of the Company, threatened against the Company or any of its Subsidiaries, except for those that would not, individually or in the aggregate, reasonably be expected to have a Company Material Adverse Effect").

parties' claims and defenses, and they should be produced. There is nothing "harassing" about it.

Further, HII's sole basis for objecting to RFP 30 – that producing financials is premature before judgment – is wrong. HII has not agreed to waive any argument at class certification that the risk the class might ultimately obtain nothing precludes a finding of superiority. HII also has not agreed to waive any argument at summary judgment that the statutory damages at issue are unconstitutionally excessive. The District Court in TCPA case *Maryland v. Universal Elections, Inc.*, 862 F. Supp. 2d 457, 466 (D. Md. 2012), directly considered that defendant's ability to pay on the plaintiff's motion for summary judgment. *Aff'd*, 729 F.3d 370 (4th Cir. 2013). And Judge Kennelly also considered the defendant's ability to pay in finding a TCPA class preliminary injunction warranted in *Snyder*, 258 F. Supp. 3d at 913. Thus, the proper time for this discovery is now. Courts have found a Plaintiff's request for treble damages – as Bilek does here – a sufficient cause for financial discovery:

> In this case, if Defendants are found to have violated the TCPA, the Court will have the discretion to order punitive damages. *See* 47 U.S.C. § 227(b)(3), (c)(5) (providing that a court may increase the amount of an award and order treble damages "[i]f the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection"). Defendants' finances are all the more relevant where the Court will eventually consider whether to certify the proposed classes in this case. *See In re New England Mut. Life Ins. Co. Sales Practices Litig.*, 183 F.R.D. 33, 42 (D. Mass. 1998) (explaining that certification under Federal Rule of Civil Procedure 23(b)(1)(B) "is used most frequently for certification of a class where insufficient funds are available to satisfy for all class members their judgments against the defendant"). Therefore, documents concerning the Defendants' finances are sufficiently relevant to warrant discovery.

*Katz v. Liberty Power Corp., LLC*, 2020 WL 3492469, at *5 (D. Mass. June 26, 2020). This Court should similarly compel HII to produce its pertinent financial records.

### IV. <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an order

11

directing that HII immediately produce all materials responsive to Plaintiff's Request for Production Nos. 17 (1st Set) (customer data), 18 (1st Set) & 26 (1st Set) (complaints, investigations and related documents), compelling HII to produce documents responsive to Request for Production Nos. 27 and 30 (3d Set) (ongoing knowledge of violations and financial condition), and granting such other and further relief the Court deems reasonable and just.

Dated: January 14, 2022

Respectfully submitted,

MARY BILEK, individually and on behalf of others similarly situated

By: *s/ Alexander H. Burke*

Alexander H. Burke
Daniel J. Marovitch
BURKE LAW OFFICES, LLC
909 Davis St., Suite 500
Evanston, IL 60201
Telephone: (312) 729-5288
aburke@burkelawllc.com
dmarovitch@burkelawllc.com

*Counsel for Plaintiff*

**FED. R. CIV. P. 37(A)(1)/L.R. 37.2 STATEMENT**

The undersigned certifies that Plaintiff, through counsel, has in good faith conferred with HII in an effort to obtain the discovery requested herein without court action, but that such attempts were unsuccessful, including through a meet-and-confer telephone call between myself and co-counsel Daniel J. Marovitch, and HII's counsel Danielle Chattin, on November 18, 2021, and November 22, 2021, between myself and Ms. Chattin on January 13, 2022, and through multiple emails.

                                                                                                                        */s/ Alexander H. Burke*

**CERTIFICATE OF SERVICE**

I hereby certify that, on January 14, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

                                                                                                                        */s/ Alexander H. Burke*