1        IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF ILLINOIS
2                   EASTERN DIVISION

3   MARY BILEK, individually and on behalf  ) No. 18 C 3083
    of all others similarly situated,       )
4                                           )
                        Plaintiff,          )
5                                           )
              v.                            )
6                                           )
    NATIONAL CONGRESS OF EMPLOYERS, INC.,   ) February 2, 2022
7   et al.,                                 ) Chicago, Illinois
                                            ) 11:34:50 a.m
8                                           )       Telephonic
                        Defendants.         ) Status/Motion Hearing
9
                     TRANSCRIPT OF PROCEEDINGS
10  BEFORE THE HONORABLE MAGISTRATE JUDGE JEFFREY T. GILBERT

11  APPEARANCES:

12  For the Plaintiff:      BURKE LAW OFFICES, LLC
                            909 Davis Street
13                          Suite 500
                            Evanston, Illinois  60201
14                          BY:  MR. ALEXANDER H. BURKE
                                 MR. DANIEL J. MAROVITCH
15
    For the Defendant       KING & SPALDING LLP
16  HHI:                    1180 Peachtree Street, NE
                            Suite 1600
17                          Atlanta, Georgia  30309
                            BY:  MS. DANIELLE P. CHATTIN
18                               MR. MAX AFRICK

19                          KING & SPALDING LLP
                            110 North Wacker Drive
20                          38th Floor
                            Chicago, Illinois  60606
21                          BY:  MS. RACHAEL M. TRUMMEL

22

23          TRACEY DANA McCULLOUGH, CSR, RPR
                   Official Court Reporter
24              219 South Dearborn Street
                        Room 1232
25             Chicago, Illinois  60604
                    (312) 435-5570

APPEARANCES CONTINUED:

For the Defendants          LEWIS BRISBOIS BISGAARD & SMITH LLP
NCE, NBBI, and              550 West Adams Street
AccessOne                   Suite 300
                            Chicago, Illinois  60661
                            BY:  MR. STEVEN P. SLAYDEN

1    (Proceedings via telephone on the record.)

2         THE CLERK:  This Court resumes in session.  The

3    Honorable Jeffrey T. Gilbert presiding.  18 Civil 3083, Bilek

4    versus National Congress of Employers, Incorporated.

5         THE COURT:  Okay.  Good morning.  We're doing this by

6    telephone remotely, but we're also on the record in the

7    courtroom, so I'm going to ask the lawyers to identify

8    themselves for the record, and then to try and remember to say

9    your names again before you speak during the hearing so that if

10    a transcript is ever prepared of this proceedings, the court

11    reporter knows who's speaking.

12         For the plaintiff.

13         MR. BURKE:  Good morning.  Alex Burke for plaintiff.

14         THE COURT:  Good morning.

15         MR. MAROVITCH:  Good morning.  Dan Marovitch for

16    plaintiff.

17         THE COURT:  And for the defense.

18         MS. CHATTIN:  Good morning.  This is Danielle Chattin

19    from King & Spalding on behalf of Health Insurance Innovations.

20    On the line from my law firm is also Rachael Trummel and Max

21    Africk.

22         THE COURT:  Okay.  Great.

23         MR. SLAYDEN:  And Steven Slayden for NCE, NBBI, and

24    AccessOne.

25         THE COURT:  Okay.  And I'm sorry.  The lead person

1    speaking for HII was Rachael Trummel, is that what you said?

2            MS. CHATTIN:  No, Your Honor.  This is Danielle

3    Chattin.

4            THE COURT:  Got it.  Got it.  Got it.  Sorry.

5            MS. CHATTIN:  Sure.

6            THE COURT:  I'm looking at your signature block with

7    all these people.  Okay.  But also on the line was Africk and

8    someone else?

9            MS. CHATTIN:  Yes.  And Rachael Trummel.

10           THE COURT:  Got it.  And she's here -- Miss Trummel

11   you're here locally so you're experiencing all our snow, and

12   the folks from King & Spalding in Atlanta are experiencing

13   beautiful sunshine.

14           MS. TRUMMEL:  That is, that is correct, Your Honor.

15   It took me half an hour to dig my car out this morning.  I'm on

16   the way to the office.  Yay, Chicago.

17           THE COURT:  Yay, Chicago.  Okay.  All right.  Let

18   me -- there's a number of things that I'd like to deal with

19   this morning.  I have a couple of things here to just put on

20   the record and so you know where I stand on these.  One, I

21   really don't appreciate the fire drill nature of filings on the

22   eve of hearings like this.  It's a bit of a pattern in this

23   case, a bit of a pattern frankly on -- more I think on

24   plaintiff's side than defendants' side.  You know, I set

25   this -- I set a briefing schedule, and on the briefing schedule

1    on the motion to compel, for example, I provided only for a

2    response by HII.  I didn't provide for a reply.

3           If the plaintiff wanted a reply or thought you might

4    need a reply, then the thing to do is really to file a motion

5    or even an agreed motion or even to send an e-mail, a joint

6    e-mail to my courtroom deputy saying you'd like a reply, and

7    I'd set a date for a reply and probably I wouldn't have had a

8    hearing on February 2nd with the response coming in like it

9    came in in January.  I probably would have continued it.  I, I

10   understand why you wanted to file a reply, but you jam the

11   Court, and it's not helpful for the process really to be, to be

12   filing things without at least the Court and probably the other

13   side knowing that it's coming.

14          Similarly, I don't necessarily mind the repeated

15   status reports from plaintiff telling me things that you want

16   me to know again without leave.  I do like to have joint status

17   reports, and that's my preference.  I don't know that lobbing

18   things over the (inaudible) on status reports help.  But again,

19   things filed yesterday -- and I don't know when your supplement

20   was filed, Mr. Burke or Mr. Marovitch, but it had to be filed

21   pretty late in the day because I was in the docket.  I was on

22   CM/ECF very late into the afternoon and into the evening, and I

23   didn't see these filings come in.  So if they were filed, they

24   weren't promptly posted, but they're usually promptly posted.

25          I've tried to read what I could for today.  I'm going

1  to direct some traffic, and I'll probably set another date to

2  deal with things that still need to be dealt with.  I think

3  I'll put two placeholders down that I'm not actually going to

4  discuss here today, but I want the record to be clear that I'm

5  putting a placeholder down, and since you are always -- all of

6  you are fond of citing to either prior orders of mine or things

7  I've said, I want to put these placeholders down.

8        One, I'm not fond of motions to compel before the

9  Local Rule 37.2 process has been completed.  I know HII

10 believes that this -- some of the issues that were raised by

11 plaintiff in its motion to compel were premature or unnecessary

12 before they completed the, the process.  I'm not going to weigh

13 into that.  In the future there may be consequences for doing

14 that, including denial of motions if the process hasn't gone

15 forward to my satisfaction.  But by not dealing with it

16 directly right now, I'm not saying that I, I accept the

17 practice.  And let me look at this other note I have here.  You

18 know, I guess I suppose I'll place a placeholder on filing

19 things without leave of Court too.

20       And finally, it doesn't really work very much in

21 front of me to try and dirty up the other side.  I'm focused,

22 I'm focused generally on trying to complete discovery in this

23 case, find out if settlement is a realistic possibility, and

24 then releasing you back to Judge Norgle for trial if it's not.

25 There are circumstances in which I think one side or the other

1    is doing something that is so untoward that there are

2    consequences for it.  I don't know that I have that feeling

3    right, right now.  But this case had -- there was a lot of mud

4    throwing earlier on in the case.  That kind of calmed down.

5    And, you know, I get a, I get a feeling of some of the mud

6    throwing in, in -- at least in plaintiff's filings here.  That

7    doesn't affect me a whole lot unless I'm really convinced that

8    somebody has done something completely untoward.

9           I'm not yet convinced that HII's failure to produce

10   some documents was the result of intentional misconduct based

11   upon what they've said in response to what you said.  I'm also

12   not convinced, as we'll talk about in a little bit, that

13   sanctions are appropriate for that the way I think plaintiff is

14   asking sanctions in terms of what you want me to order to be

15   produced and when.

16          But I say all this just so you -- I mean, I'm --

17   we're not in person, right.  We're on the phone, so you can't

18   see the expressions on my face when we talk about these things.

19   And it's a lot easier to talk about these things in person than

20   not.  But I felt at least so that we could all refer back to

21   this at some time, if necessary, that I wanted to put this on

22   the record.  I'm not even sure it requires a response frankly,

23   so -- and if you think it requires a response, you can, you can

24   let me know.

25          I want to direct some traffic here.  It looks to me

1    like the motion for an agreed protective order against -- with

2    respect to AT&T is not opposed by AT&T.  They want the order.

3    And I assume neither defendant here opposes it.  HII, correct?

4              MS. CHATTIN:  That's correct.  We don't oppose.

5              THE COURT:  And NCE?

6              MR. SLAYDEN:  This is Steven Slayden.  That's

7    correct, Your Honor.

8              THE COURT:  So I'll grant that motion and sign the

9    agreed protective order that you've submitted.  Two, with

10   respect to plaintiff's motion to extend discovery dates 90

11   days, it seems to me that HII was in agreement that we needed

12   75 to 90 days.  One, I'm not sure for what.  I'm not sure

13   whether you were saying for production of documents or

14   completing depositions or whatever.  But if the parties are

15   agreeing -- discovery is not going to close per the schedule,

16   and if the parties are agreed -- are in agreement to extend

17   discovery for 90 days, I'll do it even though it may be a

18   little bit of a punt.

19             But it sounds to me like HII is not opposed to

20   extending discovery for 90 days.  What I don't know is NCE's

21   position on that.

22             MR. SLAYDEN:  So, Your Honor, this is Steven

23   Slayden --

24             THE COURT:  I was going to ask first HII.

25             MS. CHATTIN:  Thank you, Your Honor.  This is

1    Danielle Chattin for HII.  No, Your Honor, we don't oppose the

2    90-day extension that plaintiff has proposed.  And I don't want

3    to jump ahead.  I'm sure we'll get to this.  I think we do need

4    a little clarification as to what kind of discovery can, you

5    know, continue to be propounded during that time and what that

6    time is used for, but I'm sure we'll get into that later, Your

7    Honor.  And as far as the actual dates, we do not oppose them.

8            THE COURT:  Okay.  Well, just for the record,

9    discovery is supposed to close by 1 -- January 30th.  And I

10   know why plaintiff filed the motion prior to January 30th just

11   so you were not asking for it after the time period.  So I get

12   that.  And so that I have some clarification, HII proposed like

13   a 75- or 90-day continuance.  What was that for?  Do you think

14   it's going to take you that long to produce your documents?

15   Was that to produce your people for deposition that have

16   already been noticed or something?  What, what did you

17   anticipate happening, Miss Chattin, during that 90-day period?

18           MS. CHATTIN:  Sure, Your Honor.  We, we were

19   proposing that that would be an appropriate extension of the

20   fact discovery deadline.  So what we're prepared to do is

21   finish our corrected ESI production, finish our production of

22   the potential class member data that plaintiff has asked for

23   and any other remaining outstanding discovery disputes that are

24   resolved by Your Honor in this pending motion to compel, we, we

25   propose that we can be complete with that in early March.  By

1    March 11th, if you want to set a date for completion of our
2    production.

3         And then that would provide plaintiff enough time to
4    review documents and take the remaining depositions that we
5    took off the calendar by the new discovery cutoff date of
6    May 2nd.  So that was --

7         THE COURT:  And how many --

8         MS. CHATTIN:  Sorry.

9         THE COURT:  Sorry.  I interrupted you.  And how many
10   depositions are, are -- from your perspective at least now were
11   on the table that need to be taken before close of fact
12   discovery?

13        MS. CHATTIN:  There had -- plaintiff had took a
14   deposition of one of our witnesses already.  And I'm not sure
15   if that needs to be reopened or not.  We're, we're willing to
16   discuss that given the additional discovery.  And there were
17   two other HII witness depositions that were scheduled.  And I
18   believe plaintiff can correct me, but I believe there were two
19   or three other depositions of the co-defendants that had been
20   scheduled.

21        THE COURT:  Okay.  Mr. Burke or Mr. Marovitch, does
22   that sound right to you that in order to complete fact
23   discovery, at least based on what you know now and what you've
24   already asked for, there's potentially five or six new
25   witnesses and maybe reopening an existing witness depending

1    upon what you want to do?  Does that, does that sound like the

2    universe?

3                  MR. BURKE:  This is Alex Burke.  You know, we don't

4    know what's going to come in these additional productions.

5    And, you know, we did not submit the evidence yesterday for the

6    purpose of slinging mud or swaying the merits of the case.  We

7    did so because we believe that HII, regardless of what's

8    happening with the -- its current lawyers, HII has submitted

9    false evidence to us in this case, which we want to

10   investigate.

11                 For example, this declaration of Bryan Krul that was

12   submitted both in a subpoena enforcement action in Florida and

13   here says that HAA, the telemarketer in this case, was not

14   permitted to make phone calls for HII.

15                 THE COURT:  Well, I'm going to interrupt you, Mr.

16   Burke.

17                 MR. BURKE:  Yes.

18                 THE COURT:  I'm sorry.  I'm going to interrupt you,

19   Mr. Burke.  No. 1, if you're, if you're submitting things -- if

20   you think I was saying you're submitting things to me to sway

21   the merits, that was a misconstruction of what I was saying.

22   I'm not responsible for the merits.  I'm not deciding this case

23   unless the parties consent to that.  That's all in front of

24   Judge Norgle.  And if you think he's going to be reading

25   submissions on discovery while he's dealing with pretrial

1    motions -- or maybe I'm going to be dealing with pretrial

2    motions, but the merits are in front of Judge Norgle.

3            So it, it -- I really was not suggesting that you're

4    trying to sway the merits before me, but maybe, maybe sway what

5    I'm doing on discovery.  I fully recognize that you think HII

6    has done things improperly.  That's really not before me right

7    now frankly.  It may be at a different time, but I, I really

8    don't want to deal with that issue right now unless I really

9    need to do it.  My question to you was very simple.  It was,

10   are there from your perspective about five or six more

11   depositions to be taken while I extend discovery for 90 days?

12   And I think your answer to that is that based on what you knew

13   when you agreed -- based on what you knew when you reviewed the

14   documents that you already had, you thought that was about the

15   number of depositions that you needed to take because those are

16   the ones you asked for before the discovery closed.

17           Reviewing the next batch of documents that you're

18   going to get by March 11th, you might see other people you want

19   to depose.  You don't want to commit to five or six.  But it

20   looks like to me that you and HII agreed that moving the

21   schedule 90 days should accommodate hopefully, if everybody

22   cooperates, the additional discovery that needs to be done,

23   including additional depositions that need to be done before

24   you can close.  Is that correct?

25           MR. BURKE:  Yes, Your Honor.  There are a lot -- I'm

1   just doing my best here, Judge.  The answer is yes.  Mr.

2   Marovitch is going to be out on paternity leave in March, which

3   is something I hadn't considered when I suggested 90 days.

4   This is a very fluid situation, as Your Honor knows.  But you

5   did hit the nail on the head with what you said about how we

6   feel about the depositions.

7           THE COURT:  Okay.  Well, you asked for 90 days

8   without considering Mr. Marovitch.  Mr. Marovitch, you can take

9   that out on him separately in terms of paternity leave, but I'm

10  going to, I'm going to extend all the other dates for 90 days.

11  I think I am hopeful that you can look at paternity leave in

12  March, a lot can get done between now and May 2nd.  And we'll

13  order that the defendant HII -- well, I -- produce by -- finish

14  its production of documents by March 11th.  I neglected to ask

15  NCE.  Probably you're okay with this 90-day extension too,

16  right?

17          MR. SLAYDEN:  Yes, Your Honor.  Steven Slayden for

18  NCE, NBBI, and AccessOne.  We have no opposition to it.

19          THE COURT:  Right.  Okay.  So I'm going to do what

20  you're suggesting.  I'll extend the dates by 90 days.  I'll

21  grant the motion.  I am going to order HII -- I mean, this --

22  none of this is to say that I'm pleased that you -- that these

23  documents weren't produced beforehand -- before this.  I

24  haven't delved into all the reasons for that, but they do need

25  to get produced.  Plaintiff wanted me to set a date for you to

1 | complete your production of documents.  And March 11th at least
2 | to me given what you need to produce with a placeholder
3 | question there about search terms and -- that I want to ask is
4 | reasonable.

5 | So I don't know if this is -- I'm not putting it on
6 | the calendar that this is the final, final, final extension of
7 | fact discovery.  You'll know when I do that, because it will be
8 | in capital letters.  But I think it's reasonable and there's
9 | good cause to move this date 90 days, and I'm going to do that.
10 | Okay.

11 | I do have -- I have a question.  Let me just look at
12 | this here for a second.  You know, I'm -- and, Mr. Burke and
13 | Mr. Marovitch, I am not inclined as a sanction for what I'm not
14 | yet sure is something that merits such a sanction to order the
15 | defendant to run a privilege filter on the activity and then
16 | produce to you everything that comes back without, without them
17 | really being able to review merely for, for privilege.  I, I
18 | just don't think that's an appropriate sanction here or
19 | punishment.  You've asked for -- the flavor of the motion that
20 | asks for that, the motion to compel really -- it, it reads to
21 | me as this should be a sanction for this conduct, and I'm not
22 | prepared to do that.

23 | I am prepared to do what you requested, though, which
24 | is to get the A date by which they're to finish their
25 | production of documents.  And it's -- I haven't heard an

1   objection from you, but I'm going to allow you to object.  But
2   March 11th, which is a little over 30 days from now, given my
3   extension of the discovery close date and my willingness to
4   extend it more, if necessary, I take it you don't object to
5   March 11th, correct?

6          MR. BURKE:  The plaintiff -- not at this time, Judge.
7   I mean, we don't know what the volume of documents is going to
8   be that we get on March 11th.

9          THE COURT:  Right.

10         MR. BURKE:  And we haven't been given any idea of, of
11  what they may be.  And frankly given the history, we, we
12  certainly don't know.  But, you know, so the 90 days, again,
13  Your Honor, I, I think as long as we have time to follow up, I
14  have no objection to March 11th.

15         THE COURT:  Okay.  I mean, I was really talking about
16  March 11th, not the 90 days.  I mean, I'm not, I'm not putting
17  90 days in stone unless Judge Norgle intercedes, as he has
18  before, and sets dates.  So it, it either is -- the 90 days it
19  is or is not realistic depending on what you, what you see.

20         I do want to flesh out one thing that I saw in the
21  motion practice, and that's search terms that the defendants
22  are going to -- the defendant is going to run in order to get
23  you the documents that they're going to produce and review,
24  because it's, it's not clear to me.  The defendants seems to be
25  saying that at one point there were 172,000 or 173,000

16

1   documents that met the criteria of search terms.  Then there

2   was 121,642.  And now they've got 68,685 documents.  But I

3   think in their response to the motion to compel they said that

4   they had sent plaintiff search terms, and they hadn't yet

5   reached closure on search terms.

6          So what I want to flesh out here is whether there is

7   a dispute about the search terms that defendants are using to

8   produce the documents they're going to be producing by

9   March 11th, or whether at this point plaintiff is willing to

10  allow that process to go forward with those search terms, and,

11  you know, as you say you do all the time, reserving all your

12  rights in that regard.  But, you know, do I have to order you

13  to meet about search terms before the process of producing

14  these documents goes forward?  Mr. Burke.

15         MR. BURKE:  From plaintiff's perspective -- and we

16  have conferred about search terms -- plaintiff agreed to remove

17  the search term of script, but did not agree to change the

18  search term of complaint within 20th call.  HII suggested

19  changing the complaint within 20th call to the complaint within

20  10 of call.  And we don't agree to that.

21         THE COURT:  And do you have an ESI consultant who is

22  telling you that that results in a material prejudice to you,

23  the difference of 10 and 20 words, or this is just your gut

24  based on doing these kinds of cases for a long time?

25         MR. BURKE:  This is based on my understanding of

1  doing these cases for a long time, and the fact that we don't

2  have all the complaint related documents that were ordered

3  compelled last year.

4  THE COURT:  I saw that in the, in the briefing.

5  Miss Chattin, Chattin, can you tell me how -- tell me, one, if

6  I'm mispronouncing your name; and two, what's your position on

7  the complaint within 20th call, and what search terms are you

8  going to run?

9  MS. CHATTIN:  Thank you, Judge.  It's Miss Chattin,

10  so you've got it right, but I appreciate you asking.

11  THE COURT:  Okay.

12  MS. CHATTIN:  Your Honor, I'm, I'm glad to hear Mr.

13  Burke is agreeing to the one search term script, because that

14  was a, a pretty large outlier in the hits and does help limit

15  the review to the most likely relevant documents.  Limiting

16  the -- the kind of second largest hit was the complaint within

17  20th call.  We proposed to limit that to carve off another

18  several thousand documents.  You know, Your Honor, you know,

19  we're trying to be as efficient as we can to really target the

20  responsive documents here.  And that was the intent with

21  limiting that.

22  You know, it's about -- I believe it adds about 5,000

23  documents to the count, so it will move it from 58,000 to

24  63,000.  And, you know, if we need to do it, we'll do it.  You

25  know, we don't want to hold up the process by, you know, kind

18

1   of fighting over search terms.  We're just trying to, to target

2   this as best we can.  And so it's up to Your Honor, but we'll

3   concede that one if, if Your Honor thinks that's the best way

4   to move forward.

5              The other thing that I would want to add about this

6   volume of documents and the time frame in which to complete the

7   review is we have a -- I think we have a dispute with plaintiff

8   about the time frame for the documents that we need to review.

9   And I didn't mean to jump ahead if you were getting to this

10  next.  But depending on the time frame, we'd propose to limit

11  the time frame which was originally a four-year time frame,

12  2014 to 20 -- or sorry, a five-year time frame, 2014 to 2018.

13  During discovery that we all have in the case I think plaintiff

14  at one point at least agreed that the time period before 2017

15  is largely irrelevant to the claims in this case.

16             So we're trying to limit the review to the only

17  documents that are likely to be responsive.  That cuts down the

18  volume quite a bit so we can get through these documents

19  quicker.  So we have proposed to limit the time frame from

20  beginning of 2017 to end of 2018, and that helps us focus on

21  the review universe that will get us the docs out as quick as

22  possible.  I, I don't know if we have a dispute with plaintiff

23  about that, but that's obviously an important finding that we

24  need to agree on before we can, you know, determine whether

25  that March 11th document completion deadline is, is doable.

1       THE COURT:  So I just, I just searched electronically

2   HII's memo in opposition to the, to the -- to plaintiff's

3   motion for the word time or time frame, and I didn't see it

4   there.  I'm now going to search plaintiff's motion.

5       MS. CHATTIN:  Your Honor, I'm sorry to interrupt you.

6   This was in our status, response to the status report on ESI,

7   which was filed on the 28th.  And I can tell you the docket

8   number in one second, if that would be --

9       THE COURT:  I have it.

10      MS. CHATTIN:  Okay.

11      THE COURT:  I know when it is.  I was there.  I can

12  go back there.  The status, that status is mostly different

13  motions, are supplemental motions.  Let me just look at that

14  real quick before I ask for Mr. Burke's view on this.  Okay.

15  Mr. Burke, I didn't know that I was going to do this Local Rule

16  37.2 conference, but what's your position on the time frame,

17  2014 to 2018 or 2017 to 2018?

18      MR. BURKE:  Well, my --

19      THE COURT:  Let me ask.  Before you -- hold on.  Hold

20  on.  Before you respond to that.  Miss Chattin, how does that

21  time frame, if at all, affect the number of documents you need

22  to review and produce?

23      MS. CHATTIN:  This is Miss Chattin.  Your Honor, I'm

24  not -- I don't have the numbers of -- after you removed the one

25  search term, what that impact is.  But it's, it's -- it's

1  material, and I, I can --

2  　　　　　THE COURT:  Okay.

3  　　　　　MS. CHATTIN:  I'm happy to find that number out and

4  provide it to the Court.

5  　　　　　THE COURT:  Well, let's see if it's an issue.  Let's

6  first see if it's an issue.  Mr. Burke.

7  　　　　　MR. BURKE:  Thank you, Judge.  Well, in the status --

8  no, we don't agree to that time frame.  We do agree to lop off

9  the oldest of the documents.  You know, the class period goes

10  down to -- back to 2014.  And I thought we had a rough

11  agreement on this to not do the oldest documents, but to extend

12  the time frame, and I understood that HII had agreed to extend

13  it into at least May 2019.  Our position is that it should be

14  extended through 2020.  And that position was corroborated

15  yesterday with this document production from TrustedForm, which

16  we described in our, in our filing.  And I, I apologize that we

17  did it yesterday, but we got the information yesterday.

18  　　　　　And again, we think it's the information we should

19  have gotten last year in January, but -- which is why we put

20  that in.  And we only put it in yesterday because we learned it

21  yesterday.  Our position is that it should be 2017 through

22  2020.

23  　　　　　THE COURT:  Miss Chattin, your response on that.

24  　　　　　MS. CHATTIN:  Sure, Your Honor.  This is Danielle

25  Chattin for HII.  The reason why we suggested an end date at

1   the end of 2018 is because those are the documents that we

2   collected pursuant to the parties' prior agreement on ESI,

3   which is reflected in the ESI protocol we filed with the Court

4   in June.  So we don't -- at this point we don't -- we have not

5   collected documents past 2018.  We can do that.  It will take

6   time.  And the reason why we agreed to that end date is because

7   that is the -- the plaintiff filed this lawsuit in April 2018.

8   So it was a, it was a natural cutoff point for discovery.

9            And to respond to the suggestion that we should go to

10  the end of 2020, you know, the discovery in this case that's

11  already occurred, including the deposition of the corporate

12  representative of Health Advisors of America, which is the kind

13  of middleman entity that, that supported sales agents that is

14  the focus of plaintiff's complaint, HAA, as they're called,

15  they were in business from 2017 through May 2019.  And so from

16  our perspective anything after May 2019 would not be related to

17  the claims in this case.

18           So, so we do, you know, acknowledge that there is a

19  five-month kind of gap at the end of our discovery cutoff.  But

20  given -- given where we are in the case and our prior

21  agreement, the cutoff is February 2018.  The fact that we, you

22  know, collected documents from the client pursuant to that

23  agreement, you know, our position is -- and I'll add that the

24  fact that documents, you know, that were created after the

25  filing of the complaint are, you know, more and more likely to

1    be privileged and, and discussing matters leading to

2    litigation, you know, our perspective is to get Mr. Burke the

3    relevant documents that he needs in an efficient way.

4           The focus should be on the documents we have now that

5    reflect the majority of the relevant time period for the, for

6    the claims in this case and get through it and produce those

7    documents by March 11th.

8           Now, if there are documents -- you know, and this

9    goes for pretty much everything today that we're going to talk

10   about today.  Obviously if there are things in our document

11   production that, you know, make clear that Mr. Burke needs

12   additional discovery, if we need to do targeted searches into

13   May 2019, we, we, of course, will, will work with Mr. Burke on

14   that when the time comes and, and, Your Honor, if necessary

15   when the time comes.  But to move forward now and, you know,

16   progress the case, we think the best course is to review the

17   documents we have for the relevant time period and revisit any

18   targeted later searches if we need to.

19          THE COURT:  Yes.  Well, I think Mr. Burke is going to

20   say the time, the time is now.  The time is not in the future,

21   which is part of what frustrates him about where the discovery

22   is going in this case.  He gets in his view stuff (inaudible)

23   and then he finds out about much more stuff and then he

24   schedules depositions, and he has to reschedule the depositions

25   because he's seeing more information.  So his, his view is now

1    is the time to determine the relevant time period to the extent

2    it wasn't determined before.  Now is the time to get the

3    searches run, and now is the time to do all that stuff and not,

4    not later when something else comes up.

5         So I, I figured that I was going to need more, more

6    time to review all the filings that I got.  So I'm going to

7    talk to you a little bit more about what's on the table here so

8    I have a better sense.  But I'm going to -- I would like to

9    enter and continue the motion to compel to next Thursday,

10   February 10th at 2:00 p.m.  I'm going to still talk to you, but

11   I want to get a date on the calendar.

12        And I want to be able to read more carefully in the

13   light of what we talked about here today with the parties'

14   submissions, and including to see where I am on, you know,

15   whether I think somebody is not doing what they're supposed to

16   be doing.  I don't know if the 10th is going to work for me, or

17   I have to push it even farther.  I think actually I would push

18   it to Monday, the 14th at -- that's Valentine's Day.  So if

19   that's a problem for anybody, just let me know.  I don't want

20   to interfere with anybody's -- make that at, at 1:30 p.m. on

21   2/14 to enter and continue the motion.

22        Like I said, I, I want to discuss some of this other

23   stuff, but I know that I'm not going to be able to deal with it

24   all today.  So is plaintiff available at that time, 1:30 on the

25   14th?

1          MR. BURKE:  Yes.

2          THE COURT:  Or does that interfere with evening plans

3    or something?  I don't want to, I don't want to -- I'm

4    really -- I, I mean, it sounds silly on the phone, but I'm

5    really not trying to -- I mean, I'm just picking a date on the

6    calendar.

7          MR. BURKE:  Thank you, Judge.

8          THE COURT:  I don't even know what my plans are that

9    day actually.

10         MR. BURKE:  It does not interfere with anything for

11   the plaintiff.  That time and day works.

12         THE COURT:  I could actually do the morning too.

13   What about you, Miss Chattin?  It's an hour later I know in

14   Atlanta.

15         MS. CHATTIN:  Yes.  Thank you, Your Honor.  That's

16   fine for me as well.

17         THE COURT:  How about 10:30 a.m. that day?

18         MR. BURKE:  I've got another status conference at

19   10:00 o'clock in front of Judge Leinenweber.  However, it will

20   probably be over, but --

21         THE COURT:  He's quick.

22         MR. BURKE:  I think that he is.  I, I -- you know,

23   subject to that, I -- you know, we, we certainly don't have a

24   problem with 10:30.

25         THE COURT:  No, let's keep 1:30, if that's -- if both

1   of you are telling me the truth that I'm not interfering with

2   your schedules.  Now, I don't know that this is going to be a

3   real long hearing frankly after I've gone back and read some

4   stuff.  You just need some rulings.  But I'd like to set it for

5   there.  Both, both sides are saying yes.  You know, speak now

6   or forever hold your peace.  Okay.  Hearing nothing, I'll enter

7   and continue the motion till then to the extent I'm not ruling

8   now.

9           All right.  I, I want to read what you're saying

10  about time frame.  I want to read my prior orders too.  I don't

11  know why this didn't come up.  I probably should read the ESI

12  protocol too, because time frames shouldn't really be an issue

13  right now.  I'm not sure why it is.  And plaintiff is now at

14  least throwing you a bone I think, Miss Chattin, to say he'd

15  agree to 2017 to 2020.  Yes, it goes past the date of the

16  filing of the lawsuit.  It probably goes -- it may go past his

17  class period too.

18          If it's past your class period, Mr. Burke, why are

19  documents after your class period going to be relevant here,

20  and what kind of documents are we talking about?  The

21  complaints?

22          MR. BURKE:  Thanks, Judge.  It's not past our class

23  period.  I haven't had an opportunity to reply.  First of all,

24  we have injunctive relief for each of our claims that we're

25  seeking.  The calls, the calls continue.  And our internal do

1    not call claims do not depend upon Rising Eagle or Health

2    Advisors of America.  And our class definition does not depend

3    on, on those terms.  And it is our understanding based on the

4    discovery we've received and the -- that HII -- well, I don't

5    want to get into the merits.

6          This is still going on as far as we know.  And so our

7    internal do not call class is not dependent on Rising Eagle or

8    Health Advisors of America.  And, you know, we fully intend to

9    file a motion to enjoin further telemarketing by HII.  But we

10   can't do that until we have the discovery.  And just one more

11   point.

12         THE COURT:  Well, before you give me the one more

13   point, what kind of documents are we talking about that fit

14   these time frames?  What documents specifically by subject

15   matter are we, are we discussing?  Every single document that

16   HII produces or just a pure subset of documents that you're

17   proposing be searched for and produced from 2017-2020?  I mean,

18   they're -- I think they're proposing 2017 to 2019.

19         MR. BURKE:  Well, we're just seeking the documents

20   that hit on the search terms.

21         THE COURT:  Okay.

22         MR. BURKE:  So that's where it's coming from.  I mean

23   our entire, our entire litigation of the case up until

24   essentially yesterday was -- and I -- was based on incorrect

25   information that was provided in sworn affidavits.  And so I

1    have -- I mean, it just blew my mind.  Again, I apologize for

2    bringing that -- filing stuff the day before a hearing.  But as

3    far as I can tell, and you're going to review these documents,

4    the entire defense of the case has not been truthful.  And so I

5    am having a hard time answering all these questions.  My final

6    point was that I, I would like an opportunity to file something

7    on this finding.  Maybe a three-page brief.  If we're seeing,

8    Your Honor --

9         THE COURT:  I can, I can move that back -- I mean, I

10   can move that date.  I mean, obviously it was all -- I don't, I

11   don't know that I need a fire drill.  But I want to have what I

12   need to have in order to make these decisions.  And if I have

13   to move the hearing date, I will.  I just -- hold on for a

14   second.  Hold on for a second.  My ear pods or ear -- can you

15   hear me there?

16        MR. BURKE:  Yes.

17        MS. CHATTIN:  Yes.

18        THE COURT:  Okay.  My ear pods, whatever they're

19   called, have just been doing this thing this morning so they

20   failed.  Okay.  You want to file something on a time period and

21   or on anything else, or just time period?

22        MR. BURKE:  I think we can file it on the time

23   period, and we can do it by the 8th or the 9th if we keep that

24   14th deadline -- hearing date.

25        THE COURT:  And your estimation of March 11th

1    production, Miss Chattin, was conditioned on you knowing today

2    what you're producing, right?  To the extent that you don't

3    know the time period until Valentine's Day, you can't commit to

4    March 11th, although you could begin (inaudible) something.  I

5    don't know.

6            MS. CHATTIN:  This is Danielle Chattin.  That's

7    right, Your Honor.  That obviously we'll do the best we can,

8    but the, the only estimate I can give you today is based on the

9    documents we have to review.  And I have a number of things to,

10   to respond to what the plaintiff said, but I'd be happy to put

11   it in the briefing, if you'd prefer.

12           THE COURT:  Because you're going to be responding --

13   you want to respond to what he would file on the 8th, is that

14   what you're saying?

15           MS. CHATTIN:  Except, Your Honor, we're happy to put

16   it in the brief at the same time or respond to plaintiff, but I

17   do think there are things that we'd like to say in response

18   based on at least what he's presented this morning.  So we'd

19   (inaudible) Your Honor on how to proceed.

20           THE COURT:  So let me just reconstruct this here for

21   a second.  I see.  I hadn't appreciated this as much before.

22   So you filed -- Mr. Burke, you filed your motion to compel on

23   1/14.  Then I set a briefing schedule, and I set this hearing.

24   And then -- but then on 1/20 you filed your, your own status

25   discovery report saying that on the evening of Friday, the

1   14th -- Friday, January 14th probably after you filed your

2   motion to compel.  True, after you filed your motion to compel?

3          MR. BURKE:  It was contemporaneous.

4          THE COURT:  Okay.

5          MR. BURKE:  Mr. Marovitch was filing it while we were

6   conferring.

7          THE COURT:  Okay.  You found out that there was a

8   whole bunch of stuff missing.  It then caused the multiple

9   status reports, right?

10          MR. BURKE:  Yes.

11          THE COURT:  And so the reason we're all in the

12  flummoxed here is because the original motion to compel was

13  only premised on the consumer complaints, the customer

14  information, and the financial information.  And then you find

15  out, oh, my goodness, you've got this other problem which

16  you've been informing the Court about in the status report and

17  the supplemental status report, including a production that

18  happened yesterday, which then made you believe that you're

19  not -- you weren't getting straight answers or straight

20  information from the defense, right?

21          MR. BURKE:  Yes.  And this is all in the context of a

22  discovery deadline, which was Friday.

23          THE COURT:  Okay.

24          MS. CHATTIN:  Your Honor, may I just respond.

25          THE COURT:  Yes.  I'm just, I'm just -- part of the

1   problem is, you know, you review all this stuff electronically.

2   You don't see it -- I'm going to give you time to respond,

3   Miss Chattin.  Don't worry.  You review it electronically, and

4   the, the chronology sometimes gets a little lost.  And then the

5   supplemental status reports left me frustrated because they

6   dealt with things that were not in the motion to compel, but

7   plaintiff filed the motion to compel before he had a full

8   picture of what else was going on.  So it's been a moving

9   target along with the January 30th discovery close date, which

10  the parties were not sure was going to be extended.

11          All of this tells me that I do need briefing on the

12  time period because I don't know that that's been fully vetted

13  as part of the motion to compel per se.  Even if I, even if I

14  construe plaintiff's status report, (inaudible) really requires

15  a motion, which I should do.  I need some -- I need some more

16  on that.  Hold on.  I'm just looking at something.

17          Okay.  Miss Chattin.

18          MS. CHATTIN:  Thanks, Your Honor.  This is Danielle

19  Chattin for HII.  I just wanted to make clear about the

20  chronology, which I agree is, is important.  You know, we, we

21  did inform Mr. Burke about the discovery issue as soon as we

22  found out.  It was before he filed the motion to compel.  We

23  were trying to explain that the new discovery would, of course,

24  moot a lot of the issues in the motion to compel.  One of the

25  issues we think was already moot, but that we've already

1    briefed that.

2              And over the next -- over the weekend, you know, we

3    worked pretty hard to, to provide Mr. Burke with a proposal for

4    completing the ESI production in the corrected manner, and try

5    to confer about search terms, try to confer about the time

6    frame.  And wanted to -- wanted to file a joint status report

7    to Your Honor with our joint proposal.  That's what we were

8    trying to discuss with Mr. Burke.  Mr. Burke instead filed his

9    unilateral status report without telling us he was going to do

10   so.

11             We still tried to confer with him about resolving the

12   motion to compel, including asking for an extension of our

13   response date so that we could present to the Court a proposal

14   to narrow that.  He rejected that.  And here we are.  And the

15   status report he filed last night I want to make clear the

16   production that he references was a third party production, it

17   was about 1500 documents, and he produced it to us last night

18   at 6:00 o'clock at night and then filed the status report at

19   11:00 o'clock last night, at least Eastern time.

20             So I, I just want to make clear it's not our

21   production that we made that we dropped on them last night.  It

22   was a third party production that he dropped on us.  So we

23   haven't even been able to meaningfully evaluate it.  You know,

24   I know that Your Honor doesn't want to get into it, but we, you

25   know, strongly dispute that anything in those documents was

1   inconsistent with anything, any of the representations that HII

2   has made prior in the case, or inconsistent with anything that

3   Mr. Burke has known for some time through discovery.  And we

4   can get into that in the, in the briefing on, on the time

5   frame.

6          But I do want to make clear, you know, I understand

7   the Court's frustrated.  I understand plaintiff's frustrated.

8   HII is doing the best we can.  And, you know, we're trying to

9   work with plaintiff, and, and in some cases it hasn't, hasn't

10  been reciprocal.  So when you went over that chronology, I just

11  really wanted to make that clear.

12         THE COURT:  Okay.  Thank you --

13         MR. BURKE:  This is Alex --

14         THE COURT:  Go ahead, Mr. Burke.

15         MR. BURKE:  Thank you.

16         THE COURT:  This will be hopefully the last word on

17  this particular issue.

18         MR. BURKE:  Yes, I know.  Well, you know, maybe what

19  we ought to do is -- and I, and I dispute some, but not all of

20  what Miss Chattin just said.  But maybe what we ought to do is

21  have HII file something and then, and then we'll file a reply.

22  Because they're in the driver's seat as far as what documents

23  hit on search terms, how many hits there are, what the volume

24  is.  I'd like to hear how Miss Chattin can say that what we,

25  what we filed was incorrect or how HII didn't know the stuff

1   that we say they, they knew.  I'd like to, I'd like to see
2   their response to that and, and reply to it.

3           So my proposal would be for, for them to file
4   something and then us to, to reply.  And again, I would propose
5   that we have page limits for this stuff because the paper's
6   getting voluminous.

7           THE COURT:  Well, let me just say this to maybe save
8   some time here:  Unless I'm being asked to sanction HII for
9   discovery misconduct in terms of barring the plaintiffs or
10  precluding certain things from going to trial, you have 37 type
11  stuff, it's not -- what's more important to me is getting
12  discovery done rather than whose fault it was.  I mean, I, I've
13  read that HII says is the cause of them learning for the first
14  time on January 14th that their productions were not -- that
15  they didn't look in the right places for things.  I know, you
16  know, you say how can you possibly get to that point on
17  January 14th.

18          But unless someone is asking me to sanction them for
19  discovery misconduct that I, that I think is more appropriately
20  in front of me, how are you going to get discovery done in the
21  case for it to be decided on the merits or class can be
22  certified or not and all the rest?  And that's why I'm trying
23  to push aside, you know, whose fault it is and who
24  intentional -- and then there's this other issue you're saying
25  that, you know, you've been lied to about, about a bunch of

 1   stuff.  I mean, I haven't completely parsed all of that.

 2            MR. BURKE:  And, Your Honor --

 3            THE COURT:  Hold on.  I'm sorry.  I paused to take a

 4   breath and look at something, but let me finish what I'm

 5   saying.  I'm not fully, fully versed on what the declaration

 6   said or didn't say.  I don't know how that is informed by them

 7   looking at the wrong year but not seeing certain documents.  I,

 8   I don't know.  And I, I appreciate the third party production

 9   that maybe you would say undercuts everything you've been told

10   by somebody at, at HII.  But I, I haven't gotten to the point

11   of knowing that misconduct has occurred or whether I need to do

12   anything about it.

13            But what I'm -- unless I'm in that ballpark, what I'm

14   more concerned about is what the search terms are, what the

15   time period is going to be, when the documents are going to be

16   produced, and when we can finish discovery.  If and when I need

17   to get to part of who's doing -- you know, who's playing games

18   or, you know, downright, you know, not telling the truth to the

19   Court, I can, I can get to that.  I can wade into that if

20   whenever I need to do it.  But there's nothing in front of me

21   right now that's really asking me to do it other than, you

22   know, allegations going, going both ways.

23            So, you know, if, if what you really need to

24   determine is what search terms are going to be run and what

25   period of time over the database that HII now is going to agree

1   to produce documents and when those documents are going to be

2   produced and what discovery is going to be had after that, I'm,

3   I'm trying to do that.  And if there's a filing that needs to

4   be -- if the only issue that a filing needs to be made on is

5   time frame, I am fine with the defendants' suggestion to narrow

6   the time frame you're asking for for them to submit something

7   first or for you to respond to it.

8           I'm not, I'm not a hundred percent sure we have a

9   terrible dispute on that.  I mean, you're asking for them to

10  look at documents -- and again, I'm assuming that these search

11  terms are over an entire universe of documents and not some

12  type of subset relating to things that were in your motion to

13  compel that was filed before you knew about this trove of

14  documents.  That was the complaints, the consumer data, and the

15  financial information.

16          And is it plaintiff's position now the time frame

17  that they should run for 2014 to 2018 or 2017 to 2020?

18          MR. BURKE:  2017 to 2020.

19          THE COURT:  Okay.  And defendants' position on that

20  is what, 2017 to 2019?

21          MS. CHATTIN:  This is Danielle Chattin for HII.  We

22  propose the beginning of 2017 through end of 2018.  And --

23          THE COURT:  2018.

24          MS. CHATTIN:  Yes, sir.

25          THE COURT:  Okay.

1    MS. CHATTIN:  And so, Your Honor, if we, if we did

2  extend it two more years, that's doubling the time frame.

3  That's probably doubling the hits and, you know, materially

4  changing the review universe.  So, you know, obviously we'll

5  cross the -- we'll have to come to -- cross that bridge when we

6  come to it in terms of how that affects timing.  Whether we

7  need to revisit search terms.  And again, you know, we dispute

8  that anything after at the latest May 2019 is relevant to the

9  plaintiff's claims.

10    And, Your Honor, plaintiff knew about -- plaintiff

11  submitted a declaration from the owner of HAA in September 2020

12  to the Court that said HAA was in business from 2017 to

13  mid-2019.  And he agreed to the time -- the ESI time frame of

14  cutting off at 2018 the following June.  So all of this has

15  been known.  We collected documents based on our agreement, and

16  that's where we're at now.  And it would be a significant

17  undertaking to collect more documents, to review them.  And

18  we're just trying to move the case along as best we can here.

19  So we'll be happy to put this in briefing, but that's, that's

20  generally HII's position on, on the time frame.

21    THE COURT:  Okay.  You're going to need to put it in

22  writing because I heard the words you were saying, but I'm not

23  appreciating completely the significance of this time frame

24  issue.  I would love to be able to resolve it on the spot, but

25  I -- I don't feel comfortable doing that on the spot without

1    enough information.  So we'll call this HII's submission

2    concerning time frame for its remaining searches.  And when do

3    you want to file that?

4            MS. CHATTIN:  I mean, next week.  I think Mr. Burke

5    suggested the, the 9th.  So that is fine with us.

6            THE COURT:  If you get it on the 9th, Mr. Burke, when

7    do you want to respond?

8            MR. BURKE:  Let me pull up my calendar.  We would

9    like -- this may blow the 14th for the date, but we'd like a

10   week to respond.

11           THE COURT:  2/16.  You're going to run smack into

12   when I'm out of town then.  Well, on that time frame we're into

13   March to resolve this issue.  But can it be teed up much more

14   quickly?  Let me just pause to think about that.

15           MS. CHATTIN:  And, Your Honor, this is Danielle

16   Chattin from HII.  Just, just to let the Court know, we've

17   already started reviewing the documents that we have, and we'll

18   continue to do that just so we don't hold this up.  But I just

19   wanted to be clear we're not, we're not going to -- we're not

20   going to hold it up based on this ruling.  We're going to,

21   we're going to continue reviewing documents.

22           THE COURT:  Well, I just don't know how complicated

23   this, this time frame issue is.  I mean, usually this is not a

24   complicated issue.

25           MS. CHATTIN:  Yes, Your Honor.  This is Danielle

1  Chattin again.  The reason why we need a little time is if

2  we're going to have to assess the burden and all that, we're

3  going to need to collect documents.  There's really no way for,

4  for us to be able to present a proposal on search terms and

5  timing, you know, if we don't have the documents.  So it just

6  takes us some time.  We only collected documents based on the

7  parties' prior agreement.

8             THE COURT:  Yes.

9             MS. CHATTIN:  So that's just where we're at.

10             THE COURT:  Yes, but up until now you've produced

11  documents for a time frame of 2014 to 2018, right?

12             MS. CHATTIN:  That's right.  And, Your Honor,

13  actually to correct that, we're only talking about the ESI.  We

14  produced documents outside of ESI protocol for later time

15  frames than that.  And we're still willing to make targeted,

16  you know, collections past that time frame.  What we're talking

17  about is a, is a full on ESI search and review.

18             THE COURT:  I understand.  But up until now the time

19  frame that everybody has been operating in for production of

20  documents is 2014 to 2018, right?

21             MS. CHATTIN:  That's correct.

22             THE COURT:  And, but you were also saying that

23  documents prior to 2017 really are not necessarily that helpful

24  to plaintiff, and plaintiff may be conceding that himself by

25  suggesting a time frame here of 2017 to 2020.  And why is that?

1  What happened in -- what happened -- why are documents before

2  2017 not helpful?

3           MS. CHATTIN:  This is Danielle Chattin.  I'm not sure

4  if you're asking me, but I'm happy to answer.  The reason is

5  there is a specific company called Health Advisors of America

6  that generated the allegedly violative telemarketing leads

7  that's the subject of plaintiff's complaint.  That entity was

8  only in business from 2017 to mid-2019.  So there -- via the

9  discovery that's already been produced there does not appear to

10 be violative -- or, you know, allegedly violative telemarketing

11 activity before that time that is relevant to plaintiff's

12 claim.

13          THE COURT:  I got it.  And in terms of the time frame

14 that HAA was in business -- and I'm well aware of who HAA was.

15 We had a lot of dealings on HAA before you got in the case,

16 Miss Chattin.  But as to the time period that HAA was operating

17 in 2017 to mid-2019, is that time frame right, Mr. Burke?

18          MR. BURKE:  That's right.  And I would just put a, a

19 point on Miss Chattin's comments about the time frame.  We're

20 willing to, to ditch 2014 to 2017 not because nothing bad

21 happened, but because we think the more recent time period is

22 more important, and we're doing this as a concession.  We're

23 not just conceding that nothing bad or nothing meaningful

24 happened during that early time.  But this is us trying to be

25 flexible and eliminate some documents.

1    THE COURT:  Yes, I understand that.  And you're not,

2    you're not prejudiced at all by doing this.  It makes sense to

3    try and do something in a compromise where you get the

4    documents you want sooner rather than later.  So if, if HAA

5    went out of business mid-2019, why are you proposing now a

6    document search period of 2017 to 2020 when you previously

7    agreed to a 2014 to 2018 time frame?

8             MR. BURKE:  You know, it may be that --

9             THE COURT:  Hold on.  Let me amend my question.  Why

10   are you -- forget about why you originally agreed to 2014 to

11   2018.  That was potentially your class period or whatever.  I

12   don't know.  But 20 -- why if, if HAA went out of business in

13   the middle of 2019, why are you asking for documents through

14   2020?

15            MR. BURKE:  Because we have injunctive relief claims,

16   and internal do not call claims that, that do not -- that are

17   not limited to HAA.  So although HAA went out of business,

18   there are scores of telemarketers that are still making calls.

19   In fact, they're calling our clients still.  And so 2020 is a

20   concession for us.  I mean, really it should be to the present

21   day ongoing.

22            THE COURT:  Yes.

23            MR. BURKE:  I mean, you know --

24            THE COURT:  But that, but that never happens.  So but

25   previously knowing all that, knowing that you were going to

1    seek injunctive relief, you still agreed to a document

2    production period of 2014 to 2018.  And those are the documents

3    that previously were produced by HII and maybe even NCE, right?

4            MR. BURKE:  Yes.  And it was in the context of the

5    information that we knew at the time, which included some of

6    the false information that had been provided.  It was also a

7    give and take with counsel, and I think it was a mistake

8    frankly.  But it was a reasonable mistake under the

9    circumstances given the information that I had at the time.  I

10   couldn't conceive of HII truly being involved with these phone

11   calls, a phone call to Miss Bilek in -- on September 20th,

12   2018, you know, six months after they learned about our

13   lawsuit.

14           And so, you know, it was a mistake, but it was a

15   reasonable mistake given the information that I had at the

16   time.  I truly thought that HII would have stopped the

17   telemarketing, but it turns out that they did not.  And it

18   turns out pursuant to the documents that we produced, that HII

19   was paying for HAA's telemarketing compliance, as crummy as it

20   was.  And so it's not mud -- it's not, it's not mudslinging,

21   Your Honor.  It's trying to give context for what we're, what

22   we're dealing with here.  I know that's a long winded answer,

23   and I'm talking about stuff you asked me not to talk about, but

24   it, but it all matters.

25           THE COURT:  I understand why you, you believe it

1    matters, and I did read your submission, and I did read the

2    e-mail and the, the handwritten notes on the document you

3    produced, which you're telling me shows that HII was paying for

4    HAA's compliance and insurance, right?

5            MR. BURKE:  Yes.  And there are invoices running into

6    2019 -- to 2020 we have invoices.  And those invoices we got

7    yesterday from this third party.  HII has consistently denied

8    that it had any relationship whatsoever with HAA.  And then

9    yesterday we get, you know, a year and a half of invoices,

10   showing that they were paying for HAA's TCPA compliance, and it

11   was crummy compliance, but they were paying for it.

12           THE COURT:  Well, my, my recollection is that HII had

13   parsed some words with respect to what kind of -- I think they

14   said they had no contractual relationship with HAA or things

15   like that.  I'm not, I'm not exactly -- have all of that in

16   front of me.

17           MR. BURKE:  Yes.

18           THE COURT:  But --

19           MR. BURKE:  I mean that's what we thought at the

20   time, we thought it was a lie.  And then we learned yesterday

21   that it was.  I guess that's the, that's the answer.

22           THE COURT:  Look, you know, I -- the word lie is a

23   real, you know, red -- a hot, hot lie -- a hot word, right.  I

24   mean, like when you call somebody a fraudster.

25           MR. BURKE:  Agreed.  Agreed.  I don't use it -- I

1   don't use it lightly, Judge.

2           THE COURT:  Well, I mean, that this, this proves

3   things that you've been told in the past, whether or not the

4   person who told you those things in the -- and who knows.  I'm

5   not going there right now.

6           Miss Chattin, given that HAA you say, you know, may

7   or sometime in mid-2019 ceases to exist, what's the

8   justification from your proposal that you produce documents

9   only from 2017 to 2018 when HAA was doing business at least

10  until mid-2019?

11          MS. CHATTIN:  Sure, Your Honor.  The reason is that

12  Mr. Burke knew that HAA was in business through 2019 a year and

13  a half ago.  He agreed to -- you know, you have -- as Your

14  Honor said, you have to agree to some kind of time frame to

15  govern ESI.  It can't just go on indefinitely forever.  Mr.

16  Burke agreed in June, you know, eight months after at least

17  that he filed the declaration that said that we knew when HAA

18  was in business until agreeing to cut off discovery in 2018.

19  We collected documents for a five-year time frame, and based on

20  that agreement and that's what we have.

21          And, you know, honestly, you know, changing the time

22  frame from 2014 to 2018, just pushing it two more years really

23  doesn't -- it's not really a concession because it's the same

24  amount of time.  It's just moving the goal post.  And, you

25  know, we'd honestly be better -- it would be less for HII at

1   this point to just review the documents back to 2014 because

2   those are the ones we have.  We're trying to narrow it to get

3   it based on the parties' agreement to more efficiently target

4   responsive documents.  You know, if we have to keep moving the

5   goal post, it, it just takes more time for us to do that.  And

6   this is why the parties agreed to and filed an ESI protocol

7   back in June.

8           So that's our position.  If we need to go past 2018,

9   we're going to need to perform a collection and do an analysis

10  of what the burden would be and revisit (inaudible).

11          THE COURT:  And I, I haven't jumped into the ESI

12  protocol that was filed back in, in June.  But is that -- does

13  that protocol say that the time period for the production of at

14  least ESI is 2014 to 2018?

15          MS. CHATTIN:  It does, Your Honor.

16          MR. BURKE:  It does, Judge.  It does, Judge.  But the

17  reason that we agreed to, and I said it was a mistake today,

18  and I agree that it was, was that I was deceived.  I mean, of

19  course, we wouldn't agree to a, a deadline -- a, a stoppage

20  date that lopped off important documents like HII paying for

21  HAA's TCPA compliance.  And, you know, I made clear when we

22  were conferring about those dates that we expected HII to be

23  straightforward with us as to what the relevant time period

24  was.

25          And, I mean, the documents -- the, the red hot

1  documents that we've gotten both from HII and from third

2  parties, mostly from third parties frankly, a lot of them are

3  outside that period.  They're more recent.

4          THE COURT:  Okay.

5          MR. BURKE:  So, you know --

6          THE COURT:  Okay.  There's a little bit, you know --

7  you know, this is doing too much on the fly.  I don't think I

8  need briefing on the timeline issue now that you -- now that

9  you've fleshed it out, because the real issue on the timeline

10  issue at least from plaintiff's perspective, plaintiff does not

11  dispute that plaintiff previously agreed to a relevant time

12  period for production of documents including ESI of 2014 to

13  2018.  The real issue is based upon information that you have

14  received since that time you believe that that time frame is

15  too short, frankly, not only for this supplemental production

16  that it has been -- but for the whole production that they've

17  been doing from the get-go.

18          And you agreed to that time period, and that was

19  fairly new that at least at sometime before today, much earlier

20  than today probably that given that HAA was out of business as

21  of the middle of 2019, which is at least a year and a half

22  after the time period you agreed to back then when you people

23  agreed to time periods.

24          It sounds to me like what this really is, is

25  plaintiff wants to revisit the time frame not only for the

1   supplemental production but for everything, and that's a motion

2   that's not in front of me.  That's either a motion to modify

3   the ESI protocol or to do something with respect to discovery.

4   And it's based upon what you say is, you know, fundamental

5   misrepresentations that were made to you that caused you to

6   agree to something you shouldn't agree to.  None of that is in

7   front of me right now, I don't think, in the context of these

8   motions, at least stated that way.  Correct, Mr. Burke?

9            MR. BURKE:  I think that I agree with basically

10  everything you've said except that the complaints and the

11  customer data, which we still don't have complete, we don't

12  have any -- well, we have -- both of them are incomplete -- are

13  not subject to the ESI protocol.

14           THE COURT:  Right.  Okay.  Okay.  But other than

15  that, you don't disagree with what I said, right?

16           MR. BURKE:  Yes, that's right.

17           THE COURT:  Okay.  And with respect to the complaint

18  which, which is in the motion to compel, I don't know that

19  there's really a dispute.  There's a dispute about redactions

20  for the consumer data.  But with respect to the complaints,

21  isn't it true that they are proposing -- they don't have

22  essentially a depository for all this or whatever.  They're

23  proposing to continue to get you what they can find, and you're

24  not really content with what they could find.  You want me to

25  say produce everything that exists even if they don't know it

1    exists.  But right now at least -- at least substantively

2    they're prepared to get you the complaints, and they're, and

3    they're looking for them, right?

4         MR. BURKE:  Well, I don't -- I'm not sure.  I'd like

5    to hear what HII has to say about it, because I've tried to

6    confer about the complaints because we've, we've -- you know,

7    in December and January we received documents that show a

8    roadmap for where to find complaint related materials.  And we

9    put that in our motion, and they didn't respond to that.  And

10   so -- and then I tried to confer about, about these -- you

11   know, these roadmaps with Miss Chattin.  In fact, before we

12   filed our motion, I tried to, to confer about them, and the

13   conversation was shut down by Miss Chattin by saying I'm not

14   talking about the complaints, and I'm not talking about these

15   policies with you anymore, and the phone call ended.

16        I absolutely have tried to confer about this stuff,

17   but that's an aside.  You know, we've presented these policies

18   and this deposition testimony that show where these complaints

19   exist.  And we've asked them to find them in those places.

20   And, you know, I haven't received any sort of assurance or any

21   response at all that they're going to do that.  So that's our

22   beef with the complaints.

23        And, and again, I mean, we filed the motion on the

24   complaints only after we had that conversation that was shut

25   down by Miss Chattin, and in the context of the discovery

1    deadline that was in like two weeks.  I mean, how long do we

2    have to hear them saying we're going to give you this stuff and

3    then we just don't get it?  I think the motion was ripe.

4          THE COURT:  Well, maybe it was ripe, but it doesn't

5    sound like your first meet and confer process.  What you're

6    saying is they refused to meet and confer about this issue the

7    way you wanted them to meet and confer about those issues.  And

8    Miss Chattin probably wants to respond to that particular issue

9    now.  I also want to know, Mr. -- but before she does that, I

10   have one question for you, Mr. Burke.

11         Do you concede that in this last production of

12   documents based on everything you've received prior to now, but

13   this you don't?  I mean, this is -- you don't agree with the

14   defendants that them producing to you materials from 2014 to

15   2017 is, is not helpful, right?  You would agree to the

16   2014-2018 -- you would agree to the 2014-2018 period.  You've

17   seen documents.  Then as a compromise you were willing to do

18   2017 to 2020, but you're not conceding here that 2014 -- that

19   they shouldn't have to produce to you from this new trove of

20   documents for the same time period they previously produced,

21   right?  You just think it should be for a later period of time

22   because you were, quote, unquote, misled about the end date.

23   But you would say produce 2014 to 2017 for sure even though you

24   want us to go to 2020, right?

25         MR. BURKE:  The proposal to shift the dates was a

1   compromise.  And so, you know --

2           THE COURT:  But that's not responsive --

3           MR. BURKE:  And HII agreed in an, in an e-mail.  So I

4   mean, I don't agree that '14 to '17 is, quote, irrelevant.

5   But, on the other hand, I think that the more recent stuff is,

6   is much more probative than relevant, and that's why I proposed

7   it.  And, and so I, I think that answers your question.

8           THE COURT:  Not really.  But this is my decision on

9   the timeline or the time frame at least as of, as of now on

10  what has been filed currently as of now, which is that HII

11  should produce documents for the previously agreed upon time

12  frame from 2014 to 2018 in this new supplemental production of

13  documents that they're going to make.  I also agree with the

14  concession Miss Chattin made.  I think that in terms of running

15  search terms, just in order to get that done in the absence of

16  any compromise from plaintiff on this, that they should run the

17  search term complaint within 20th call even though that adds

18  another 5,000 documents by their count.

19          I have no real way of determining whether the 10

20  extra words, it means anything or not.  The only way I would

21  really be able to do that was to appoint a special master.  You

22  would split the cost of the special master, and that special

23  master would determine from his point of view whether that,

24  that means anything or not in the context of this case.  In the

25  absence of that -- and I don't think you guys want to pay for a

1    special master.  HII probably would prefer to pay for the
2    search of the additional documents.

3         You understand that the search terms would be
4    complaint within 20th call.  Plaintiff's concession would
5    split, would split the dominant search terms and the time
6    period for this next production of documents to what it has
7    been, 2014 to 2018 unless plaintiff is going to move more
8    broadly on this, you know, beyond the ESI protocol.  And I
9    know -- I think -- I understand the ESI protocol doesn't
10   include a part of the complaints.  So I (inaudible) includes at
11   least part of that, who knows.  But my decision on the time
12   frame based on what I know now is 2014 to 2018.  If plaintiff
13   wants to move more broadly because of what I just said, that's
14   fine, and I'll entertain that motion.

15        I am going to -- I appreciate that HII, Miss Chattin
16   said is going to go through the documents anyway to get this
17   done.  Miss Chattin, tell me what you have to say on what Mr.
18   Burke said, including the issue of the complaints.

19        MS. CHATTIN:  Yes.  Thank you, Your Honor.  First,
20   just to -- I know I said this before, but I just want to be
21   clear.  If, if the time frame is being extended again back to
22   2014, we -- I'm going to need to, to extend the -- to determine
23   what the volume is and how that impacts the timing of our
24   review based on the search terms.  It might double it.  So I'm
25   just -- I'm going to need to get back to the Court on a doable

1  document completion deadline, but --

2          THE COURT:  First --

3          MS. CHATTIN:  -- but I do appreciate the clarity.

4          THE COURT:  Before you do that, before you do that,

5  because I had entered and continued the motion for a hearing

6  next -- to next week anyway, talk to Mr. Burke, talk to Mr.

7  Burke about whether in the interest of timing and efficiency,

8  he will agree with you, and you can produce these documents for

9  this purpose between 2017 and 2018.  And also see whether you

10 could agree, for example, that in return for that concession

11 you would produce again this next group of documents to

12 mid-2019 or to the end of 2019, that you add one year on the

13 back end but takes off years on the front end.

14         I mean, it's, it's worth a conversation.  Maybe you

15 don't want to do that for whatever precedent it would be for

16 the -- you know, what you've already done.  I get that.  But

17 I'm going to, I'm going to enter and continue the motion

18 anyway, so you can have that conversation before that.

19 Understood?

20         MS. CHATTIN:  Yes.  I appreciate that, and we'd be

21 happy to do that.  Thank you, Your Honor.

22         THE COURT:  And then briefly on this issue about the

23 complaints and about whether you're looking in the right place

24 or not following his roadmap, I mean, I appreciate what you

25 said in your filing that they're not in all one place and you

1    have to find them in different places.  But that's, that's not

2    different than doing anything else in document production

3    sometimes.  Sometimes clients don't have the documents where

4    you want them.  But what's your take on what he was saying, and

5    what are you planning on doing with respect to producing the

6    complaints?

7                MS. CHATTIN:  Thank you, Your Honor.  Yes.  And, and

8    we have -- I have conferred with Mr. Burke about this for, for

9    hours and hours over the past several months.  So I, I agree

10   with Mr. Burke that we have tried to confer about this, and we

11   just -- you know, it seems that it's, you know, kind of

12   stuck -- you know, cross, cross paths every time we try.  So

13   I'll, I'll tell you what, what we've told Mr. Burke and what I

14   know right now.

15               Mr. Burke has TCPA compliance policies that he's had,

16   you know, since before (inaudible) involvement in the case.  I,

17   I understand it lays out certain people, individuals that

18   complaints are supposed to be transferred to.  As we told Mr.

19   Burke, we've interviewed many employees at HII.  We've

20   interviewed former employees at HII.  We've, we've done

21   everything we can to investigate where these consumer

22   complaints have come from and where they would be stored.

23               Our understanding is that there's no, there's no

24   database where this stuff is logged.  There's no file where

25   this stuff is, is housed, and there's no particular person who

1   is, you know, in charge of these complaints.  Our understanding

2   of how this works is, you know, a consumer will, you know, send

3   someone at HII, whether it goes to a customer service e-mail, a

4   phone call.  Sometimes, you know, formal demand letters are

5   sent, you know, all the way up to HII's president and CEO and

6   general counsel making complaints that they have received

7   unsolicited calls.  These complaints are sent to the Compliance

8   Department via e-mail.

9           The Compliance Department will usually check if this

10  person is a customer already.  If the person is a customer and

11  they have a record in HII's database, they will log the

12  complaint there.  But almost all of the time these are not

13  customers.  These are not existing customers.  They are folks

14  who are complaining about being called.  So in that case the

15  people in the Compliance Department e-mail the complaint to the

16  sales representative and tell the sales representative to

17  forward these, these phone numbers and these, these consumers

18  to the insurance agent who actually makes the phone calls.  As

19  I'm sure you know, Your Honor, HII does not make any outbound

20  phone calls.  This is all done through licensed insurance

21  agents.  And so it's basically a chain of e-mails that, that

22  kind of are, are triggered by these complaints.

23          And Mr. Burke has a lot of documents reflecting this.

24  He's attached them to his motion to compel, you know, with even

25  the limited ESI production that we were able to do.  We've

1   included as custodians a VP and a Director of Compliance during

2   the entire relevant time period.  We've also included a senior

3   vice president, an executive of Commercial Operations.  These

4   are all people that would have been included in these

5   communications.  We also have, of course, the sales

6   representative who was in charge of the agents that worked with

7   HAA, and that's why Mr. Burke already has a lot of documents

8   reflecting these complaints, because he has these -- we have

9   these custodians identified.

10          So the best that we can do, Your Honor, to cover

11  these bases is to agree on search terms, search the relevant

12  custodian's e-mail and produce what, what hits.  That's,

13  that's -- you know, anything short of that or anything more

14  than that is really looking at every document.  There's no

15  other targeted way that we've determined we can find these

16  complaints and how they were investigated.

17          You know, Mr. Burke has suggested in his briefing

18  that we should include, you know, our CEO and our former CEO as

19  custodians because of, you know, kind of an offhand comment in

20  a document that the executives are concerned about TCPA

21  activity.  Of course, you know, that's, that's accurate.  You

22  know, everyone in the company is concerned with TCPA violative

23  conduct.  But we feel at this point, especially since we

24  believe a lot of this -- more of these complaint related

25  documents will be produced in our corrected ESI production with

1  the appropriate custodians and the appropriate search terms,
2  it's unnecessary to add any other custodians.

3          We've interviewed extensively people at HII to
4  determine who the right people would be to be included on these
5  communications, and we believe we have the right people.  And
6  adding additional custodians would only be duplicative of those
7  same communications.

8          The last thing I'll add, Your Honor, is we've asked
9  and asked and asked about potential logs or tracking devices
10  for TCPA related complaints.  Right now as of today I think
11  we've identified some spreadsheets that may have logged TCPA
12  litigants who, who have, you know, kind of filed suit against
13  the company and -- or against other companies.  This is a
14  tracking document that appears to have been maintained by the
15  legal department, but we're still trying to determine if it's
16  work product.  We're happy to work with the Court and plaintiff
17  on that.

18          But at this moment after extensive investigation,
19  that is all we can -- that we have been able to find on a, you
20  know, central files of complaints outside of basically what
21  would be reflected in e-mail traffic, which we are, of course,
22  willing to produce in a -- in, you know, the best way that we
23  can, which is through a search term review.

24          THE COURT:  Okay.  I hear you.  Is the issue on the
25  consumer data really redactions that you want to make?  That's

1   the dispute on the consumer data, right?

2          MS. CHATTIN:  This is Danielle Chattin for HII.  I

3   believe so.  We have agreed obviously to, to make the

4   production.  That is, you know, extremely burdensome, Your

5   Honor.  But -- and it's taking us a very long time because of

6   the, the volume of the data that we've had to synthesize and

7   analyze, but we are on a good track now to get that out to

8   plaintiff by that, you know, March 11th deadline.  I don't -- I

9   don't know if there's dispute about the timing, but, but our

10  position is that before class is certified plaintiff is not

11  entitled to, you know, private identifying information about

12  our customers, and basically just their names and their

13  addresses and their e-mail addresses.

14         We're happy to produce their phone numbers so that he

15  can analyze the third party data he has about the phone log, or

16  we're, we're happy to produce the information about the agents

17  that the -- that signed up the customer, the products that they

18  signed up for, the dates that they signed up for those

19  products.  Basically I think all of the information that

20  plaintiff would need to make his best argument on class

21  certification, which is I believe the purpose of this customer

22  data.

23         So the only information that we're suggesting to

24  redact would be the, you know, private information of our

25  customers who are still acting class members, and we think

1    there's good law in this Circuit that, that plaintiff is not

2    entitled to, you know, their names, addresses, phone numbers --

3    or excuse me, not phone numbers, e-mail addresses prior to the

4    class being certified.

5            So, so that's really all that we're suggesting that

6    we redact.  And we've done this previously when we produced our

7    do not call list.  We produced it upon at the time at least

8    agreement from the plaintiff that, that we could redact the

9    same information but produce the phone numbers and other

10   information like that.  So that's our, that's our position of

11   the only thing that we'd want to redact in terms of this data

12   and, and the timing of it.

13           THE COURT:  Okay.  Are you -- well, and then you have

14   raised that.  And it's just the small question to you, Mr.

15   Burke.  The issue with respect to the consumer data is the

16   names, addresses, and e-mail addresses, right?

17           MR. BURKE:  I guess so, Your Honor.  I mean, I

18   haven't received that stuff.  We, we --

19           THE COURT:  Yes, they're producing it.  They haven't

20   produced it yet, right.

21           MR. BURKE:  Yes.

22           THE COURT:  Yes, I get it.

23           MR. BURKE:  I mean --

24           THE COURT:  Okay.  Are you both available at

25   2:00 p.m. on February 10th, next, next Thursday, if I enter and

1 continue the motion to compel for a ruling on, on

2 February 10th?

3          MS. CHATTIN:  HII is, Your Honor.

4          THE COURT:  Mr. Burke.

5          MR. BURKE:  I've got a deposition on my calendar for

6 that day, so I, I don't think so.

7          THE COURT:  What about the 9th?

8          MS. CHATTIN:  Fine with HII.

9          MR. BURKE:  I've got another deposition.  These are

10 third party depositions noticed by a different -- by a, by a

11 defendant on both of those dates.  I'm not sure if they're

12 going.  I haven't received -- the answer is no, Judge.  I got

13 to tell you no.  I apologize.

14          THE COURT:  Is it a morning deposition or an

15 afternoon deposition?

16          MR. BURKE:  It's noticed for 8:00 a.m..

17          THE COURT:  Is it going to last all day?  You don't

18 know?

19          MR. BURKE:  I would hope not.  I would hope not.  I

20 mean, I would be comfortable if Your Honor and Miss Chattin is

21 available, you know, say, 2:30 or 3:00 p.m..  I think that that

22 would -- that that would work, and I can confer with the

23 defendant.  And if they don't think it would work, I can, I can

24 let you guys know.

25          THE COURT:  And is that the same case both on the 9th

1    and 10th, these are deps noticed at 8:00 a.m., you're not sure
2    if they're going to go; if they go, they probably won't go all
3    day?

4           MR. BURKE:  That's right.  But they're real, they're
5    real witnesses.  They're, they're important depositions, but I,
6    I just don't think they're going to go.

7           THE COURT:  Okay.  Okay.  So I'm going to set a
8    continued hearing on the 10th at 2:00 p.m..  And if for some
9    reason either of you -- before then if the depositions are
10   definitely not going to go, or you know before then that
11   they're going to go and you don't think you could be there at
12   2:00 p.m., send a -- talk to Miss Chattin about it, but send an
13   e-mail also to Brenda.  And then we'll see if I can -- I have
14   something at 4 on the 10th, but I could still push it back a
15   little bit if I needed to on the 10th.

16          But I'd like -- I'd like at least to try to schedule
17   this then.  And if it doesn't work, then I'll, I'll deal with
18   it.  Based on everything you're telling me my gut -- are these
19   Zoom deps, video deps?

20          MR. BURKE:  They are.  And I, I think that this makes
21   sense, Judge, on the scheduling.  On the scheduling side I
22   think that hedging against them not happening is a, is a good
23   bet.

24          THE COURT:  Okay.  And I'd like you then to be able
25   to also report to me then whether you've, you've reached any

1    compromise on the 2014 to 2018 for this next group of

2    documents.  If you haven't, fine.  But I'll just ask you

3    whether you have made any progress in that regard.

4             I will rule on the complaints, to the consumer data,

5    and the financial information next week after I've had a chance

6    to -- I mean, in fairness, the reply brief that came in on

7    January 31st, I really didn't have a good chance to review as,

8    as early as I would have wanted to review it.  And I think in

9    addition there were on (inaudible).  So that works for that.

10   And the deposition transcript -- the deposition transcript, I

11   want to be able to read that also in light of our discussion

12   today.

13            I'm trying to think of whether I'm better off doing

14   it on Wednesday.  I'm probably not because I have something.  I

15   have a meeting over the noon hour.  I think whatever -- I think

16   you should continue doing what you're doing, Miss Chattin, and

17   in an attempt to try and get the March 11th -- be able to meet

18   that March 11th date.  You've still got still a month from

19   February 10th.  But I think getting the search terms settled

20   and the time period settled at least helps a little bit in

21   terms of what you're looking for in identifying documents.

22            And, and, Mr. Burke, in terms of that time period,

23   it's up to you to do what you want to do.  I mean, I'm -- that,

24   that issue of expanding the time period forward really I don't

25   see as being -- it's a bigger issue than just throwing it in in

1  a, in a supplement.  And so, you know, you should talk to the

2  defendant about what you want -- what, if anything, that you

3  want to do on that or what you want to do.  And then if you

4  want to blow up the previously agreed time period, you're going

5  to have to file something.  I'm not going to do it on the fly.

6  You understand?

7  　　　　　MR. BURKE:  Understood, yes.

8  　　　　　THE COURT:  Okay.  Sorry for taking all of your time

9  on this, but I'm going to issue -- the remote nature of this

10  and also how these issues got thrown in here, I needed to do

11  that.  So I apologize.  Have a good rest of the day.  I hope

12  you -- it's still snowing where I am, so hopefully you can dig

13  your -- when you -- what did you say, Miss Chattin, it took you

14  a long time to get your car dug out?  I hope it's still dug out

15  when you get back.

16  　　　　　MS. CHATTIN:  I believe that was my poor colleague

17  Miss Trummel.  It's about almost 60 degrees here in Atlanta, so

18  I can't commiserate unfortunately.

19  　　　　　THE COURT:  I misspoke.  Yes, sorry.  You got no

20  sympathy from me for 60-degree weather in February.

21  　　　　　MS. CHATTIN:  Understood.

22  　　　　　THE COURT:  I'm sure, I'm sure you're not going to

23  get any sympathy from Mr. Burke either.  Okay.  That's about as

24  far as I'm willing to go right now.  I will tell you it's

25  possible potentially that I issue a written ruling on these

1   things because I have enough information after I've read it to

2   be able to convert the 10th into a status hearing in that case.

3   But anyway, that's where we are, and that's where we're going.

4           Anything further, Mr. Burke, that I've missed here?

5   If I have and you want to say something, let me know.

6           MR. BURKE:  I don't think that you've missed

7   anything, and I think that we have addressed these items.

8           THE COURT:  Miss Chattin, you?

9           MS. CHATTIN:  No thank you, Your Honor.  We do really

10  appreciate your time spent on this today, so nothing further

11  from us.

12          THE COURT:  Okay.  All right.  I'll talk to you when

13  I talk to you.  Bye bye.  We'll adjourn the hearing.

14          MR. BURKE:  Thank you.  Bye bye.

15      (Whereupon, said hearing was recessed at 1:15:50 p.m., to

16        reconvene on 2/10/2022, at 2:00 p.m..)

17                          CERTIFICATE

18          I HEREBY CERTIFY that the foregoing is a true,

19  correct and complete transcript of the proceedings had at the

20  hearing of the aforementioned cause on the day and date hereof.

21

22  /s/TRACEY D. McCULLOUGH                    February 14, 2022

23  Official Court Reporter                         Date
    United States District Court
24  Northern District of Illinois
    Eastern Division

25